2022-2105

---

**IN THE UNITED STATES COURT OF APPEALS**
**FOR THE FEDERAL CIRCUIT**

---

**ADEE HONEY FARMS, et al.,**
*Plaintiffs*

**MONTEREY MUSHROOMS, INC.,**
*Plaintiff-Appellant*

**v.**

**UNITED STATES, UNITED STATES CUSTOMS AND BORDER PROTECTION, CHRISTOPHER MAGNUS, Commissioner of U.S. Customs and Border Protection,**
*Defendants-Appellees*

---

Appeal from the United States Court of International Trade in No. 1:16-cv-00127-TCS, Senior Judge Timothy C. Stanceu

---

# OPENING BRIEF OF PLAINTIFF-APPELLANT MONTEREY MUSHROOMS, INC.

Adam H. Gordon
Jennifer M. Smith
Lauren Fraid
**THE BRISTOL GROUP PLLC**
1707 L Street, NW, Suite 570
Washington, DC 20036
202-991-2700
*Counsel to Plaintiff-Appellant Monterey Mushrooms, Inc.*

Dated: October 28, 2022

# UNITED STATES COURT OF APPEALS
# FOR THE FEDERAL CIRCUIT

## CERTIFICATE OF INTEREST

**Case Number** 22-2105

**Short Case Caption** Adee Honey Farms v. US

**Filing Party/Entity** Monterey Mushrooms, Inc.

**Instructions:** Complete each section of the form. In answering items 2 and 3, be specific as to which represented entities the answers apply; lack of specificity may result in non-compliance. **Please enter only one item per box; attach additional pages as needed and check the relevant box**. Counsel must immediately file an amended Certificate of Interest if information changes. Fed. Cir. R. 47.4(b).

I certify the following information and any attached sheets are accurate and complete to the best of my knowledge.

Date: 10/28/2022

Signature: /s/ Adam H. Gordon

Name: Adam H. Gordon

| **1. Represented Entities.** Fed. Cir. R. 47.4(a)(1). | **2. Real Party in Interest.** Fed. Cir. R. 47.4(a)(2). | **3. Parent Corporations and Stockholders.** Fed. Cir. R. 47.4(a)(3). |
|---|---|---|
| Provide the full names of all entities represented by undersigned counsel in this case. | Provide the full names of all real parties in interest for the entities. Do not list the real parties if they are the same as the entities.<br><br>☑ None/Not Applicable | Provide the full names of all parent corporations for the entities and all publicly held companies that own 10% or more stock in the entities.<br><br>☑ None/Not Applicable |
| Monterey Mushrooms, Inc. | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |

☐ Additional pages attached

**4. Legal Representatives.** List all law firms, partners, and associates that (a) appeared for the entities in the originating court or agency or (b) are expected to appear in this court for the entities. Do not include those who have already entered an appearance in this court. Fed. Cir. R. 47.4(a)(4).

☐ None/Not Applicable ☐ Additional pages attached

| | | |
|---|---|---|
| The Bristol Group PLLC | Adam H. Gordon, Esq. | Jennifer M. Smith, Esq. |
| Lauren Fraid, Esq. | | |
| | | |

**5. Related Cases.** Provide the case titles and numbers of any case known to be pending in this court or any other court or agency that will directly affect or be directly affected by this court's decision in the pending appeal. Do not include the originating case number(s) for this case. Fed. Cir. R. 47.4(a)(5). See also Fed. Cir. R. 47.5(b).

☐ None/Not Applicable ☐ Additional pages attached

| | | |
|---|---|---|
| Hilex Poly Co., LLC v. US, CAFC Ct. No. 22-2106 | American Drew v. US, CAFC Ct. No. 22-2114 | |
| | | |
| | | |

**6. Organizational Victims and Bankruptcy Cases**. Provide any information required under Fed. R. App. P. 26.1(b) (organizational victims in criminal cases) and 26.1(c) (bankruptcy case debtors and trustees). Fed. Cir. R. 47.4(a)(6).

☑ None/Not Applicable ☐ Additional pages attached

| | | |
|---|---|---|
| | | |
| | | |

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ........ iii

STATEMENT OF RELATED CASES ........ 1

JURISDICTIONAL STATEMENT ........ 1

STATEMENT OF THE ISSUES ........ 2

STATEMENT OF THE CASE ........ 3

I. NATURE OF THE CASE ........ 3

II. STATEMENT OF FACTS ........ 4

III. PROCEDURAL POSTURE ........ 10

SUMMARY OF ARGUMENT ........ 12

ARGUMENT ........ 16

I. STANDARD OF REVIEW ........ 16

II. CBP'S INTERPRETATION OF THE CDSOA'S UNAMBIGUOUS LANGUAGE IS NOT ENTITLED TO *CHEVRON* DEFERENCE ........ 16

A. The Plain Language of the CDSOA Unambiguously Directs CBP to Distribute Delinquency Interest to ADPs ........ 19

B. Legislative History Further Illustrates the CSDOA's Purpose and Congressional Intent to Include Delinquency Interest in Distributions to ADPs ........ 29

III. CBP'S UNREASONABLE INTERPRETATION OF THE CDSOA IS NOT ENTITLED TO *CHEVRON* DEFERENCE ........ 31

A. CBP's *Post Hoc* Interpretation of the CDSOA Is Unreasonable Because It Rests Entirely on the Preamble to the Final Rule, Which Is Not Entitled to *Chevron* Deference ........ 32

B. CBP's Interpretation Is Unreasonable Because CBP Failed to Explain Contemporaneously the Basis for Its Decision to Exclude Delinquency Interest from CDSOA Distributions .....38

C. CBP's "Technological Limitations" Excuse Does Not Transform the Agency's Faulty Analysis of the CDSOA into a Reasonable Interpretation that Is Entitled to *Chevron* Deference ..........44

IV. THE TRADE COURT IMPROPERLY DISMISSED AS TIME-BARRED MONTEREY'S CLAIMS REGARDING CDSOA DISTRIBUTIONS RECEIVED PRIOR TO 2014..........46

CONCLUSION..........50

# TABLE OF AUTHORITIES

## CASES

*Ad Hoc Shrimp Trade Action Comm. v. United States*,
596 F.3d 1365 (Fed. Cir. 2010) ....................17

*Adee Honey Farms v. United States*,
450 F. Supp. 3d 1365 (Ct. Int'l Trade 2020) ....................46

*Aqua Prods., Inc. v. Matal*,
872 F.3d 1290 (Fed. Cir. 2017) (*en banc*) .................... *passim*

*Arista Networks, Inc. v. Cisco Sys., Inc.*,
908 F.3d 792 (Fed. Cir. 2018) ....................20

*Ass'n of Am. R.Rs. v. Costle*,
562 F.2d 1310 (D.C. Cir. 1977) ....................34

*Bank of Am. Corp. v. United States*,
964 F.3d 1099 (Fed. Cir. 2020) ....................20

*Barnhart v. Sigmon Coal Co.*,
534 U.S. 438 (2002) ....................20

*Baude v. United States*,
955 F.3d 1290 (Fed. Cir. 2020) ....................37

*Bowman Transp., Inc. v. Ark.-Best Freight Sys., Inc.*,
419 U.S. 281 (1974) ....................40

*Boyer v. West*,
210 F.3d 1351 (Fed. Cir. 2000) ....................19

*Cathedral Candle Co. v. U.S. Int'l Trade Comm'n*,
400 F.3d 1352 (Fed. Cir. 2005) ....................17

*Chapman v. Houston Welfare Rts. Org.*,
441 U.S. 600 (1979) ....................29

*Chevron, U.S.A., Inc. v. Nat. Res. Def. Council Inc.*,
467 U.S. 837 (1984) .................... *passim*

*City of Arlington, Tex. v. FCC*,
569 U.S. 290 (2013) ........................................................................ 17, 19, 39

*Confederated Tribes of Grande Ronde Cmty. of Ore. v. Jewell*,
830 F.3d 552 (D.C. Cir. 2016).........................................................................38

*Conn. Nat'l Bank v. Germain*,
503 U.S. 249 (1992) .........................................................................................20

*Corley v. United States*,
556 U.S. 303 (2009) ................................................................................. 23, 27

*DAK Ams. LLC v. U.S.*,
422 F. Supp. 3d 1372 (Ct. Int'l Trade 2019).....................................................16

*Dis Vintage, LLC v. United States*,
Ct. No. 16-00085, 2018 WL 4027107 (Ct. Int'l Trade Aug. 21, 2018)..............25

*Dist. of Columbia v. Heller*,
554 U.S. 570 (2008) .........................................................................................36

*Encino Motorcars, LLC v. Navarro*,
579 U.S. 211 (2016) ...................................................................................*passim*

*Gardner v. State of N.J.*,
329 U.S. 565 (1947) .........................................................................................23

*Giorgio Foods, Inc. v. U.S.*,
785 F.3d 595 (Fed. Cir. 2015)........................................................... 5, 28, 30, 37

*Gonzalez v. Oregon*,
546 U.S. 243 (2006) .........................................................................................17

*Griffin v. Oceanic Contractors, Inc.*,
458 U.S. 564 (1982) .........................................................................................36

*Hibbs v. Winn*,
542 U.S. 88 (2004) ................................................................................... 23, 27

*Hyatt v. USPTO*,
904 F.3d 1361 (Fed. Cir. 2018).........................................................................20

*Hymas v. U.S.*,
810 F.3d 1312 (Fed. Cir. 2016) ......36

*In re Lee*,
277 F.3d 1338 (Fed. Cir. 2002) ......39

*Ishida v. United States*,
59 F.3d 1224 (Fed. Cir. 1995) ...... 24, 27

*Judulang v. Holder*,
565 U.S. 42 (2011) ......39

*K Mart Corp. v. Cartier, Inc.*,
486 U.S. 281 (1988) ......19

*King v. Burwell*,
576 U.S. 473 (2015) ......19

*Kisor v. McDonough*,
995 F.3d 1347 (Fed. Cir. 2021) ......19

*Koyo Seiko Co., Ltd. v. U.S.*,
36 F.3d 1565 (Fed. Cir. 1994) ......18

*Kyocera Solar, Inc. v. U.S. Int'l Trade Comm'n*,
844 F.3d 1334 (Fed. Cir. 2016) ...... 17, 18

*Leslie Salt Co. v. United States*,
55 F.3d 1388 (9th Cir. 1995) ......35

*Lexecon Inc. v. Milberg Weiss Bershad Hynes & Lerach*,
523 U.S. 26 (1998) ......21

*Life Techs. Corp. v. Promega Corp.*,
137 S. Ct. 734 (2017) ......22

*Luminant Generation Co. v. EPA*,
675 F.3d 917 (5th Cir. 2012) ......34

*Me. Cmty. Health Options v. U.S.*,
140 S. Ct. 1308 (2020) ......21

*Michigan v. EPA*,
576 U.S. 743 (2015) .......................................................................... 37, 41, 42

*Mitsubishi Elecs. Am., Inc. v. United States*,
44 F.3d 973 (Fed. Cir. 1994) ..........................................................................49

*Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*,
463 U.S. 29 (1983) .......................................................................... 39, 40

*N.H. Hosp. Ass'n v. Azar*,
887 F.3d 62 (1st Cir. 2018) ..........................................................................35

*Nat'l Cable & Telecomms. Ass'n v. Brand X Internet Servs.*,
545 U.S. 967 (2005) ..........................................................................18

*Nat'l Org. of Veterans' Advocs., Inc. v. Sec'y of Veterans Affs.*,
260 F.3d 1365 (Fed. Cir. 2001) ..........................................................................35

*Nat'l Wildlife Fed'n v. EPA*,
286 F.3d 554 (D.C. Cir. 2002)..........................................................................34

*NEXTEEL Co. v. United States*,
28 F.4th 1226 (Fed. Cir. 2022) ..........................................................................16

*Norfolk & W. Ry. Co. v. Am. Train Dispatchers Ass'n*,
499 U.S. 117 (1991) .......................................................................... 22, 23

*Norman v. United States*,
942 F.3d 1111 (Fed. Cir. 2019) ..........................................................................22

*Pereira v. Sessions*,
138 S. Ct. 2105 (2018) ..........................................................................19

*Prill v. NLRB*,
755 F.2d 941 (D.C. Cir. 1985)..........................................................................36

*PS Chez Sydney, L.L.C. v. U.S. Int'l Trade Comm'n*,
684 F.3d 1374 (Fed. Cir. 2012) .......................................................... 17, 18, 29, 37

*Rubin v. Islamic Republic of Iran*,
138 S. Ct. 816 (2018) .......................................................................... 23, 27

*Rubin v. United States*,
449 U.S. 424 (1981) ....................................................................................20

*Schindler Elevator Corp. v. U.S.*,
563 U.S. 401 (2011) ....................................................................................28

*SciMed Life Sys., Inc. v. Advanced Cardiovascular Sys., Inc.*,
242 F.3d 1337 (Fed. Cir. 2001) ....................................................................23

*SEC v. Chenery Corp.*,
318 U.S. 80 (1943) .................................................................. 37, 39, 40, 42

*SEC v. Chenery Corp.*,
332 U.S. 194 (1947) ....................................................................................37

*SKF USA, Inc. v. U.S. Customs & Border Prot.*,
556 F.3d 1337 (Fed. Cir. 2009) ............................................................. 4, 49

*Star Athletica, L.L.C. v. Varsity Brands, Inc.*,
137 S. Ct. 1002 (2017) ................................................................................20

*St. Paul Fire & Marine Ins. Co. v. United States*,
959 F.2d 960 (Fed. Cir. 1992) .....................................................................49

*Tenn. Valley Auth. v. Hill*,
437 U.S. 153 (1978) ....................................................................................28

*Train v. Colo. Pub. Int. Rsch. Grp., Inc.*,
426 U.S. 1 (1976) ........................................................................................29

*TRW Inc. v. Andrews*,
534 U.S. 19 (2001) ........................................................................ 23, 24, 27

*United States v. Haggar Apparel Co.*,
526 U.S. 380 (1999) ....................................................................................32

*United States v. Mead Corp.*,
533 U.S. 218 (2001) ............................................................................ 17, 35

*United States v. Williams*,
553 U.S. 285 (2008) ....................................................................................22

*United States v. Am. Home Assur. Co.*,
789 F.3d 1313 (Fed. Cir. 2015) ....................23

*United States v. Home Concrete & Supply, LLC*,
566 U.S. 478 (2012) ....................18

*United States v. Wash. Int'l Ins. Co.*,
177 F. Supp. 2d 1313 (Ct. Int'l Trade 2001) ....................25

*Util. Air Regul. Grp. v. EPA*,
573 U.S. 302 (2014) .................... 39, 45

*Walters v. Metro. Ed. Enters., Inc.*,
519 U.S. 202 (1997) ....................20

*West Virginia v. EPA*,
142 S. Ct. 2587 (2022) ....................17

*Wyeth v. Levine*,
555 U.S. 555 (2009) ....................34

*Yazoo R.R. Co. v. Thomas*,
132 U.S. 174 (1889) ....................34

**STATUTES**

5 U.S.C. § 706 .................... 16, 40

19 U.S.C. § 1505(d) .................... *passim*

19 U.S.C. § 1675c(b)(1) ....................2

19 U.S.C. § 1675c(d)(2) ....................5

19 U.S.C. § 1675c(d)(3) .................... *passim*

19 U.S.C. § 1675c(e)(1) ....................5

19 U.S.C. § 1675c(e)(2) .................... *passim*

19 U.S.C. § 1677g .................... *passim*

19 U.S.C. § 4401 .................... 30, 46

28 U.S.C. § 1581(i) ........................................................................... *passim*

28 U.S.C. § 2636(i) ........................................................................... 10, 49

## REGULATIONS

19 C.F.R. § 159.61 ........................................................................... 4

19 C.F.R. § 159.62 ........................................................................... 4

19 C.F.R. § 159.63 ........................................................................... 4

19 C.F.R. § 159.64 ........................................................................... 4

19 C.F.R. § 159.64(e) ........................................................................... *passim*

19 C.F.R. § 178.2 ........................................................................... 4

## ADMINISTRATIVE DETERMINATIONS & PUBLICATIONS

*Distribution of Continued Dumping and Subsidy Offset to Domestic Producers*, 66 Fed. Reg. 33,920 (June 26, 2001) ........................................................................... *passim*

*Distribution of Continued Dumping and Subsidy Offset to Affected Domestic Producers*, 66 Fed. Reg. 48,546 (Sept. 21, 2001) ........................................................................... *passim*

## MISCELLANEOUS AUTHORITIES

145 CONG. REC. S497 (daily ed. Jan. 19, 1999) ........................................................................... 30

146 CONG. REC. S10697 (daily ed. Oct. 18, 2000) ........................................................................... 30

CONG. REC. H9708 (daily ed. Oct. 11, 2000) ........................................................................... 30

CONG. REC. S833-884 (daily ed. Feb. 11, 2016) ........................................................................... 10, 30

**OPENING BRIEF OF PLAINTIFF-APPELLANT MONTEREY MUSHROOMS, INC.**

## STATEMENT OF RELATED CASES

Pursuant to Rule 47.5 of the Rules of the United States Court of Appeals for the Federal Circuit, counsel for Plaintiff-Appellant Monterey Mushrooms, Inc. ("Monterey") is not aware of any other appeal in or from this action that previously was before this Court or any other appellate court under the same or similar title.

Counsel is aware of two cases currently before this Court that have been deemed companion cases: *Hilex Poly Co., LLC v. United States*, Ct. No. 22-2106; and *American Drew v. United States*, Ct. No. 22-2114. These cases will be directly affected by the outcome in the instant case as the issues thereunder are central to both cases.

## JURISDICTIONAL STATEMENT

Pursuant to Rule 28(a)(5) of the Rules of the United States Court of Appeals for the Federal Circuit, counsel for Monterey states that this Court's jurisdiction rests upon the following bases:

(a) The United States Court of International Trade (the "Trade Court") possessed jurisdiction to entertain this action pursuant to 28 U.S.C. § 1581(i).

(b) The statutory basis for this Court's jurisdiction to entertain this appeal is 28 U.S.C. § 1295(a)(5).

The Trade Court entered its final judgment on June 16, 2022. Pursuant to Rule 4(a)(1)(B) of the Federal Rules of Appellate Procedure, this appeal was filed timely on August 5, 2022.

## STATEMENT OF THE ISSUES

(1) Whether the failure of Defendants-Appellants U.S. Customs and Border Protection, *et al.* ("CBP") to include "delinquency interest" in distributions made under the Continued Dumping and Subsidy Offset Act of 2000 ("CDSOA"), 19 U.S.C. §§ 1675c(e)(2), (d)(3), to "affected domestic producers" ("ADPs")[1] was arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law, or in excess of statutory jurisdiction, authority, or limitations, or short of statutory right, where the plain language unambiguously requires CBP to deposit certain antidumping ("AD") or countervailing ("CVD") duties, including interest earned on such duties, and to distribute all funds, including all interest earned on the funds, to ADPs.

(2) To the extent the CDSOA is ambiguous with respect to the types of interest CBP must distribute, whether the Court must afford *Chevron* deference to

---

[1] Domestic producers that are eligible to receive CDSOA distributions are known as "affected domestic producers," or "ADPs." 19 U.S.C. § 1675c(b)(1), Appx0960.

CBP's decision to withhold delinquency interest where: (a) that decision undermines the congressional purpose of the CDSOA; (b) CBP fails to present any contemporaneous reason for this decision, which was subsequently revealed to be based on "technological limitations" and not based on statutory authority or interpretation; and (c) the Trade Court contrived and relied on its own, independent interpretation of the CDSOA rather than the interpretation presented by CBP.

(3) Whether the Trade Court erred in its dismissal of Monterey's claims for pre-2014 CDSOA distributions where Monterey had no notice of CBP's unlawful decision to exclude delinquency interest from CDSOA distributions until 2014, and where Monterey filed the present action in 2016, within the two-year statute of limitations imposed by 28 U.S.C. § 1581(i).

## STATEMENT OF THE CASE

### I. NATURE OF THE CASE

This appeal concerns CBP's failure to include "delinquency interest" earned on AD and CVD duties under 19 U.S.C. § 1505(d) in distributions made to ADPs under the CDSOA, 19 U.S.C. § 1675c.[2] The CDSOA requires CBP to deposit into special accounts certain "antidumping or countervailing duties (including interest earned on such duties) that are assessed after the effective date of" the CDSOA,

[2] Although the CDSOA was repealed in 2007, distributions to ADPs for the years in which the CDSOA was in effect remain due.

and to "distribute all funds (including all interest earned on the funds) from assessed duties . . . to affected domestic producers" at annual intervals. 19 U.S.C. §§ 1675c(e)(2), (d)(3), Appx0959–0961. Despite initially planning to distribute delinquency interest, between publication of its proposed and final regulations, and without notice, CBP changed its mind and decided not to do so because of "technological limitations."[3]

CBP improperly ignored its clear statutory mandate, claiming that the publication of its Final Rule, *Distribution of Continued Dumping and Subsidy Offset to Affected Domestic Producers*, 66 Fed. Reg. 48,546 (Sept. 21, 2001) ("Final Rule"), codified at 19 C.F.R. §§ 159.61–159.64 & 178.2, permitted its *ultra vires* action. *See* Appx1284–1293.

## II. STATEMENT OF FACTS

Congress enacted the CDSOA in October 2000 to help injured domestic industries "recover monetarily" from "losses sustained as a result of unfair foreign trade practices." 146 CONG. REC. 23,117 (2000). Specifically, the CDSOA compensates domestic producers injured by unfairly-traded imports that supported investigations leading to AD or CVD orders. *See SKF USA, Inc. v. U.S. Customs & Border Prot.*, 556 F.3d 1337, 1350–51 (Fed. Cir. 2009).

[3] CBP claims that, in 2001, the agency's internal system could not separately identify and account for delinquency interest amounts (though it can now).

Importantly, CDSOA distributions are distinct from the remedial relief (the imposition of special duties) afforded under U.S. trade laws. *See, e.g.*, *Giorgio Foods, Inc. v. U.S.*, 785 F.3d 595, 604 (Fed. Cir. 2015) (Reyna, J. dissenting).

Under the CDSOA, CBP is required to "establish in the Treasury of the United States a special account with respect to" each active AD/CVD order and to "deposit into the special accounts, all antidumping or countervailing duties (including interest earned on such duties) that are assessed after the effective date" of the CDSOA "under the antidumping order or finding or the countervailing duty order with respect to which the account was established." 19 U.S.C. §§ 1675c(e)(1), (2), Appx0960–0961.

The CDSOA requires ADPs seeking a CDSOA distribution to file a certification with CBP after CBP publishes an annual notice in the *Federal Register*. 19 U.S.C. § 1675c(d)(2), Appx0960. CBP is required to "distribute all funds (including all interest earned on the funds) from assessed duties received in the preceding fiscal year to affected domestic producers based on the certifications." 19 U.S.C. § 1675c(d)(3), Appx0960.

Two types of interest are relevant here. The first, 19 U.S.C. § 1677g interest, is collected on underpayments of antidumping or countervailing duties, in the event that the final amount of AD or CVD duty assessed at liquidation is greater than the amount deposited at the time of entry. For example, if an importer

makes cash deposits of AD duties at a 10% rate, but the final duty rate is 50%, they will receive a bill for the 40% difference, plus 1677g interest charged on this difference. Such interest is assessed as part of the final duty owed at liquidation and accrues from the date of the initial duty deposit to the date of liquidation.

The second, 19 U.S.C. § 1505(d) or "delinquency" interest, is collected from importers and sureties when an importer fails to pay any balance owed within 30 days of liquidation. Delinquency interest accrues on the entire balance of the outstanding bill, including the duties themselves, Section 1677g interest, and any taxes or fees owed by the importer.

Pursuant to the CDSOA, CBP is required to deposit into the special accounts, and then distribute to ADPs, all interest collected from importers and sureties under existing AD and CVD orders, including Section 1677g interest and all delinquency interest. CBP understood these obligations. By February 21, 2001, after enactment of the CDSOA in October 2000, the agency was making internal "work assignments," one of which was that "OF and OIT will consider possible methods for assigning 1505 interest [*i.e.*, delinquency interest] to specific AD/CV cases for purposes of deposit into the Clearing Account and eventually transfer into the Special Account for disbursement."[4] Appx4188. CBP stated that

---

[4] Presumably, "OF" refers to CBP's Office of Finance, and "OIT" refers to CBP's Office of International Trade.

these work "decisions and assignments" reflected "the current position of the agency" connected with "the proposed rulemaking," and noted that further interagency review was pending. Appx4188 (emphasis added).

In 2001, CBP promulgated rules implementing the CDSOA. The proposed rules reflected the unambiguous text of the CDSOA, broadly stating that:

> if there is interest paid by the importer on any antidumping or countervailing duties billed during the liquidation process for the import entries, that interest will be transferred to the Clearing Account or Special Account, as appropriate.

*Distribution of Continued Dumping and Subsidy Offset to Domestic Producers*, 66 Fed. Reg. 33,920–926, 922 (June 26, 2001) ("Proposed Rule"), Appx1279. There is nothing in the Proposed Rule that states (or even implies) that CBP would not distribute delinquency interest as required by the statute.

By July 2001, however, CBP changed course and made an internal decision not to distribute delinquency interest. *See* Appx4256 ("Decision has been made that accrued interest for late payment of bill will not be made available for disbursement under the Byrd Amendment."). However, the Final Rule, published in September 2001, contained language similar to that of the Proposed Rule, with insignificant modifications:

> statutory interest charged on antidumping and countervailing duties at liquidation will be transferred to the Special Account, when collected from the importer.

19 C.F.R. § 159.64(e), Appx1292. The minor changes of language between the Proposed and Final Rule (*e.g.*, "during the liquidation process" changed to "at liquidation") could not possibly have put the public on notice of CBP's fundamentally changed internal position regarding distribution of delinquency interest. And like the Proposed Rule, the Final Rule was silent as to the treatment of delinquency interest, and did not state that any specific type of interest will be treated as outside the scope of the CDSOA's broad reference to "all" interest.

Despite the plain language of the CDSOA and the agency's initial position, CBP failed to deposit delinquency interest collected under existing AD and CVD orders into the special accounts and did not distribute this interest to ADPs. No cogent, contemporaneous reason was provided to explain CBP's decision to contravene the unambiguous requirements of the CDSOA.

CBP claims that the Final Rule and its preamble support the agency's unlawful practice of ignoring the CDSOA's clear requirements. CBP focuses on a single word in the preamble — "only" — included in a discussion of an entirely different topic, *i.e.*, whether the special accounts themselves would be interest-bearing. As to that question, the preamble states that:

> funds in Government accounts are not interest-bearing unless specified by Congress. Because Congress did not make an explicit provision for the accounts established under the CDSOA to be interest-bearing, no interest may accrue on these accounts. Thus, only interest charged on antidumping and countervailing duty funds themselves, pursuant to the express

> authority in 19 U.S.C. § 1677g, will be transferred to the special accounts and made available for distribution under the CDSOA.

66 Fed. Reg. at 48,550, Appx1288 (emphasis added). CBP's effort to base its entire argument on this language (really, one word) is without merit.

Further, the administrative record produced during the course of this litigation points to a different and entirely prosaic reason underlying CBP's decision: "technological limitations of Customs' Automated Commercial System ('ACS')," which "were a reason for the decision to distribute only 19 U.S.C. § 1677g interest." Appx3683. CBP's "technological limitations" do not permit the agency to avoid its statutory obligations.

Once CBP's failure to distribute delinquency interest became known in 2014, Congress passed Section 605 of the Trade Facilitation and Trade Enforcement Act of 2015, ("TFTEA"), Pub. L. 114-125 (Feb. 24, 2016). This 2016 legislation was enacted specifically to correct CBP's misreading of the CDSOA, as evidenced by Senator Thune's comments on the Senate floor:

> Duties collected on dumped imports and all interest on those duties from 2000 to 2007 were to be paid to the injured domestic producers to allow them to reinvest and rebuild. For reasons that defy simple explanation, CBP ignored the direction of the statute to pay all interest to producers and instead deducted some types of interest from payments to producers . . . . This practice defies the plain language of the statute and cost domestic producers tens of millions of dollars over the years.

> During the Finance Committee markup of this legislation, Senator Grassley, Senator Nelson, and I offered an amendment which is included in this conference report <u>that corrects CBP's misreading of the law</u>. This is an important victory for honey, crawfish, garlic, and mushroom [producers] that have suffered from Chinese dumping and CBP's unfounded practice.

CONG. REC. S833-884, 843 (daily ed. Feb. 11, 2016) (statement of Sen. Thune) (emphases added).

## III. PROCEDURAL POSTURE

On July 15, 2016, Monterey commenced the underlying action before the Trade Court. On June 1, 2020, the Trade Court issued an order, granting in part and denying in part, Defendants-Appellees' motion to dismiss. *See* Appx0095. In that order, the Trade Court dismissed Monterey's claims regarding CDSOA distributions prior to 2014, finding that such claims had not been filed within the two year statute of limitations of 28 U.S.C. § 2636(i). *See* Appx0095. At the same time, the Trade Court denied Defendants-Appellants' motion to dismiss claims regarding CDSOA distributions for years after 2014. *See* Appx0095.

On December 21, 2020, the Trade Court ordered CBP to "supplement the administrative record with the materials relevant to the decision by Customs, later effectuated in the Final Rule, not to distribute delinquency interest." Appx0099–0100. CBP submitted the supplemental administrative record on February 16, 2021.

On June 8, 2022, the Trade Court denied Monterey's motion for reconsideration of the Trade Court's order dismissing Monterey's claims on CDSOA distributions prior to 2014. *See* Appx0100–0103 (ECF Nos. 113 (Motion for Reconsideration), 132 (Denial of Motion for Reconsideration)). The Trade Court reasoned that the Final Rule placed Monterey on notice of CBP's decision to exclude delinquency interest from distributions to ADPs, and the fact that the administrative record did not support CBP's interpretation of the CDSOA was inapposite. The Trade Court did not address Monterey's discussion that the Final Rule is entirely silent as to any procedures regarding collection and distribution of delinquency interest.

On June 16, 2022, the Trade Court denied Monterey's motion for judgment on the agency record, holding that the CDSOA did not obligate CBP to distribute "all interest" on AD/CVD duties, including delinquency interest. *See* Appx0001–0022. While the Trade Court appeared to agree with Monterey's analysis of the plain language of the CDSOA (*i.e.*, that it is unambiguous), the Trade Court then found the text to be ambiguous by looking to statutory provisions in other trade laws, outside the CDSOA. *See* Appx0001–0022. The Trade Court did not base its decision on the agency's interpretation of the CDSOA, but rather contrived its <u>own</u> interpretation to which it then deferred. *See* Appx0001–0022.

On August 5, 2022, Monterey appealed the decision of the Trade Court.

## SUMMARY OF ARGUMENT

The plain language of the CDSOA unambiguously requires CBP to deposit into special accounts certain "antidumping or countervailing duties (including interest earned on such duties) that are assessed after the effective date of" the CDSOA, and to "distribute all funds (including all interest earned on the funds) from assessed duties received in the preceding fiscal year" to ADPs. 19 U.S.C. §§ 1675c(e)(2), (d)(3), Appx0959–0961 (emphases added). As such, CBP had an unambiguous statutory obligation to both collect and distribute all interest, including delinquency interest under 19 U.S.C. § 1505(d), to ADPs.

To achieve this goal, the text of the CSDOA delegates limited authority to CBP to establish "time and manner" procedures. *See* 19 U.S.C. §§ 1675c(e)(2), (d)(3), Appx0959–0961. CBP itself recognized this requirement, and, in February 2001, assigned roles and responsibilities to craft procedures to distribute delinquency interest to ADPs. *See* Appx4188.

Despite the clear directive, CBP failed to carry out its statutory obligations, and, as of July 2001, made an *ultra vires*, substantive decision to include only 19 U.S.C. § 1677g interest in its distributions to ADPs. *See* Appx4256. No explanation or basis was provided for this decision at the time. In fact, the only reason that has been provided appears in a declaration prepared for purposes of this litigation. In that document, CBP asserts that its decision to distribute only 19

U.S.C. § 1677g interest was due to "technological limitations" of its internal systems — an IT issue. Appx3683. Even if true, this *post hoc* rationalization does not excuse the agency from fulfilling its statutory obligations.

In addition to the "technological limitations" excuse, CBP asserted before the Trade Court that its interpretation of the CDSOA under 19 C.F.R. § 159.64(e) is entitled to deference under *Chevron, U.S.A., Inc. v. Natural Resource Defense Council Inc.*, 467 U.S. 837 (1984). *See* Appx0102 (ECF No. 123 (Defs.' Br.)). Specifically, CBP claimed that the preamble to the Final Rule — which was not codified — demonstrates that the agency was not bound by the CDSOA's requirements regarding delinquency interest. *See id.* This argument is at odds with both the statute and 19 C.F.R. § 159.64(e).

CBP's interpretation of its obligations under the CDSOA is not owed *Chevron* deference. The plain language of the CDSOA directs CBP to include delinquency interest — all interest — in distributions to ADPs. Because the language of the CDSOA is unambiguous, the agency is not entitled to *Chevron* deference.

Even assuming, *arguendo*, that the language was ambiguous, Custom's interpretation is unreasonable. First, *Chevron* deference is not afforded to an agency's statutory interpretation made outside of the regulation itself, where the statute authorizes an agency to act "by regulation." *Aqua Prods., Inc. v. Matal*,

872 F.3d 1290, 1330 (Fed. Cir. 2017) (*en banc*). Here, the text of the 19 C.F.R. § 159.64(e) neither limits the interest that will be transferred to the special account to Section 1677g interest nor excludes delinquency interest. In fact, the regulation is entirely silent as to any procedures at all for collecting and distributing delinquency interest. *See* Appx1292.

To argue that delinquency interest could be excluded from distributions to ADPs, CBP looks outside of the regulation itself, instead focusing on the preamble to the Final Rule. *See* Appx0102 (ECF No. 123 (Defs.' Br. at 31)). As courts have repeatedly held, however, preambles do not have the force of law, and therefore, are not entitled to *Chevron* deference. Further, CBP's preamble is in direct conflict with the statutory requirements.

Second, when the Final Rule was published and when 19 C.F.R. § 159.64(e) was promulgated, CBP failed to provide any explanation for its decision to omit delinquency interest from distributions to ADPs. In fact, as of February 2001, CBP intended to include delinquency interest in distributions made to ADPs. *See* Appx4188. As of July 2001, however, CBP had reversed course. *See* Appx4256. No explanation for this reversal was provided. CBP's complete lack of analysis and explanation with respect to this determination renders its actions arbitrary, capricious, and without force of law.

As a result of this arbitrary and capricious action, Monterey lacked notice that CBP intended to withhold delinquency interest from ADPs. Therefore, Monterey's causes of action under the CDSOA did not begin to accrue until 2014, when it first received notice that CBP had not been including delinquency interest in distributions made to ADPs.

In sum, CBP's failure to include delinquency interest in its distributions to ADPs is not in accordance with law. For these reasons, Monterey respectfully requests that the Court reverse the decisions of the Trade Court, and direct the Trade Court, on remand, to enter judgment in favor of Monterey, ordering: (1) CBP, *inter alia*, to include delinquency interest under 19 U.S.C. § 1505(d) in its CDSOA distributions to ADPs under the antidumping order covering certain preserved mushrooms from the People's Republic of China, based on their *pro rata* shares of total certified qualifying expenditures thereunder; (2) that Monterey's claims relating to CDSOA distributions prior to 2014 be revived; and (3) such additional relief as the Court may deem just and proper.

# ARGUMENT

## I. STANDARD OF REVIEW

The Court reviews judgments of the Trade Court *de novo*, reapplying the same standard of review applied by the Trade Court. *See NEXTEEL Co. v. United States*, 28 F.4th 1226, 1233 (Fed. Cir. 2022).

The Trade Court examines actions brought under 28 U.S.C. § 1581(i) according to the standard of review set forth in the Administrative Procedure Act ("APA"), 5 U.S.C. § 706. *See DAK Ams. LLC v. U.S.*, 422 F. Supp. 3d 1372, 1376 (Ct. Int'l Trade 2019). Under the APA, "a court must hold unlawful agency action found to be arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law," or "in excess of statutory jurisdiction, authority, or limitations, or short of statutory right." 5 U.S.C. §§ 706(2)(A), (C).

As is detailed below, CBP's failure to include delinquency interest in distributions made to ADPs under the CDSOA is not in accordance with the express language of the statute.

## II. CBP'S INTERPRETATION OF THE CDSOA'S UNAMBIGUOUS LANGUAGE IS NOT ENTITLED TO *CHEVRON* DEFERENCE

The plain language of the CDSOA clearly states Congress' intent that <u>all</u> interest, including delinquency interest, be included in distributions made to

ADPs.[5] Because the text of the CDSOA is unambiguous, the analysis under *Chevron* ends, and CBP's interpretation of the CDSOA as expressed in its rules is owed no deference.

The Court has followed the two-step analysis outlined in *Chevron* in its reviews of an agency's interpretation of the CDSOA. *See PS Chez Sydney, L.L.C. v. U.S. Int'l Trade Comm'n*, 684 F.3d 1374, 1380 (Fed. Cir. 2012) (citing *Ad Hoc Shrimp Trade Action Comm. v. United States*, 596 F.3d 1365, 1368 (Fed. Cir. 2010)); *see also Kyocera Solar, Inc. v. U.S. Int'l Trade Comm'n*, 844 F.3d 1334,

---

[5] As Plaintiff argued before the Trade Court, *Chevron* deference is not triggered here for yet another reason: with respect to CDSOA distributions, Congress only authorized CBP to promulgate regulations that establish procedure. *See* 19 U.S.C. §§ 1675c(d)(3), (e)(2), Appx0959–0961. Congress did not delegate any substantive authority to CBP, meaning that CBP cannot lawfully limit the types of interest to distribute under the CDSOA.

"Agencies have only those powers given to them by Congress, and enabling legislation is generally not an open book to which the agency [may] add pages and change the plot line." *West Virginia v. EPA*, 142 S. Ct. 2587, 2609 (2022) (internal citation and quotation marks omitted). *Chevron* deference "is warranted only 'when it appears that Congress delegated authority to the agency generally to make rules carrying the force of law, and that the agency interpretation claiming deference was promulgated in the exercise of that authority.'" *Gonzalez v. Oregon*, 546 U.S. 243, 255–56 (2006) (emphasis added) (quoting *United States v. Mead Corp.*, 533 U.S. 218, 226–27 (2001); *see also City of Arlington, Tex. v. FCC*, 569 U.S. 290, 302 (2013) (finding *Chevron* deference will not be triggered unless Congress has entrusted an agency with the authority to interpret the particular statute at issue); *Cathedral Candle Co. v. U.S. Int'l Trade Comm'n*, 400 F.3d 1352, 1361 (Fed. Cir. 2005) (stating that where an agency "has not reached its legal conclusion through notice and comment rulemaking or formal adjudication," "the Court has looked for indications that Congress meant to delegate to the agency the authority to make determinations having the force of law.").

1338 (Fed. Cir. 2016) (stating the U.S. Court of Appeals for the Federal Circuit "review[s] issues of statutory construction under the two-prong analysis announced in *Chevron*."). Under this analysis, an agency is afforded *Chevron* deference only where the statute is ambiguous. *See Chevron*, 467 U.S. at 842–45. The CDSOA is not.

Under *Chevron* step one, courts "determine if there is an ambiguity in the statute such that an agency has room to interpret." *PS Chez Sydney, L.L.C.*, 684 F.3d at 1380 (citing *Chevron*, 467 U.S. at 842–43). Where Congress has spoken directly and unambiguously, *Chevron* deference is not owed. *See Chevron*, 467 U.S. at 842–43 ("If the intent of Congress is clear, that is the end of the matter; for the court, as well as the agency, must give effect to the unambiguously expressed intent of Congress."); *United States v. Home Concrete & Supply, LLC*, 566 U.S. 478, 487 (2012) (stating that an unambiguous statute "means that there is 'no gap for the agency to fill' and thus 'no room for agency discretion'") (quoting *Nat'l Cable & Telecomms. Ass'n v. Brand X Internet Servs.*, 545 U.S. 967, 982–83 (2005)); *Koyo Seiko Co., Ltd. v. U.S.*, 36 F.3d 1565, 1570 (Fed. Cir. 1994) (If "Congress has directly spoken to the precise question at issue," "that is the end of the matter; for the court, as well as the agency, must give effect to the unambiguously expressed intent of Congress.") (quoting *Chevron*, 467 U.S. at 842–43). In other words, "the Court need not resort to *Chevron* deference" where

"Congress has supplied a clear and unambiguous answer to the interpretive question at hand." *Pereira v. Sessions*, 138 S. Ct. 2105, 2113 (2018). Such is the case with respect to the CDSOA, where Congress has clearly and unambiguously directed CBP to include all interest in its distributions to ADPs.

For these reasons, CBP's interpretation of the CDSOA should not be afforded deference.

### A. The Plain Language of the CDSOA Unambiguously Directs CBP to Distribute Delinquency Interest to ADPs

To "determine 'whether Congress has directly spoken to the precise question at issue,'" courts use "the ordinary tools of statutory construction." *City of Arlington, Tex.*, 569 U.S. at 296 (quoting *Chevron*, 467 U.S. at 842). "These tools require 'examin[ing] the statute's text, structure, and legislative history and apply[ing] the relevant canons of interpretation.'" *Kisor v. McDonough*, 995 F.3d 1347, 1360 (Fed. Cir. 2021) (quoting *Boyer v. West*, 210 F.3d 1351, 1355 (Fed. Cir. 2000)). Accordingly, the Court "read[s] the words 'in their context and with a view to their place in the overall statutory scheme.'" *Aqua Prods., Inc.*, 872 F.3d at 1303 (quoting *King v. Burwell*, 576 U.S. 473, 486 (2015) (internal citation and quotation marks omitted)); *see also K Mart Corp. v. Cartier, Inc.*, 486 U.S. 281, 291 (1988) (finding that courts must examine "the particular language at issue and the language and design of the statute as a whole.") (internal citations omitted).

The U.S. Supreme Court has "stated time and again that courts must presume that a legislature says in a statute what it means and means in a statute what it says there." *Conn. Nat'l Bank v. Germain*, 503 U.S. 249, 253–54 (1992) (internal citations omitted); *see also Barnhart v. Sigmon Coal Co.*, 534 U.S. 438, 461–62 (2002) (same); *Arista Networks, Inc. v. Cisco Sys., Inc.*, 908 F.3d 792, 803 (Fed. Cir. 2018) (finding that when "the statutory language is plain," the Court "must enforce it according to its terms.") (quoting *King*, 576 U.S. at 486). Thus, "[s]tatutory interpretation begins with the language of the statute." *Hyatt v. USPTO*, 904 F.3d 1361, 1374 (Fed. Cir. 2018) (internal quotation marks and citation omitted); *see also Star Athletica, L.L.C. v. Varsity Brands, Inc.*, 137 S. Ct. 1002, 1010 (2017) ("We thus begin and end our inquiry with the text, giving each word its 'ordinary, contemporary, common meaning.'") (quoting *Walters v. Metro. Ed. Enters., Inc.*, 519 U.S. 202, 207 (1997)).

Indeed, statutory text has been described as "the 'one, cardinal canon' a court must turn to 'before all others.'" *McDonough*, 993 F.3d at 1349–50 (quoting *Conn. Nat'l Bank*, 503 U.S. at 253). Therefore, "[w]hen the words of a statute are unambiguous, then, this first canon is also the last: 'judicial inquiry is complete.'" *Conn. Nat'l Bank*, 503 U.S. at 254 (quoting *Rubin v. United States*, 449 U.S. 424, 430 (1981)); *see also Bank of Am. Corp. v. United States*, 964 F.3d 1099, 1103 (Fed. Cir. 2020) ("If the statutory language is clear, and the legislative history does

not show that congressional intent was clearly contrary to the section's apparent meaning, th[e] meaning of the statute controls, and there is nothing else for us to review.") (internal citation and quotation marks omitted)).

The text of the CDSOA states that CBP: (1) "shall deposit into the special accounts all antidumping and countervailing duties (including interest earned on such duties)"; and (2) "shall distribute all funds (including all interest earned on the funds) from assessed duties received in the preceding fiscal year to affected domestic producers based on the certifications." 19 U.S.C. §§ 1675c(d)(3), (e)(2), Appx0959–0961. Delinquency interest is derived from "assessed duties," accruing on the outstanding balance of "assessed duties." Therefore, delinquency interest constitutes "interest earned on the [antidumping duty and countervailing duty] funds," in accordance with 19 U.S.C. § 1675c(d)(3). Accordingly, the CDSOA's plain language is clear, imposing an obligation on CBP to both deposit and distribute all interest, including delinquency interest.

First, the CDSOA includes mandatory language, *i.e.*, "shall." "The first sign that the statute impose[s] an obligation is its mandatory language: 'shall.' Unlike the word 'may,' which implies discretion, the word 'shall' usually connotes a requirement." *Me. Cmty. Health Options v. U.S.*, 140 S. Ct. 1308, 1320 (2020) (internal quotation marks and citations omitted); *see also Lexecon Inc. v. Milberg Weiss Bershad Hynes & Lerach*, 523 U.S. 26, 35 (1998) (stating that the word

"shall" "normally creates an obligation impervious to judicial discretion.") (internal citation omitted); *Norman v. United States*, 942 F.3d 1111, 1117 (Fed. Cir. 2019) ("The use of the word 'shall' means what follows is mandatory, not discretionary") (internal citation omitted).

Moreover, "a word is given more precise content by the neighboring words with which it is associated." *United States v. Williams*, 553 U.S. 285, 294 (2008) (internal citation omitted). Here, "shall" appears next to the words "deposit" and "distribute," the actions that relate to the remainder of each statutory clause. Thus, the mandatory language imposes an obligation on CBP to "deposit" all antidumping and countervailing duties (and interest earned on those duties) into special accounts, and to "distribute all funds (including all interest earned on the funds) from assessed duties" to ADPs. 19 U.S.C. §§ 1675c(d)(3), (e)(2), Appx0959–0961. In sum, Congress' use of the word "shall" removes any discretion on CBP's part with respect to depositing and distributing these monies.

Second, the CDSOA provides that "all interest" is subject to the distribution requirement. 19 U.S.C. § 1675c(d)(3), Appx0960 (emphasis added). "'All' means the entire quantity, without reference to relative importance." *Life Techs. Corp. v. Promega Corp.*, 137 S. Ct. 734, 740 (2017) (internal citations omitted). Indeed, courts have repeatedly recognized the broad definition and nature of the word "all." *See, e.g.*, *Norfolk & W. Ry. Co. v. Am. Train Dispatchers Ass'n*, 499 U.S.

117, 128 (1991) ("The contested language in § 11341(a), exempting carriers from 'the antitrust laws and all other law, including State and municipal law,' is clear, broad, and unqualified."); *Gardner v. State of N.J.*, 329 U.S. 565, 573 (1947) ("The words 'all holders of claims' have no qualification and are sufficiently broad to include public agencies as well as private parties."); *United States v. Am. Home Assur. Co.*, 789 F.3d 1313, 1325 (Fed. Cir. 2015) ("The language — 'all bonds' on which the government sues for 'the recovery of duties' — is clear and unqualified."); *SciMed Life Sys., Inc. v. Advanced Cardiovascular Sys., Inc.*, 242 F.3d 1337, 1344 (Fed. Cir. 2001) ("The words 'all embodiments of the present invention' are broad and unequivocal.").

By placing "all" adjacent to "interest," Congress demonstrated its intent for CBP to distribute "all interest" to ADPs. Further, there is nothing in the text of the CDSOA that expressly or impliedly excludes delinquency interest from "all interest." To say otherwise would effectively read the word "all" out of the CDSOA, a result that courts actively seek to avoid. *See, e.g.*, *Rubin v. Islamic Republic of Iran*, 138 S. Ct. 816, 824 (2018) (stating that "one of the most basic interpretive canons" is that a "statute should be construed so that effect is given to all its provisions, so that no part will be inoperative or superfluous, void or insignificant." (quoting *Corley v. United States*, 556 U.S. 303, 314 (2009)); *Hibbs v. Winn*, 542 U.S. 88, 101 (2004) (same); *TRW Inc. v. Andrews*, 534 U.S. 19, 31

(2001) (same); *Ishida v. United States*, 59 F.3d 1224, 1230 (Fed. Cir. 1995) ("The rules of statutory construction require a reading that avoids rendering superfluous any provision of a statute.").

With the plain language of the statute in mind, it is not surprising that CBP had the same understanding of its obligations under the CDSOA, *i.e.*, that delinquency interest had to be distributed to ADPs. In February 2001, CBP specifically discussed preparations to distribute delinquency interest to ADPs. *See* Appx4188. There would have been no need for CBP to prepare for distributions of delinquency interest to ADPs if the agency believed that the CDSOA did not require them.

As of July 2001, however, CBP decided that delinquency interest would not be distributed to ADPs. *See* Appx4256. No contemporaneous explanation or basis for this reversal was provided. The only reason that has been provided in the record appears in the Declaration of Sean Wuethrich, Chief of the Programs Execution Section within CBP, who stated his "understanding through the passing of institutional knowledge that technological limitations of Customs' Automated Commercial System ('ACS') were a reason for the decision to distribute only 19 U.S.C. § 1677g interest." Appx3683. Outside of this interesting statement, the administrative record does not contain any analysis or rationale, legal or other, as to why CBP decided not to fulfill its statutory obligations under the CDSOA.

Furthermore, CBP has recognized that the accrual, assessment, and collection of delinquency interest on outstanding duties is mandated by statute, and thus, is not a matter within CBP's discretion. *See Dis Vintage, LLC v. United States*, Ct. No. 16-00085, 2018 WL 4027107, *3 (Ct. Int'l Trade Aug. 21, 2018) ("That the notices of debt show interest accruing in 30-day increments was not a matter of discretion on the part of Customs."); *United States v. Wash. Int'l Ins. Co.*, 177 F. Supp. 2d 1313, 1317 (Ct. Int'l Trade 2001) ("Customs contends pursuant to legislative mandate, duties and interest not paid in full within 45 days of liquidation or within 30 days of demand are delinquent and Customs is statutorily required to assess and collect interest on those unpaid duties, fees and interest.") (internal quotation marks and citation omitted). In other words, like its obligations under the CDSOA, CBP is statutorily required to collect delinquency interest on outstanding duties, fees, and interest pursuant to 19 U.S.C. § 1505(d). *See Dis Vintage, LLC*, 2018 WL 4027107, at *3 ("Congress provided that '[i]f duties, fees, and interest determined to be due or refunded are not paid in full . . ., any unpaid balance shall be considered delinquent and bear interest by 30-day periods.'") (quoting 19 U.S.C. § 1505(d)).[6]

[6] Notably, the Trade Court did not address this point in its decision. *See generally* Appx0001–0026.

Despite the unambiguous plain language of the CDSOA (and section 1505(d)), the Trade Court engaged in a contorted statutory analysis, to contrive ambiguity that does not exist. In fact, the Trade Court initially appeared to agree with Monterey's analysis of the plain language of the CDSOA, finding that "the plain language of the phrase 'interest earned on such duties,' at first blush, does not favor the agency's interpretation" that the CDSOA limits the interest included in distributions to ADPs to section 1677(g) interest only. Appx0013–0014. Regardless, the Trade Court concluded that ambiguity existed with respect to the term "interest earned on," by considering "other provisions of the Tariff Act," rather than considering the plain language of the CDSOA itself. Appx0014, Appx0023. The Trade Court reached this conclusion despite stating the following:

> In summary, the Deposits into Accounts and Distribution of Funds provisions indicate congressional intent that Customs would: (1) deposit into the Special Accounts assessed antidumping and countervailing duties, *id.* § 1675c(e); (2) deposit also into the Special Accounts "interest," *id.* § 1675c(e)(2), i.e., "all interest," *id.* § 1675c(d)(3), earned on such "funds" or "duties"; and (3) distribute to ADPs all funds from assessed duties, together with all interest earned thereon, received in the preceding fiscal year, *id.*

Appx0016. In light of this determination, it is unclear why the Trade Court then "look[ed] beyond the CDSOA to other Tariff Act provisions" when the CDSOA's text clearly outlines that "all interest" must be included in those distributions. *Id.*

The Trade Court's analysis of the plain language of the CDSOA is improper for two reasons.

First, the Trade Court ignored the word "all" in its analysis of the plain language of the CDSOA. *See* 19 U.S.C. § 1675c(d)(3), Appx0960 (providing that provides that "all interest" is subject to the distribution requirement). By ignoring the broad nature of this word and its placement next to "interest" in the CDSOA, the Trade Court violated "one of the basic interpretive canons," effectively rendering "all" superfluous with respect to the CDSOA's distribution requirement. *Rubin*, 138 S. Ct. at 824 (internal citation omitted). As detailed above, this is a result courts actively seek to avoid. *See id.*; *see also Corley*, 556 U.S. at 314; *Hibbs*, 542 U.S. at 101; *TRW Inc.*, 534 U.S. at 31; *Ishida*, 59 F.3d at 1230.

Second, the Trade Court incorrectly stated that CBP's "interpretation of the word 'assessed' to refer to duties assessed at liquidation, and collected by Customs both before and after liquidation, is not challenged in this litigation." Appx0009. To the contrary, CBP's improper interpretation of the word "assessed" (as presented to the Trade Court) was the linchpin of the agency's faulty analysis of the CDSOA. Indeed, a significant portion of Monterey's briefs before the Trade Court addressed CBP's incorrect interpretation of "assessed." *See* Appx0100–102 (ECF Nos. 113 (opening brief), 126 (reply brief)). For instance, Monterey detailed CBP's failure to read the word "assessed" in context of the CDSOA, and that,

despite the agency's arguments otherwise, "assessed" modifies "duties" and not "interest." *See* Appx0100–102.

Only after ignoring CBP's faulty interpretation of the word "assessed" did the Trade Court search for and find ambiguity in other CDSOA terms, specifically, "interest earned on." *See* Appx0023. The Trade Court then used its own improper finding of ambiguity to reach step two of the *Chevron* analysis, ultimately concluding that CBP's interpretation of the CDSOA was reasonable. *See* Appx0020–0024.

"The Supreme Court has repeatedly cautioned against departing from the plain language of a statute." *Giorgio Foods, Inc. v. U.S.*, 785 F.3d 595, 607 (Fed. Cir. 2015) (Reyna, J. dissenting) (citing *Schindler Elevator Corp. v. United States*, 563 U.S. 401, 407 (2011); *Tenn. Valley Auth. v. Hill*, 437 U.S. 153, 193–94 (1978)). Here, the plain language of the CDSOA clearly instructs that CBP (1) "<u>shall</u> deposit into the special accounts <u>all</u> antidumping and countervailing duties (<u>including interest earned on such duties</u>)," and (2) "<u>shall</u> distribute all funds (including <u>all</u> <u>interest</u> earned on the funds) from assessed duties received in the preceding fiscal year to affected domestic producers based on the certifications." 19 U.S.C. §§ 1675c(d)(3), (e)(2), Appx0959–0961 (emphases added)). For these reasons, the plain language of the CDSOA dictates that CBP is required to include delinquency interest in distributions made to ADPs. CBP's unilateral decision to

omit delinquency interest from CDSOA distributions directly violates the express requirements of CDSOA and is not entitled to *Chevron* deference.

### B. Legislative History Further Illustrates the CSDOA's Purpose and Congressional Intent to Include Delinquency Interest in Distributions to ADPs

Although the plain language of the CDSOA alone constitutes a sufficient basis for determining that *Chevron* deference is not warranted here, the legislative history of the statute provides additional evidence of congressional intent to include delinquency interest in distributions made to ADPs.

As the Court has recognized, "[w]hile legislative history generally carries little weight when interpreting the text of issued statutes, '[w]hen aid to construction of the meaning of words, as used in the statute, is available, there certainly can be no rule of law which forbids its use, however clear the words may appear on superficial examination.'" *Aqua Prods., Inc.*, 872 F.3d at 1312 (quoting *Train v. Colo. Pub. Int. Rsch. Grp., Inc.*, 426 U.S. 1, 10 (1976)).

Indeed, Courts must "interpret the words of . . . statutes in light of the purposes Congress sought to serve." *Chapman v. Houston Welfare Rts. Org.*, 441 U.S. 600, 607–608 (1979). Here, as the Court has specifically stated, the CDSOA's "legislative history generally expresses Congressional intent to assist domestic U.S. industries injured by foreign dumping and subsidization." *PS Chez Sydney, L.L.C.*, 684 F.3d at 1382 (internal quotation marks and citation omitted).

"To be sure, Congress intended that the remedial effect of the CDSOA distributions would be distinct from the remedial trade relief afforded under U.S. trade laws." *Giorgio Foods, Inc.*, 785 F.3d at 604 (Reyna, J. dissenting).

To provide such assistance, monies would be distributed to ADPs, including funds finally assessed. The Congressional record is replete with testimony addressing such an intent and purpose with respect to the CDSOA and related bills:

- "Currently, revenues raised through import duties and fines go to the U.S. Treasury. Under our bill, duties and fines would be transferred to injured U.S. companies as compensation for damages caused by dumping or subsidization." 145 CONG. REC. S497 (daily ed. Jan. 19, 1999) (statement of Sen. DeWine) (emphasis added).
- "The amendment . . . would reduce the adverse effect of continued dumping or subsidization *by* distributing the monies finally assessed to the injured industry." CONG. REC. H9708 (daily ed. Oct. 11, 2000) (statement of Rep. Nancy Johnson) (emphasis added).
- The CDSOA gives ADPs a "means to recover from the losses resulting from [foreign anticompetitive] actions." 146 CONG. REC. S10697 (daily ed. Oct. 18, 2000) (statement of Sen. Byrd).

Despite the plain language of the CDSOA that underscores this purpose, CBP ignored its statutory mandate by failing to include delinquency interest in distributions made to ADPs.[7]

[7] In fact, CBP's failure to follow the text of the CDSOA led to the passage of the TFTEA, 19 U.S.C. § 4401. As Senator John Thune explained, CBP "ignored the direction of the statute to pay all interest to producers," the agency's practice of withholding delinquency interest "defies the plain language of the statute," and the amendment was intended to "correct[] CBP's misreading of the law." CONG. REC. S833-884, 843 (daily ed. Feb. 11, 2016) (statement of Sen. Thune).

## III. CBP'S UNREASONABLE INTERPRETATION OF THE CDSOA IS NOT ENTITLED TO *CHEVRON* DEFERENCE

Even if ambiguity did exist within the plain language of the CDSOA (which is not the case), CBP's impermissible and unreasonable interpretation of the statute is not entitled to *Chevron* deference for two reasons.

First, CBP's *post hoc* interpretation of the CDSOA hinges entirely on the preamble to the Final Rule, not on the regulation itself. As courts have repeatedly held, preambles do not have force of law and are not entitled to *Chevron* deference. Moreover, the preamble contradicts both the unambiguous, plain language of the CDSOA, which requires collection and distribution of all interest to ADPs, and both the Final Rule and the codified regulation (19 C.F.R. § 159.64(e)), which say nothing about delinquency interest.

Second, when the Final Rule was published the regulation was codified, CBP failed to identify or provide any explanation for its decision to omit delinquency interest from distributions to ADPs. CBP's lack of analysis with respect to this determination renders its actions arbitrary and capricious and without force of law.

For these reasons, this Court should not defer to CBP's interpretation of the CDSOA. Further, the Court should find that CBP's failure to follow the mandate of the CDSOA — the plain language of which requires "all interest," including

delinquency interest, to be included in distributions to ADPs — constitutes *ultra vires* action.

### A. CBP's *Post Hoc* Interpretation of the CDSOA Is Unreasonable Because It Rests Entirely on the Preamble to the Final Rule, Which Is Not Entitled to *Chevron* Deference

Where a statute authorizes an agency to act "by regulation," the Court has held that an agency is entitled to deference under *Chevron* only with respect to interpretations of ambiguous statutory provisions that are made in a regulation. *See Aqua Prods., Inc.*, 872 F.3d at 1332.[8] *Chevron* deference is not afforded to an agency's statutory interpretation made in other contexts. *See id.*

"In the process of considering a regulation in relation to specific factual situations, a court may conclude that the regulation is inconsistent with the statutory language or is an unreasonable implementation of it. In those instances, the regulation will not control." *United States v. Haggar Apparel Co.*, 526 U.S. 380, 392 (1999).

Here, the text of the 19 C.F.R. § 159.64(e) does not conflict with the language of the CDSOA. The regulation neither limits the interest that will be transferred to the special account to Section 1677g interest nor excludes delinquency interest. In fact, the regulation is entirely silent as to any procedures

[8] A seven-judge majority concurred with respect to this holding. *See Aqua Prods., Inc.*, 872 F.3d at 1320, 1323 (Judge O'Malley opinion, joined by Judges Newman, Lourie, Moore and Wallach), 1338 (Judge Reyna opinion, joined by Judge Dyk).

regarding the collection and distribution of delinquency interest. The regulation provides that "statutory interest charged on antidumping and countervailing duties at liquidation will be transferred to the Special Account, when collected from the importer." 19 C.F.R. § 159.64(e). At a minimum, the regulation does not exclude delinquency interest from CDSOA distributions.

To now argue that it does, CBP looks outside of the regulation and focuses on the preamble to the Final Rule. *See, e.g.*, Appx0133 (Trade Court noting that "the reg itself isn't so clear. The preamble puts a lot of weight on a statutory cite. And only when you put the two together does a more clearer picture appear."). In fact, before the Trade Court, CBP based its entire argument on a single word in the preamble — "only" — which appears in a discussion of an entirely different topic, specifically, whether the special accounts <u>themselves</u> would be interest-bearing:

> funds in Government accounts are not interest bearing unless specified by Congress. Because Congress did not make an explicit provision for the accounts established under the CDSOA to be interest-bearing, no interest may accrue on these accounts. Thus, <u>only</u> interest charged on antidumping and countervailing duty funds themselves, pursuant to the express authority in 19 U.S.C. § 1677g, will be transferred to the special accounts and made available for distribution under the CDSOA.

Appx1288 (66 Fed. Reg. at 48,550 (emphasis added))[9]; *see also* Appx0102 (ECF No. 123 (Defs.' Br. at 31)).

*Chevron* deference should not be afforded to CBP's interpretation. First, the preamble to the Final Rule does not possess the force of law necessary for *Chevron* deference to apply. At best, the preamble serves an interpretative function with respect to the statute and regulation.

Preamble language is not equivalent to statutory language. *See, e.g.*, *Nat'l Wildlife Fed'n v. EPA*, 286 F.3d 554, 569 (D.C. Cir. 2002) ("The preamble to a rule is not more binding than a preamble to a statute."). Specifically, the preamble "is not an operative part of the statute and it does not enlarge or confer powers on administrative agencies or officers." *Ass'n of Am. R.Rs. v. Costle*, 562 F.2d 1310, 1316 (D.C. Cir. 1977) (citing *Yazoo R.R. Co. v. Thomas*, 132 U.S. 174, 188 (1889)). Rather, a preamble "contributes to a general understanding of a statute," *Costle*, 562 F.2d at 1316, and can provide clarification or an interpretation with respect to the underlying statute or regulation.

Courts often refuse to defer to agency interpretations that appear only in preambles. *See, e.g.*, *Wyeth v. Levine*, 555 U.S. 555, 577 (2009) (holding that "the FDA's 2006 preamble does not merit deference."); *Luminant Generation Co. v.*

---

[9] It bears noting that this passage's discussion of the interest to be distributed to ADPs refers to "interest charged on antidumping and countervailing duty funds themselves" without any limitation.

*EPA*, 675 F.3d 917, 931 (5th Cir. 2012) ("We do not owe *Chevron* deference to the General Preamble because, by its own terms, it does not carry the force of law.").

Furthermore, preambles that are not subject to public notice and comment do not possess the same legal force as statutes or rules. *See N.H. Hosp. Ass'n v. Azar*, 887 F.3d 62, 76 (1st Cir. 2018) ("Although the 2008 regulation was subject to notice and comment, the preamble . . . was not."); *Leslie Salt Co. v. United States*, 55 F.3d 1388, 1393 (9th Cir. 1995) ("It is undisputed that the preamble has not been subjected to notice and comment."); *see also Nat'l Org. of Veterans' Advocs., Inc. v. Sec'y of Veterans Affs.*, 260 F.3d 1365, 1378 (Fed. Cir. 2001) ("*Chevron* deference does not normally apply to informal proceedings.").

The preamble to 19 C.F.R. § 159.64 was not subject to public notice and comment, appearing in the Final Rule only. Appx1277–1283 (66 Fed. Reg. at 33,922 (Proposed Rule) *with* Appx1284–1293 (66 Fed. Reg. at 48,550 (Final Rule). In fact, the preamble does not appear in the codified regulation itself. Thus, the preamble was not the product of formal agency action. Accordingly, the preamble is "beyond the *Chevron* pale," and is not entitled to deference. *United States. v. Mead Corp.*, 533 U.S. 218, 234 (2001).

Second, CBP's interpretation contradicts both the plain language of the CDSOA, which requires collection and distribution of all interest to ADPs, and the codified regulation, which says nothing about delinquency interest, much less

anything to distinguish how delinquency interest is to be treated. "[A] preamble cannot overcome the statute's plain language." *See Hymas v. U.S.*, 810 F.3d 1312, 1323 (Fed. Cir. 2016) (citing *Dist. of Columbia v. Heller,* 554 U.S. 570, 578 n.3 (2008) ("[I]n America the settled principle of law is that the preamble cannot control the enacting part of the statute in cases where the enacting part is expressed in clear, unambiguous terms.") (internal quotation marks and citation omitted)). Given that a statutory preamble cannot control the enacting part of the statute's plain language, it necessarily follows that a regulatory preamble cannot control the plain language of the rule.

Furthermore, "interpretations of a statute which would produce absurd results are to be avoided if alternative interpretations consistent with the legislative purpose are available." *Griffin v. Oceanic Contractors, Inc.*, 458 U.S. 564, 575 (1982). Thus, an agency decision or interpretation cannot stand where it is based "on an erroneous view of the law." *Prill v. NLRB*, 755 F.2d 941, 947 (D.C. Cir. 1985).

As discussed above, the plain language of the CDSOA unambiguously directs CBP to include all interest, including delinquency interest, in distributions to ADPs. This requirement is unsurprising given the legislative purpose of the CDSOA: to assist domestic U.S. industries injured by foreign dumping and subsidization using a remedial tool distinct from that provided under the trade

laws. The Court has explicitly recognized this purpose. *See PS Chez Sydney, L.L.C.*, 684 F.3d at 1382; *Giorgio Foods, Inc.*, 785 F.3d at 604 (Reyna, J. dissenting). It would be an absurd result and an erroneous view of the law to exclude delinquency interest from the CDSOA remedy where the plain language of the CDSOA requires "all interest" to be included in distributions to ADPs.

Notably, the Trade Court did not affirm on the basis of CBP's interpretation of the CDSOA via the preamble. Rather, the Trade Court crafted its own interpretation, finding that ambiguity existed in the term "interest earned on." Appx0014–00016.

Courts may not substitute their own interpretations for those of the agency, and interpretations on which the agency did not rely in making its decisions are not entitled to *Chevron* deference. Indeed, "it is a foundational principle of administrative law that a court may uphold agency action <u>only on the grounds that the agency invoked when it took the action</u>." *Michigan v. EPA*, 576 U.S. 743, 758 (2015) (emphasis added) (citing *SEC v. Chenery Corp.*, 318 U.S. 80, 87 (1943)); *see also SEC v. Chenery Corp.*, 332 U.S. 194, 196 (1947) (finding that a reviewing court "is powerless to affirm the administrative action by substituting what it considers to be a more adequate or proper basis"). "This rule requires agency judgments to stand on their own merit. Otherwise, they cannot stand at all." *Baude v. United States*, 955 F.3d 1290, 1302 (Fed. Cir. 2020) (citing *Chenery*

*Corp.*, 318 U.S. at 88). Put another way, courts "may not supply a reasoned basis for the agency's action that the agency itself has not given." *Encino Motorcars, LLC v. Navarro*, 579 U.S. 211, 224 (2016) (internal citations and quotation marks omitted) (emphasis added).

CBP has never claimed any ambiguity with respect to the term "interest earned on"; such ambiguity was of the Trade Court's own making. Thus, in actuality, the Trade Court did not reach, much less defer to, CBP's interpretation, and never found the agency's interpretation of the CDSOA to be reasonable. *See* Appx0001–0022. In sum, the Trade Court's substitution of its own interpretation for CBP's interpretation under the guise of *Chevron* deference was improper and should be reversed.

### B. CBP's Interpretation Is Unreasonable Because CBP Failed to Explain Contemporaneously the Basis for Its Decision to Exclude Delinquency Interest from CDSOA Distributions

Another reason demonstrates why CBP's interpretation of the CDSOA is unreasonable and therefore should not be afforded *Chevron* deference: CBP failed to explain contemporaneously the basis for its decision to exclude delinquency interest from CDSOA distributions. Accordingly, CBP's action is arbitrary and capricious and without force of law. *See Confederated Tribes of Grande Ronde Cmty. of Ore. v. Jewell*, 830 F.3d 552, 559 (D.C. Cir. 2016) ("Of course, agency action is always subject to arbitrary and capricious review under the APA, even

when it survives *Chevron* Step Two — an inquiry that in our case overlaps." (citing *Judulang v. Holder*, 565 U.S. 42, 52 n.7 (2011)).

"Even under *Chevron*'s deferential framework, agencies must operate 'within the bounds of reasonable interpretation.'" *Util. Air Regul. Grp. v. EPA*, 573 U.S. 302, 321 (2014) (quoting *City of Arlington, Tex.*, 569 U.S. at 296). Such bounds require an agency to "cogently explain why it has exercised its discretion in a given manner. . . ." *Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co*., 463 U.S. 29, 48 (1983); *see also Encino Motorcars, LLC*, 579 U.S. at 221 ("One of the basic procedural requirements of administrative rulemaking is that an agency must give adequate reasons for its decisions.") (internal citations omitted); *Chenery Corp*., 318 U.S. at 94 ("[T]he orderly functioning of the process of review requires that the grounds upon which the administrative agency acted be clearly disclosed and adequately sustained."); *In re Lee*, 277 F.3d 1338, 1342 (Fed. Cir. 2002) (finding that an agency must "provide an administrative record showing the evidence on which the findings are based, accompanied by the agency's reasoning in reaching its conclusions.") (internal citations omitted).

*Chevron* deference is not warranted where the agency fails to uphold its requirement to provide an adequate explanation for its decisions when issuing regulations. *See Encino Motorcars, LLC*, 579 U.S. at 221 (internal citations omitted). Specifically, "[t]he agency 'must examine the relevant data and

articulate a satisfactory explanation for its action including a rational connection between the facts found and the choice made.'" *Id.* (quoting *State Farm Mut. Auto. Ins. Co*., 463 U.S. at 43). This requirement is satisfied where the agency provides an explanation that "is clear enough that its 'path may be reasonably discerned.'" *Encino Motorcars, LLC*, 579 U.S. at 221 (quoting *Bowman Transp., Inc. v. Ark.-Best Freight Sys., Inc.*, 419 U.S. 281, 285–286 (1974)). But where the agency fails "to provide even that minimal level of analysis, its action is arbitrary and capricious and so cannot carry the force of law." *Encino Motorcars, LLC*, 579 U.S. at 221 (citing 5 U.S.C. § 706(2)(A); *State Farm*, 463 U.S. at 42–43).

An agency's notice is insufficient "where interested parties would have had to divine [the Agency's] unspoken thoughts," or engage on a "scavenger hunt" to discern the underlying explanation. *See Aqua Prods., Inc.*, 872 F.3d at 1320, 1322 (internal citation and quotation marks omitted). That is the case in this appeal. In short, "[i]f notice is inadequate where an agency's explanations are unclear, it is surely inadequate when the agency expressly denies it is adopting a practice it later attempts to insert into a rule by interpretation." *Id.* at 1320.

Here, CBP failed to explain contemporaneously that it decided to exclude delinquency interest from distributions made to ADPs, much less why. In fact, the administrative record reveals that CBP's initial position was delinquency interest would be distributed to ADPs. In February 2001, CBP initially intended to

distribute delinquency interest as the "position of the agency," and specifically discussed its preparations to ensure that this requirement was achieved. *See* Appx4187–88. Subsequently, CBP changed its mind, something the agency claims is apparent via the June 27, 2001 notice of proposed rulemaking. *See* Appx4156.

CBP, however, did not change the text of the Proposed Rule to reflect the agency's new position, and its decision also is not reflected in any changes to the text of the Final Rule. *Compare* Appx1283 (66 Fed. Reg. at 33,922 (Proposed Rule) ("[I]f there is interest paid by the importer on any antidumping or countervailing duties billed during the liquidation process for the import entries, that interest will be transferred to the Clearing Account or Special Account, as appropriate.")), *with* Appx1292 (66 Fed. Reg. at 45,554 ("[S]tatutory interest charged on antidumping and countervailing duties at liquidation will be transferred to the Special Account, when collected from the importer.")). Additionally, the preamble that CBP has cited in support of its changed position carries no legal force and the single word at issue addresses an entirely different issue. Thus, the public, including Monterey, had no idea that the Final Rule somehow indicated (let alone provided sufficient notice of) CBP's decision to withhold delinquency interest.

Moreover, the administrative record is devoid of any rationale or explanation for this shift, as the law requires. *See Encino Motorcars, LLC*, 579 U.S. at 221;

*Michigan*, 576 U.S. at 758 ("It is a "foundational principle of administrative law that a court may uphold agency action only on the grounds that the agency invoked when it took the action.") (citing *Chenery Corp.*, 318 U.S. at 87). The only reason now identified, which was only revealed in the supplemental administrative record, is a *post hoc* statement prepared for purposes of this litigation that refers to "technological limitations" of the CBP's internal systems. Appx3683. And this non-legal, entirely prosaic excuse — based on "inherited institutional knowledge" (whatever that means) — was not disclosed until February 19, 2021, *i.e.*, nearly 20 years after the Final Rule was published and 19 C.F.R. § 159.64(e) was codified, in a declaration prepared for this litigation and only belatedly released as part of a court-ordered supplement to the administrative record. Of course, this statement does not (and cannot) satisfy CBP's obligation to provide a contemporaneous, satisfactory explanation of the agency's interpretation of the CDSOA's requirements.

In addition to failing to notify the public of its unlawful decision to exclude delinquency interest from CDSOA distributions, CBP applied the late payments it received first to pay off delinquency interest before crediting any amounts to the duties themselves, section 1677g interest, or other fees owed. *See* Appx0084 (Pl.'s Am. Compl. at ¶¶ 19–20, ECF No. 25). This action is problematic for two reasons.

First, CBP's practice manifestly frustrates Congress' intent behind the

CDSOA: to remedy the injured industry by redirecting all collected AD/CVD duties and interest away from the U.S. Treasury and instead, to ADPs. *See supra* at 30. By applying such payments to delinquency interest first, CBP artificially reduced the amount of AD/CVD duties and 1677g interest to be deposited into the Special Accounts and subsequently distributed to ADPs. This practice is yet another example of *ultra vires* action by CBP, as the CDSOA clearly requires the agency to distribute all duties and interest to ADPs.

Second, CBP's ability to apply late payments to delinquency interest undercuts its claim that the agency could not separately identify and account for delinquency interest amounts. *See* Appx3683. As discussed below, CBP can (or should be able to) separately calculate the amount of delinquency interest attributable to the AD/CVD duties since it tracks the amounts of AD and CVD duties on each entry, and CBP knows the amounts of other duties and fees. *See infra* at 46.

In sum, CBP failed to satisfy basic procedural requirements by providing contemporaneous "adequate reasons for its decisions" and a minimum level of analysis supporting those decisions. *Encino Motorcars, LLC*, 579 U.S. at 221. The administrative record does not contain any contemporaneous reason or analysis regarding CBP's statutory interpretation, and therefore, the agency's

action is arbitrary and capricious. Accordingly, *Chevron* deference is not warranted.

### C. CBP's "Technological Limitations" Excuse Does Not Transform the Agency's Faulty Analysis of the CDSOA into a Reasonable Interpretation that Is Entitled to *Chevron* Deference

CBP's "technological limitations" do not constitute a reasonable (or legal) interpretation of the CDSOA that is entitled to *Chevron* deference, even if the agency had provided that justification at the time Final Rule was published and the regulation was codified.[10]

CBP claimed that, in 2001, the agency's internal system could not separately identify and account for delinquency interest amounts. *See* Appx3683. CBP asserted that, due to these limitations, the agency decided to exclude delinquency interest from distributions under the CDSOA. *See id.* In other words, CBP argued that because "technological limitations" prevented the agency from fulfilling its statutory obligations, its interpretation of the CDSOA was reasonable and entitled to *Chevron* deference. The Trade Court apparently subscribed to this rationale, finding CBP's interpretation of the CDSOA to be reasonable after observing that "interest earned on a delinquent payment of an already-liquidated entry can be

---

[10] The "technological limitations" excuse was not provided until February 2021, when CBP produced a Declaration from CBP's Chief of the Programs Execution Section, which was prepared for purposes of this litigation. *See* Appx3683.

viewed as having been earned on the single, liquidated sum that is in arrears." Appx0024.

The Trade Court erred when it found CBP's interpretation of the CDSOA to be reasonable on this basis, and thereby permitted the agency to change the requirements of the CDSOA to accommodate its "technological limitations." In what the U.S. Supreme Court describes as "the core administrative-law principle," "an agency may not rewrite clear statutory terms to suit its own sense of how the statute should operate." *Util. Air Regul. Grp.*, 573 U.S. at 328. As such, "an agency has no power to 'tailor' legislation to bureaucratic policy goals." *Id.* at 325. Simply because a task may be challenging does not provide a basis — let alone a "reasonable" one — for ignoring a statutory directive.

Moreover, delinquency interest is easily calculated. As discussed above, there is no question that delinquency interest — which is derived from outstanding "assessed duties" — constitutes "interest earned on" AD and CVD funds. CBP knows which entries are subject to AD/CVD orders and which entries involve duties that remain outstanding. CBP unquestionably tracks the amounts of AD and CVD duties on each entry, and CBP knows the amounts of other duties and fees. Therefore, CBP can (or at least should be able to) separately calculate the amount of delinquency interest attributable to the AD/CVD duties on such entries versus delinquency interest stemming from other duties and fees. Indeed, CBP must

perform such action to be in compliance with TFTEA. *See* 19 U.S.C. §§ 4401(c)(1), (2)(B).

In sum, CBP's decision to exclude delinquency interest in distributions to ADPs due to the agency's "technological limitations" is not a reasonable interpretation of the CDSOA that is entitled to *Chevron* deference.

## IV. THE TRADE COURT IMPROPERLY DISMISSED AS TIME-BARRED MONTEREY'S CLAIMS REGARDING CDSOA DISTRIBUTIONS RECEIVED PRIOR TO 2014

The Trade Court erred when it held that Monterey's claims "are time-barred, and therefore must be dismissed, to the extent these claims seek Section 1505(d) interest on any CDSOA distributions they received prior to July 15, 2014." *Adee Honey Farms v. United States*, 450 F. Supp. 3d 1365, 1378 (Ct. Int'l Trade 2020); *see also* Appx0095. The Trade Court incorrectly concluded "that 19 C.F.R. § 159.64(e), when read together with the preamble language that pertained to it, provided adequate notice of the agency's decision that no type of interest other than Section 1677g interest would be deposited into the special accounts for distribution to ADPs." *Adee Honey Farms*, 450 F. Supp. 3d at 1373. The Trade Court further erred when it denied Monterey's motion for reconsideration and reversal and found that the Final Rule itself placed Monterey on notice of CBP's decision to exclude delinquency interest from distributions to ADPs. *See*

Appx0100–0103 (ECF Nos. 113 (Motion for Reconsideration), 132 (Denial of Motion for Reconsideration)).

The Trade Court's dismissal of Monterey's claims regarding pre-2014 CDSOA distributions should be reversed. First, the Trade Court's ruling implies that CBP's "decision," *i.e.*, interpretation, of the CDSOA ostensibly in the Final Rule (or its preamble) should be afforded deference. As detailed above, this is incorrect, and *Chevron* deference is not warranted here. *See supra* at 16–43.

Second, contrary to the Trade Court's reasoning, the Final Rule, on its own, could not have provided notice of CBP's unlawful decision to exclude delinquency interest from CDSOA distributions. Indeed, as discussed above, both the Final Rule and the codified regulation were entirely silent as to the procedures regarding the collection and distribution of delinquency interest, much less any limitations on its collection and distribution to ADPs.

Third, CBP did not revise the text of the Proposed Rule to reflect the agency's new position, and its decision also is not reflected in the text of the Final Rule or the codified regulation. *Compare* Appx1277–1283 (66 Fed. Reg. at 33,922 (Proposed Rule) *with* Appx1284–1293 (Final Rule) *and* 19 C.F.R. § 159.64(e).

Fourth, the critical preamble language on which CBP relies pertains to a completely different topic, specifically whether the special accounts <u>themselves</u> would be interest-bearing. CBP's position that this language would direct

procedures regarding the collection and distribution of delinquency interest could be described as tenuous at best.

Fifth, the annual reports CBP published following the enactment of the CDSOA did not separately identify the portion of the total amounts collected and distributed under each AD/CVD order attributable to the interest on those duties. *See* Appx0084 (Pl.'s Am. Compl. at ¶ 13, ECF No. 25). In fact, "[a]t no time since the effective date of the CDSOA has Customs published, or otherwise made available or accessible to any plaintiff, any data on CDSOA collections and distributions sufficient to separately identify the interest collected or paid under any specific AD/CVD order in any specific year." Appx0084 (Pl.'s Am. Compl. at ¶ 14, ECF No. 25). In other words, the annual reports did not provide notice that the amounts provided in the annual notices excluded delinquency interest. *See* Appx0084 (Pl.'s Am. Compl. at ¶ 13, ECF No. 25).

As the Court has held, an agency's notice is insufficient "where interested parties would have had to divine [the Agency's] unspoken thoughts," or engage in a "scavenger hunt" to discern the underlying explanation. *See Aqua Prods., Inc.*, 872 F.3d at 1320, 1322 (internal citation and quotation marks omitted). Neither the Final Rule nor its preamble placed Monterey on notice of CBP's intent to unlawfully disregarding its statutory mandate under the CDSOA to include all interest in distributions made to ADPs.

CBP never provided notice of its intent to ignore its obligations under the CDSOA and to omit delinquency interest from CDSOA distributions. In fact, Monterey did not become aware of CBP's unlawful decision to exclude delinquency interest from CDSOA distributions until 2014, during a telephone call with CBP officials. *See* Appx0084 (Pl.'s Am. Compl. at ¶¶ 19–20, ECF No. 25).

"A limitations period ordinarily does not begin to run until the plaintiff has a complete and present cause of action." *SKF USA, Inc.*, 556 F.3d at 1348 (Fed. Cir. 2009) (internal quotation marks and citations omitted). Specifically, "a claim accrues when 'the aggrieved party reasonably should have known about the existence of the claim.'" *Mitsubishi Elecs. Am., Inc. v. United States*, 44 F.3d 973, 978 (Fed. Cir. 1994) (quoting *St. Paul Fire & Marine Ins. Co. v. United States*, 959 F.2d 960, 964 (Fed. Cir. 1992)). Monterey brought the present action in 2016 pursuant to 28 U.S.C. § 1581(i), which has a two-year statute of limitations. *See* 28 U.S.C. § 2636(i). As Monterey first discovered CBP's *ultra vires* actions in 2014, the pre-2014 claims were timely filed.

For these reasons, Monterey respectfully requests that the Court reverse the Trade Court's dismissal of Monterey's claims related to CDSOA distributions received prior to July 15, 2014.

## CONCLUSION

For the reasons discussed above, Monterey respectfully requests that this Court reverse the Trade Court's judgment and direct the Trade Court, on remand, to enter judgment in favor of Monterey.

Respectfully submitted,

Adam H. Gordon, Esq.
Jennifer M. Smith, Esq.
Lauren Fraid, Esq.
**THE BRISTOL GROUP PLLC**
1707 L Street, NW, Suite 570
Washington, DC 20036
202-991-2700

Dated: October 28, 2022

*Counsel to Plaintiff-Appellant Monterey Mushrooms, Inc.*

# ADDENDUM OF REQUIRED DOCUMENTS

## TABLE OF CONTENTS


| Tab No. | Document | Appendix Pages |
|---|---|---|
| 1 | *Adee Honey Farms, et al.*, v. *United States, et al.*, Slip Op. 22-70 | Appx0001-0026 |
| 2 | *Adee Honey Farms, et al.*, v. *United States, et al.*, Judgment | Appx0027-0028 |

# Tab 1

## *Adee Honey Farms, et al., v. United States, et al.,* Slip Op. 22-70

## Appx0001-0026

**Slip Op. No. 22-70**

**UNITED STATES COURT OF INTERNATIONAL TRADE**

| | |
|---|---|
| **ADEE HONEY FARMS, et al.,**<br><br>Plaintiffs,<br><br>v.<br><br>**UNITED STATES, et al.,**<br><br>Defendants. | **Before: Timothy C. Stanceu, Judge**<br><br>**Consol. Court No. 16-00127** |

**OPINION**

[Denying motions of plaintiffs for judgment on the agency record]

Dated: June 16, 2022

*Paul C. Rosenthal*, Kelley Drye & Warren LLP, of Washington, D.C., for plaintiffs Adee Honey Farms, A. H. Meyer & Sons Inc., Mark Almeter, Jim Baerwald, Bailey Enterprises Inc., Beaverhead Honey Co. Inc., Bee Box Ranch, Bee Haven Inc., Bill Rhodes Honey Company LLC, Mark T. Brady, Brian N. Hannar, Curt Bronnenberg, Browns Honey Farms, Carys Honey Farms Inc., Charles L. Emmons, Robert S. Fullerton, Clyde A. Gray, Paul Hendricks, Coy's Honey Farm Inc., Culps Honey Farm LLC, Danzig Honey Company, Darren Cox, David W. Stroope Honey Company, Evergreen Honey Company Inc., Fischer's Honey Farm Inc., Gause Honey, Mark R. Gilberts, Godlin Bees, Inc., Dency's Inc., Grand River Honey Co., Inc., Harvest Honey Inc., Hiatt Honey, Honey House Ent., Bill Hurd, Ray L. Johnson, Jr., Johnston Honey Farms, Donald Kohn, Las Flores Apiaries Inc., Longs Apiaries, Long's Honey Farms Inc., Mackrill Honey Farms & Sales, McCoy's Sunny South Apiaries Inc., Merrimack Valley Apiaries Inc., Old Mill Apiaries, Dirk W. Olsen, William H. Perry, Robertson Pollination Service, Schmidt Honey Farms, Sioux Honey Association, Smoot Honey Co. Inc., Steve E. Park Apiaries, Strachan Apiaries Inc., Don Wiebersiek, Wilmer Farms Inc., Elmer J. Yaddof, Talbott's Honey, Christopher Ranch, LLC, L.K. Bowman Co., The Garlic Company, Vessey and Company, Inc., A & S Crawfish, Arnaudville Seafood Plant, Acadiana Fisherman's Cooperative, Atchafalaya Crawfish Processors, Inc., Bayou Land Seafood, LLC, Blanchard's Seafood, Inc., Bonanza Crawfish Farm, Inc., Cajun Seafood Distributor, Inc., Carl's Seafood, Catahoula Crawfish, Inc., Choplin Seafood,

Teche Valley Seafood, CJL Enterprises, Inc., Crawfish Enterprises, Inc., Harvey's Seafood, L.T. West, Inc., Louisiana Premium Seafoods, Inc., Louisiana Seafood Company, Phillips' Seafood, Prairie Cajun Wholesale Distributors, Inc., Randol, Inc., Riceland Crawfish, Inc., Seafood International, Inc., and Sylvester's Crawfish. With him on the submissions were *Michael J. Coursey*, *John M. Herrmann II*, *Jennifer E. McCadney*, and *Cameron R. Argetsinger* of the same firm and *Louis S. Mastriani*, Adduci, Mastriani & Schaumberg, also of Washington, D.C.

*Adam H. Gordon*, The Bristol Group PLLC, of Washington, D.C., for plaintiff Monterey Mushrooms, Inc. With him on the submissions was *Lauren Fraid*.

*Beverly A. Farrell*, Senior Trial Attorney, Commercial Litigation Branch, Civil Division, U.S. Department of Justice, of New York, NY, for defendants United States, U.S. Customs and Border Protection, and Chris Magnus, Commissioner of U.S. Customs and Border Protection. With her on the submissions were *Brian M. Boynton*, Principal Deputy Assistant Attorney General, *Jeanne E. Davidson*, Director, and *Justin R. Miller*, Attorney-in-Charge, International Trade Field Office. Of counsel were *Suzanna Hartzell-Ballard* and *Jessica Plew*, Office of Assistant Chief Counsel, U.S. Customs and Border Protection, of Indianapolis, Indiana.

Stanceu, Judge: Plaintiffs are domestic producers of honey, crawfish, garlic, or mushrooms that qualified as "affected domestic producers" ("ADPs") entitled to receive certain cash distributions under the Continued Dumping and Subsidy Offset Act of 2000 (the "CDSOA" or "Byrd Amendment"), 19 U.S.C. § 1675c.[1] Under the Byrd Amendment, ADPs received annual distributions resulting from the government's collection of duties assessed and collected upon imported merchandise under antidumping duty ("AD") and countervailing duty ("CVD") orders.

---

[1] All citations to the United States Code are to the 2012 edition unless otherwise noted, except for citations to the Continued Dumping and Subsidy Offset Act of 2000 ("CDSOA"), which are citations to 19 U.S.C. § 1675c as in effect prior to repeal. All citations to the Code of Federal Regulations are to the 2014 edition unless otherwise noted.

In this litigation, plaintiffs claim that the U.S. Customs Service, now U.S. Customs and Border Protection ("Customs" or "CBP"), unlawfully failed to include in their distributions interest assessed after liquidation ("delinquency interest") that pertained to collected antidumping or countervailing duties.

Before the court are plaintiffs' motions for judgment on the agency record under USCIT Rule 56.1, in which they argue that CBP's refusal to include the delinquency interest in their distributions was contrary to the Byrd Amendment and seek judgments for payment of the interest they claim they should have received. Because plaintiffs have not demonstrated their entitlement to these judgments, the court denies their motions.

## I. Background

Background on this litigation is presented in this court's prior Opinion and Order granting defendants' motion to dismiss in part and denying it in part. *See Adee Honey Farms v. United States*, 44 CIT __, __, 450 F. Supp. 3d 1365, 1367–1370 (2020) ("*Adee Honey Farms I*").

Various plaintiffs commenced separate actions on July 15, 2016,[2] which the court consolidated on September 20, 2016. Order (Sept. 21, 2016), ECF No. 13. After

---

[2] Summons, Ct. No. 16-00127, ECF No. 1; Compl., Ct. No. 16-00127, ECF No. 2; Summons, Ct. No. 16-00129, ECF No. 1; Compl., Ct. No. 16-00129, ECF No. 2; Summons, Ct. No. 16-00130, ECF No. 1; Compl., Ct. No. 16-00130, ECF No. 2; Summons, Ct. No. 16-00131, ECF No. 1; Compl., Ct. No. 16-00131, ECF No. 2.

consolidation, defendants filed a motion to dismiss. Defs.' Mot. to Dismiss (Jan. 9, 2017), ECF No. 19. On February 6, 2017, plaintiffs filed four amended complaints. First Am. Compl. of Adee Honey Farms, et al., Ct. No. 16-00127, ECF No. 22; First Am. Compl. of Christopher Ranch, LLC, et al., Ct. No. 16-00129, ECF No. 24; First Am. Compl. of Monterey Mushrooms, Inc., Ct. No. 16-00130, ECF No. 25; First Am. Compl. of A&S Crawfish, et al., Ct. No. 16-00131, ECF No. 23.

On June 1, 2020, this court issued its Opinion and Order in *Adee Honey Farms I*, ruling that plaintiffs' claims seeking delinquency interest on any CDSOA distributions received prior to July 15, 2014 were untimely according to the two-year statute of limitations of 28 U.S.C. § 2636(i). *Adee Honey Farms I*, 44 CIT at __, 450 F. Supp. 3d. at 1378.[3]

On May 24, 2021, the plaintiffs other than Monterey Mushrooms, Inc. ("Monterey Mushrooms") filed a joint motion for judgment on the agency record and accompanying brief. Pls.' Rule 56.1 Mot. for J. on the Agency R., ECF No. 114; Mem. in Supp. of Pls.' Rule 56.1 Mot. for J. on the Agency R., ECF No. 115 ("Pls.' Br."). The same day, Monterey Mushrooms filed its own motion for judgment on the agency record. Pl. Monterey Mushrooms, Inc.'s Rule 56.1 Mot. for J. on the Agency R., ECF No. 113;

---

[3] Plaintiff Monterey Mushrooms, Inc.'s motion to reconsider the court's ruling in *Adee Honey Farms v. United States*, 44 CIT __, 450 F. Supp. 3d 1365 (2020) was denied in a prior Opinion and Order issued by the court. *Adee Honey Farms v. United States*, 46 CIT __, Slip Op. No. 22-60 (June 8, 2022).

Pl. Monterey Mushrooms, Inc.'s Br. in Supp. of Mot. for J. on the Agency R., ECF No. 113-1 ("Monterey Mushrooms' Br.").

On August 9, 2021, the government responded in opposition to the plaintiffs' motions. Defs.' Resp. to Pls.' Rule 56.1 Mot. for J. on the Agency R., ECF No. 122; Defs.' Resp. to Pl.'s, Monterey Mushrooms, Inc., Br. in Supp. of Mot. for J. on the Agency R., ECF No. 123. Plaintiffs replied on October 8, 2021. Pl. Monterey Mushrooms, Inc.'s Reply Br., ECF No. 126; Reply in Supp. of Pls.' Rule 56.1 Mot. for J. on the Agency R., ECF No. 127.

On October 14, 2021, plaintiffs filed consent motions for oral argument. Consent Mot. for Oral Arg., ECF No. 128; Pls.' Consent Mot. for Oral Arg., ECF No. 129.

## II. Discussion

### A. Subject Matter Jurisdiction and Standard of Review

The court exercises subject matter jurisdiction according to section 201 of the Customs Courts Act of 1980, 28 U.S.C. § 1581(i). Subparagraph (1)(B) of § 1581(i) grants this court jurisdiction of any civil action "that arises out of any law of the United States providing for . . . tariffs, duties, fees, or other taxes on the importation of merchandise for reasons other than the raising of revenue," and subparagraph (1)(D) of § 1581(i) provides this court jurisdiction of any civil action "that arises out of any law of the United States providing for . . . administration and enforcement with respect to the matters referred to in subparagraphs (A) through (C) of this paragraph . . . ."

As directed by 28 U.S.C. § 2640(e), the court "shall review the matter as provided in section 706 of title 5." The latter provision, of the Administrative Procedure Act, directs the court, *inter alia*, to "hold unlawful and set aside agency action, findings, and conclusions found to be— . . . arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A).

**B. "Continued Dumping and Subsidy Offsets" under the Byrd Amendment**

The CDSOA, 19 U.S.C. § 1675c, enacted in October 2000 and repealed in February 2006,[4] amended the Tariff Act of 1930 ("Tariff Act") to direct Customs to distribute funds from assessed antidumping and countervailing duties to ADPs on a federal fiscal year basis, as compensation for certain qualifying expenditures. 19 U.S.C. § 1675c(a). The CDSOA defined an "affected domestic producer" generally as a "manufacturer, producer, farmer, rancher, or worker representative" that was a "petitioner or interested party in support of the petition with respect to which an antidumping duty . . . or a countervailing duty order has been entered" and that "remains in operation."

---

[4] Under the terms of the 2006 legislation repealing the CDSOA, Customs is to distribute antidumping and countervailing duties assessed on entries made before October 1, 2007, subject to certain limitations imposed in 2010. *See* Deficit Reduction Act of 2005, Pub. L. No. 109-171, 120 Stat. 4, 154 (2006), *amended by* Claims Resolution Act of 2010, Pub. L. No. 111-291, 124 Stat. 3064, 3163, *amended by* Tax Relief, Unemployment Insurance Reauthorization & Job Creation Act of 2010, Pub. L. No. 111-312, 124 Stat. 3296, 3308 (current version at 19 U.S.C. § 1675c note).

*Id.* § 1675c(b)(1). The annual distribution an ADP received was identified in the CDSOA "as the 'continued dumping and subsidy offset.'" *Id.* § 1675c(a).

Under the CDSOA, domestic parties who qualified as petitioners or parties in support of an antidumping duty or countervailing duty petition were identified initially by the U.S. International Trade Commission, which then provided a list of these parties to Customs. *Id.* § 1675c(d)(1). Customs was required to publish annually a notice of intent to distribute CDSOA funds for the relevant fiscal year that included the current list and invited submissions of certifications of eligibility, each of which was required to include, *inter alia*, a certification of qualifying expenditures. *Id.* § 1675c(d)(2).

The CDSOA prescribed a detailed procedure by which Customs was to retain antidumping and countervailing duties and distribute them annually to ADPs. Customs was directed to establish a "special account" in the U.S. Treasury for each then-existing and future AD or CVD order, into which it was to deposit all antidumping and countervailing duties "assessed" under such order, after the effective date of the CDSOA. *Id.* § 1675c(e). Customs was directed to distribute to ADPs, each federal fiscal year on a pro-rata basis, the "funds" from the assessed duties for the respective AD or CVD order that were "received in the preceding fiscal year," based on each ADP's certification of "new and remaining qualifying expenditures." *Id.* § 1675c(d)(3). Distributions were required to occur within 60 days following the first day of the fiscal year. *See id.* § 1675c(c).

### C. Implementation of the CDSOA by Customs

Following notice and comment on a proposed rule, Customs promulgated a final rule to prescribe "administrative procedures, including the time and manner, under which antidumping and countervailing duties assessed on imported products would be distributed to affected domestic producers as an offset for certain qualifying expenditures." *Distribution of Continued Dumping and Subsidy Offset to Affected Domestic Producers*, 66 Fed. Reg. 48,546, 48,546 (Customs Serv. Sept. 21, 2001) (codified at 19 C.F.R. §§ 159.61–159.64, 178.2 (2002)); *see* 19 U.S.C. § 1675c(c) ("the Commissioner [of Customs] shall prescribe procedures for distribution of the continued dumping or subsidies offset required by this section."), (e)(3) ("Consistent with the requirements of subsections (c) and (d), the Commissioner [of Customs] shall by regulation prescribe the time and manner in which distribution of the funds in a special account shall be made.").

In promulgating its regulations, Customs made several interpretations of the CDSOA. One example concerned the interpretation of the word "assessed" as it is used throughout the CDSOA to modify the word "duties." The CDSOA refers to "duties assessed" pursuant to a countervailing or antidumping duty order, *id*. § 1675c(a), and imposes the parallel requirements to deposit into the special accounts all "duties . . . that are assessed" under such an order, *id*. § 1675c(e)(2), and to distribute annually to ADPs "all funds . . . from assessed duties," *id*. § 1675c(d)(3). Customs interpreted these

references to mean antidumping and countervailing duties that are "assessed" at liquidation and collected by Customs, both as estimated duties deposited with Customs upon or soon after entry, and as payments of any additional amounts owing following liquidation of that entry. *See* 19 C.F.R. § 159.64. The interpretation of the word "assessed " to refer to duties assessed at liquidation, and collected by Customs both before and after liquidation, is not challenged in this litigation.[5]

Also unchallenged in this litigation is a decision by Customs to establish "Clearing Accounts," a procedural measure not mentioned in the CDSOA, which directs the creation of only the Special Accounts. Customs designated the Clearing Accounts for the deposit of estimated antidumping and countervailing duties, *id*. § 159.64(a)(2), reserving the Special Accounts for the transfer from the Clearing Accounts of antidumping duties and countervailing duties "when an entry upon which antidumping or countervailing duties are owed is properly liquidated pursuant to an order, finding or receipt of liquidation instructions," *id*. § 159.64(b)(1)(ii).

The dispute in this case arose instead from the interpretation that Customs, upon promulgating its implementing regulations, gave to a provision of the CDSOA—the

---

[5] The court does not suggest or imply that the agency's interpretation of "assessed" to mean "assessed and collected" is unreasonable. The contrary interpretation would result in deposits from the U.S. Treasury into the Special Accounts of amounts not collected, or not yet collected, from importers. Moreover, the statute, in a provision on the termination of a Special Account, refers to the time that "all entries relating to the order or finding are liquidated and duties assessed *collected*." 19 U.S.C. § 1675c(e)(4)(B) (emphasis added).

"Deposits into Accounts" provision—with respect to the treatment of interest earned by the government on antidumping and countervailing duties. As discussed in further detail below, Customs interpreted this provision as requiring it to deposit into the Special Accounts the interest the government earned on underpaid deposits of estimated antidumping and countervailing duties that was assessed at liquidation and later collected. Customs did not place into the Special Accounts any interest the government earned that was assessed and collected after liquidation of the entries. The issue presented in this litigation is whether that interpretation was a permissible one. As discussed below, the court concludes that it was.

### D. The Interpretation of the "Deposits into Accounts" Provision of the CDSOA Adopted by Section 159.64(e) of the Customs Regulations

The Byrd Amendment provision directly at issue in this litigation reads as follows:

> DEPOSITS INTO ACCOUNTS.—The Commissioner shall deposit into the special accounts, all antidumping or countervailing duties (including *interest earned on* such duties) that are assessed after the effective date of this section under the antidumping order or finding or the countervailing duty order with respect to which the account was established.

19 U.S.C. § 1675c(e)(2) (emphasis added). In promulgating and administering its implementing regulations, Customs interpreted the term "including interest earned on such duties" to mean that it would deposit into the Special Accounts the interest on underpayments of antidumping and countervailing duties that the government earns up until the time of liquidation of the entry, and determines as a fixed amount upon

liquidation, but not any "delinquency" interest it earns on the entry thereafter.[6] The implementing regulations expressed this decision as follows:

> *Interest on Special Accounts and Clearing Accounts*. In accordance with Federal appropriations law, and Treasury guidelines on Special Accounts, funds in such accounts are not interest-bearing unless specified by Congress. Likewise, funds being held in Clearing Accounts are not interest-bearing unless specified by Congress. Therefore, no interest will accrue in these accounts. However, statutory interest charged on antidumping and countervailing duties at liquidation will be transferred to the Special Account, when collected from the importer.

19 C.F.R. § 159.64(e). The narrow question presented by this litigation is whether the phrase "including interest earned on such duties" as used in the Deposits into Accounts provision, 19 U.S.C. § 1675c(e)(2), is permissibly interpreted to allow Customs to deposit into the Special Accounts only "interest charged on antidumping and countervailing duties *at liquidation*," 19 C.F.R. § 159.64(e) (emphasis added).[7]

---

[6] Prior to 2016, Customs deposited interest assessed at liquidation on underpaid deposits of antidumping and countervailing duties, but not interest accruing after liquidation, into the special accounts for distributions made to affected domestic producers under the CDSOA. Defs.' Mot. to Dismiss 4 (Jan. 9, 2017), ECF No. 19. In 2016, Congress required specified types of interest paid on a bond or by a surety, including interest accruing after liquidation, to be included in CDSOA distributions. Congress did not address the question of interest other than interest paid on a bond or by a surety, nor did it make the provision retroactive. *See* Trade Facilitation and Trade Enforcement Act of 2015, Pub. L. No. 114-125, 130 Stat. 122, 187–88 (2016) ("TFTEA"). All CDSOA distributions at issue in this Opinion and Order occurred prior to the 2016 enactment of TFTEA.

[7] The decision by the U.S. Customs Service that the Special Accounts and Clearing Accounts would not bear interest, which Customs combined in 19 C.F.R. (continued . . .)

### E. Judicial Review of Statutory Interpretations by Agencies to Which Congress Delegated Rulemaking Authority

When a government agency promulgates a rule interpreting a provision within a statutory scheme the agency is entrusted by Congress to administer, the court proceeds according to the Supreme Court's analysis in *Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837, 843–46 (1984) ("*Chevron*"). As *Chevron* instructed, "[f]irst, always, is the question whether Congress has directly spoken to the precise question at issue. If the intent of Congress is clear, that is the end of the matter; for the court, as well as the agency, must give effect to the unambiguously expressed intent of Congress." *Id.* at 842–43 (footnote omitted). "If a court, employing traditional tools of statutory construction, ascertains that Congress had an intention on the precise question at issue, that intention is the law and must be given effect." *Id*. at 843 n.9. For a *Chevron* "step one" analysis, "traditional tools of statutory construction," *id*., include the examination of the statutory text and structure and the legislative history. *See, e.g., Aqua Prods., Inc. v. Matal*, 872 F.3d 1290, 1303, 1312–14 (Fed. Cir. 2017) (en banc); *Gazelle v. Shulkin*, 868 F.3d 1006, 1010 (Fed. Cir. 2017), *cert. denied*, 138 S.Ct. 690 (2018) ("We may find Congress has expressed unambiguous intent by examining the statute's text, structure, and legislative history, and apply the relevant canons of interpretation.")

---

§ 159.64(e) with its decision on the interest it would deposit on assessed duties, is not contested in this litigation.

(internal quotations and citations omitted); *Kyocera Solar, Inc. v. U.S. Int'l Trade Comm'n*, 844 F.3d 1334, 1338 (Fed. Cir. 2016). If the intent of Congress is not clear, the court, under "step two" of a *Chevron* analysis, must accept the agency's interpretation of the statute if it is reasonable and "may not substitute its own construction of a statutory provision for a reasonable interpretation made by the administrator of an agency." *Chevron*, 467 U.S. at 844 (footnote omitted).

### F. CDSOA Provisions Addressing Interest "Earned on" Assessed AD and CVD Duties and "Funds" from Such Assessed Duties

The court begins with the text of the provision directly at issue. *See Consumer Prod. Safety Comm'n v. GTE Sylvania, Inc.*, 447 U.S. 102, 108 (1980) ("We begin with the familiar canon of statutory construction that the starting point for interpreting a statute is the language of the statute itself. Absent a clearly expressed legislative intention to the contrary, that language must ordinarily be regarded as conclusive."). In the Deposits into Accounts provision, Congress directed Customs to deposit into the Special Accounts "all antidumping or countervailing duties (including *interest earned on* such duties) that are assessed" under an AD or CVD order. 19 U.S.C. § 1675c(e)(2) (emphasis added). In speaking broadly of interest "earned on" these duties, the provision addresses *whether* interest is earned on the duties and does not distinguish as to *when* interest is earned. In that respect, the plain meaning of the phrase "interest

earned on such duties," at first blush, does not favor the agency's interpretation.[8] Nevertheless, the provision is not free of ambiguity. Understanding the meaning of the words "interest earned on such duties" requires consideration of other provisions of the Tariff Act, which govern how antidumping and countervailing duties earn interest for the government. Congress must be presumed to have been aware, also, that upon liquidation, Customs combines underpaid duties, taxes, fees, and accrued interest to calculate a single amount that is owed by the importer of record on the entry as a whole. *See* 19 U.S.C. § 1505(b), (c). Thus, once all duties, taxes, fees, and interest owed upon an entry for consumption are "liquidated," i.e., reduced to a single sum to which certain aspects of finality have attached, the individual amounts of the various duties, taxes, fees, and interest might be seen as having lost their individual character as a result of the liquidation process. Under that reasoning, Congress could have

---

[8] Defendants argue that the words "are assessed" as used in 19 U.S.C. § 1675c(e)(2) limit the scope of the provision to interest that is "assessed" at liquidation, not interest that accrues thereafter. Defs.' Resp. to Pls.' Rule 56.1 Mot. for J. on the Agency R. 16–19 (Aug. 9, 2021), ECF No. 122; Defs.' Resp. to Consolidated Pl.'s, Monterey Mushrooms, Inc., Br. in Supp. of Mot. for J. on the Agency R. 16–19 (Aug. 9, 2021), ECF No. 123. The court disagrees. The wording does not support defendants' interpretation: "The Commissioner shall deposit into the special accounts, all antidumping or countervailing *duties* (including interest earned on such duties) that *are assessed* . . . ." 19 U.S.C. § 1675c(e)(2) (emphasis added). The subject of the sentence containing the predicate "are assessed" is the plural term "duties," not the singular term "interest." An interpretation that accords with plain meaning should not dispense with agreement between subject and verb.

considered the interest accruing on an entry after liquidation to be accruing on the entry as a whole and not on those individual amounts.

One other provision of the CDSOA, the "Distribution of Funds" provision, also mentions interest "earned." This provision does not resolve the ambiguity surrounding the issue of whether interest accruing on delinquent amounts after the liquidation process is completed is interest that is "earned" within the intended meaning of the CDSOA. The first sentence of the Distribution of Funds provision reads as follows:

> DISTRIBUTION OF FUNDS.—The Commissioner shall distribute all funds (including *all interest earned on* the funds) from assessed duties received in the preceding fiscal year to affected domestic producers based on the certifications described in paragraph (2).

*Id*. § 1675c(d)(3) (emphasis added). While it is plausible to interpret the phrase "all interest earned on the *funds*" to refer only to interest earned on the Special Accounts (of which interest, Customs concluded, there could be none), as opposed to interest earned on underpaid duties, this is not the only possible interpretation. *Id.* (emphasis added). In the same provision, Congress referred to "funds . . . *from assessed duties* received in the preceding fiscal year." *Id*. (emphasis added). Also, Congress used the term "funds *in* a special account" in referring to what is to be distributed to ADPs, *id*. § 1675c(e)(3) (emphasis added), suggesting that the word "funds" refers to what is in a Special Account as opposed to the Special Account itself. When read in conjunction with the Deposits into Accounts provision, the Distribution of Funds provision is reasonably interpreted to address the distribution of the duties, and the interest earned thereon,

that are deposited into the Special Accounts according to the Deposits into Accounts provision.

In summary, the Deposits into Accounts and Distribution of Funds provisions indicate congressional intent that Customs would: (1) deposit into the Special Accounts assessed antidumping and countervailing duties, *id*. § 1675c(e); (2) deposit also into the Special Accounts "interest," *id*. § 1675c(e)(2), i.e., "all interest," *id*. § 1675c(d)(3), earned on such "funds" or "duties"; and (3) distribute to ADPs all funds from assessed duties, together with all interest earned thereon, received in the preceding fiscal year, *id*. Although the CDSOA sets forth in some detail the procedures for distribution of "continued dumping and subsidy offsets," neither the Deposits into Accounts provision nor the Distribution of Funds provision defines precisely what is meant by the use of the term "interest earned on such duties" or the term "all interest earned on the funds," respectively. Therefore, the court looks beyond the CDSOA to other Tariff Act provisions that affect how antidumping and countervailing duties earn interest for the government for an indication of what Congress may have meant in using the term "interest earned."

**G. Tariff Act Provisions on the Government's Earning of Interest on Countervailing and Antidumping Duties**

The Trade Agreements Act of 1979 (the "TAA") amended the Tariff Act to provide that underpayments on deposited antidumping and countervailing duties would earn interest for the government and that overpayments would earn interest for

the importer. Pub. L. No. 96-39, 93 Stat. 144, 188–89. In its current form and in the form in which it relates to this litigation, Section 778(a) of the Tariff Act provides that "[i]nterest shall be payable on overpayments and underpayments of amounts deposited on merchandise entered, or withdrawn from warehouse, for consumption on and after . . . the date of publication of a countervailing or antidumping duty order under this subtitle . . . ."[9] 19 U.S.C. § 1677g(a). The current requirement to deposit estimated countervailing and antidumping duties during the entry process appeared in related provisions of the TAA.[10]

---

[9] As originally enacted, the Trade Agreements Act of 1979 (the "TAA") made the interest provision applicable on and after the date of notice of an affirmative injury/threat determination by the U.S. International Trade Commission. Pub. L. No. 96-39, 93 Stat. 144, 188–89. Congress amended the provision in the Trade and Tariff Act of 1984 to provide that the interest would be payable on and after the date of publication of a countervailing duty or antidumping duty order. Pub. L. No. 98-573, 98 Stat. 2948, 3039.

[10] The related provisions in the TAA provided for cash deposits of estimated antidumping and countervailing duties, in procedures parallel to those of Section 505 of the Tariff Act, 19 U.S.C. § 1505, as in effect at the time for ordinary ("normal") customs duties. The Tariff Act of 1930 provides for the deposit of estimated countervailing duties (in an amount determined by the International Trade Administration, Department of Commerce, not Customs) in section 706(a)(3), which requires, following publication of a countervailing duty order, "the deposit of estimated countervailing duties pending liquidation of entries of merchandise *at the same time as estimated normal customs duties on that merchandise are deposited*." 19 U.S.C. § 1671e(a)(3) (emphasis added). A nearly identical provision, Section 736(a)(3) of the Tariff Act, requires, following publication of an antidumping duty order, "the deposit of estimated antidumping duties pending liquidation of entries of merchandise at the same time as estimated normal customs duties on that merchandise are deposited." 19 U.S.C. § 1673e(a)(3).

At the time of the 1979 amendment, the Tariff Act, while requiring (in Section 505(a) thereof) the deposit of estimated duties "at the time of making entry," did not provide for the assessment of interest, at the time of liquidation, on overpayments or underpayments of estimated ordinary ("normal") customs duties. 19 U.S.C. § 1505 (1976). Nor did the Tariff Act, at that time, provide for interest on late payment of additional duties that Customs billed to the importer after the completion of the liquidation process. Under the 1979 amendment, therefore, the interest described in Section 778(a), 19 U.S.C. § 1677g(a), began accruing when the estimated antidumping or countervailing duties were required to be deposited, and it stopped accruing upon liquidation of the entry. Customs implemented the CDSOA so as to deposit this "liquidated" interest and include it in the annual distributions to the ADPs.

The authority for the "delinquency" interest plaintiffs seek in this litigation was added to the Tariff Act five years after the TAA. In the Trade and Tariff Act of 1984, Congress amended Section 505 of the Tariff Act to add a new subsection (then subsection (c)), which provided for "delinquency interest" on late payments of amounts Customs determined in the liquidation process to be owing. The new subsection read as follows:

> Duties determined to be due upon liquidation or reliquidation shall be due 15 days after the date of that liquidation or reliquidation, and unless payment of the duties is received by the appropriate customs officer within 30 days after that date, shall be considered delinquent and bear interest from the 15th day after the date of liquidation or reliquidation at a rate determined by the Secretary of the Treasury.

Pub. L. No. 98-573, 98 Stat. 2948, 2977 (1984). By regulation, the Treasury Secretary provided that underpayments would be charged interest at the interest rate set semiannually according to 26 U.S.C. § 6621 and compounded daily in accordance with 26 U.S.C. § 6622. *Calculation of Interest on Overdue Accounts and Refunds*, 50 Fed. Reg. 21,832 (Custom Servs. May 29, 1985).

In the North American Free Trade Agreement Implementation Act ("NAFTA Implementation Act"), Congress amended Section 505 of the Tariff Act to provide for the accrual to the government of interest on underpayments of ordinary ("normal") customs duties (as well as the accrual of interest to the importer of record of interest on any excess monies deposited). Pub. L. No. 103-182, 107 Stat. 2057, 2205 (1993). Subsection (a) of that section requires the importer of record to deposit with Customs "at the time of entry or such later time as the Secretary may prescribe by regulation (but not later than 12 working days after entry or release) the amount of duties and fees estimated to be payable on such merchandise." 19 U.S.C. § 1505(a). Subsection (b) of the amended Section 505 directs Customs to collect "any increased or additional duties and fees due, together with interest thereon . . . as determined on a liquidation or reliquidation." *Id*. § 1505(b). "Duties, fees, and interest determined to be due upon liquidation or reliquidation are due 30 days after issuance of the bill for such payment." *Id*. In subsection (c) of section 505 as amended by the NAFTA Implementation Act, Congress specified the timing of the accrual of the interest the government earns from

any underpayment of the deposit of estimated duties and fees required under subsection (a) of that section. According to the provision, "[i]nterest assessed due to an underpayment of duties, fees, or interest shall accrue, at a rate determined by the Secretary, from the date the importer of record is required to deposit estimated duties, fees, and interest to the date of liquidation or reliquidation of the applicable entry or reconciliation." 19 U.S.C. § 1505(c).

In the new Section 505(d), Congress retained the delinquency provision in more detailed form, providing that "[i]f duties, fees, and interest determined to be due or refunded are not paid in full within the 30-day period specified in subsection (b) [which begins with the issuance of the bill by Customs], any unpaid balance shall be considered delinquent and bear interest by 30-day periods, at a rate determined by the Secretary, from the date of liquidation or reliquidation until the full balance is paid." *Id.* § 1505(d). The provision adds that "[n]o interest shall accrue during the 30-day period in which payment is actually made."[11] *Id.*

**H. The Agency's Interpretation of the Interest Provisions in the CDSOA Is Reasonable**

The history of the interest provisions in Section 778(a) of the Tariff Act, 19 U.S.C. § 1677g, and Section 505(d) of the Tariff Act, 19 U.S.C. § 1505(d), and the effect of the

[11] It appears that the amended delinquency provision conformed the statute to the implementing regulations for the then-existing provision. *See Calculation of Interest on Overdue Accounts and Refunds*, 50 Fed. Reg. 21,832 (Customs Serv. May 29, 1985).

liquidation process cause the court to conclude that the agency's interpretation was reasonable.

As the court explained above, the statutory history indicates that Section 778(a) interest accrues from the date of required deposit to the date of liquidation, and not beyond that date, and that when Congress provided for Section 778(a) interest in 1979, the Tariff Act did not provide for delinquency interest, which Congress created five years later. Section 778(a) interest, unlike Section 505(d) interest, is unique to antidumping and countervailing duties. Interest on antidumping and countervailing duties accruing from the time of the required deposit to the liquidation of the entry and assessed at liquidation unambiguously can be described as interest earned *on* those duties. But the same cannot be said for interest that begins to accrue on the total amount owing on an already-liquidated entry. The concept of "liquidation" under the Tariff Act reinforces this conclusion.

Liquidation is the procedural step during which the amount the importer of record owes on the entry is "fixed," i.e., becomes final for most purposes under the Tariff Act. *See* 19 U.S.C. §§ 1500, 1514. Although the Tariff Act provides for certain exceptions to this finality, *see*, *e.g.*, *id*. §§ 1501 (reliquidation), 1592 (entry by means of fraud, gross negligence, or negligence), the basic principle is that the individual amounts of duties and fees (including the amount of antidumping or countervailing duties, together with any interest required to be assessed by 19 U.S.C. § 1677g) are

"fixed," i.e., ascertained, combined into a single sum, and billed to the importer of record.[12] While the specific amount of interest "earned on" underpaid antidumping and countervailing duties under Section 778(a) is "fixed" at the time of liquidation, no interest, and no portion of the interest, accruing under Section 505(d) can be described in this way. In light of this intricate statutory structure, the interest assessed under Section 505(d) reasonably may be viewed as interest owing on a combined, "liquidated" amount for the entry rather than interest "earned on" antidumping or countervailing duties *per se*. Therefore, it was reasonable for Customs to interpret the CDSOA as requiring the deposit and distribution of only that interest on antidumping and countervailing duties that was assessed at liquidation of the entry.

In the brief for plaintiffs (other than Monterey Mushrooms), it is argued that the words "all interest" as used in the Distribution of Funds provision are unambiguous and must be interpreted to include delinquency interest. These plaintiffs argue that Congress was aware that three different types of interest (Section 505(d) interest, interest under 19 U.S.C. § 580 accruing on late payments under surety bonds, and Section 778(a) interest) accrue on unpaid antidumping and countervailing duties and

---

[12] Antidumping and countervailing duties, like ordinary duties, for most purposes are fixed at the time of liquidation of the entry. For example, the Tariff Act provides that judicial challenges brought under 19 U.S.C. § 1516a to the individual amount of antidumping or countervailing duties owing, as determined by the International Trade Administration, U.S. Department of Commerce, may no longer be brought after the entry is liquidated. *See* 19 U.S.C. § 1516a(e).

used the words "all interest" to describe these different types of interest. *See, e.g.*, Pls.' Br. 21 (". . . 'all' has a broad, inclusive common meaning that is not compatible with the restrictive interpretation Customs has assigned to 'interest' under the CDSOA."). Monterey Mushrooms makes a similar argument. Monterey Mushrooms' Br. 19–21.[13]

The court disagrees that the statute is unambiguous on the question of whether interest under Section 505(d) must be deposited and distributed. Contrary to the arguments the plaintiffs advance, the ambiguity stems not from the words "interest" or "all interest" but from the phrase "interest *earned on*," which appears in both the Deposits into Accounts and Distribution of Funds provisions. The interest Congress had in mind must have been "earned on" assessed antidumping or countervailing duties, 19 U.S.C. § 1675c(e)(2), or earned on the "funds . . . from assessed duties," *id.*

---

[13] Monterey Mushrooms, Inc. also argues that no deference is owed to the decision by Customs not to deposit and distribute delinquency interest because the implementing regulation is silent on this point. Pl. Monterey Mushrooms, Inc.'s Br. in Supp. of Mot. for J. on the Agency R. 21–27 (May 24, 2021), ECF No. 113-1 ("Monterey Mushrooms' Br."). This argument lacks merit. As the court ruled in *Adee Honey Farms v. United States*, 44 CIT __, 450 F. Supp. 3d 1365 (2020), 19 C.F.R. § 159.64(e) provides for the deposit of Section 778(a) interest into the Special Accounts, mentioning no other type of interest, and the preamble to the regulation clarifies that no other type of interest will be deposited.

Monterey Mushrooms, Inc. makes the related argument that U.S. Customs and Border Protection ("Customs") lacked statutory authority to make "substantive determinations" such as deciding what type of interest would be deposited. Monterey Mushrooms' Br. 17. This argument is specious. Congress directed Customs to "prescribe procedures for distribution of the continued dumping or subsidies offset required by this section," 19 U.S.C. § 1675c(c), and Customs could not do so without interpreting—in one way or another—what Congress meant when using, in the relevant CDSOA provisions, the ambiguous term "interest earned" on the duties or funds.

§ 1675c(d)(3). For the reasons the court has discussed, interest earned on a delinquent payment of an already-liquidated entry can be viewed as having been earned on the single, liquidated sum that is in arrears. As a result of the liquidation, this sum is a procedural step removed from the interest accruing under the only statutory provision, 19 U.S.C. § 1677g, that Congress directed specifically to interest earned on antidumping and countervailing duties.

## III. CONCLUSION

Due to the ambiguity inherent in the words "earned on," the court concludes that it must analyze the CDSOA according to step two of the analysis required by *Chevron*. Even were the court to conclude that plaintiffs' interpretation of the statutory provisions is the more reasonable one (and it does not so conclude), still it would be required to accept the agency's interpretation if that interpretation also is reasonable. *See Chevron*, 467 U.S. at 843. Customs is the agency Congress "entrusted" to administer not only the CDSOA but also the other provisions of the Tariff Act, i.e., the "statutory scheme," defining how interest is earned on antidumping and countervailing duties. *Id.* (footnote omitted).

The court concludes that Customs reasonably interpreted the CDSOA as requiring deposit into the Special Accounts only the interest on countervailing and antidumping duties accruing from the time of required deposit to liquidation of the entries. The Tariff Act establishes a direct connection between interest accruing under

Section 778(a), 19 U.S.C. § 1677g, and the specific type of duties upon which it accrues and according to which it is determined upon liquidation. Under statutory language susceptible to more than one interpretation, it was reasonable for Customs to conclude that Congress specifically contemplated only this type of "interest" on "assessed" duties when enacting the CDSOA.

As the court also has discussed, the history and structure of the relevant Tariff Act provisions reveals that Section 778(a) interest, which is the only type of interest specific to antidumping and countervailing duties, stops accruing at liquidation. In contrast, Section 505(d) interest, which is not determined at liquidation, accrues on the amount Customs bills to an importer of record that is not paid (by the importer of record or its surety) within the 30-day period provided for in Section 505(c) of the Tariff Act. The components in the total sum consisting of underpaid antidumping or countervailing duties and the Section 778(a) interest thereon were assessed and billed to the importer, together with all other amounts owing, as a result of liquidation. Under the statutory scheme, considered on the whole, it was reasonable for Customs to view those components as having lost their individual character as a result of the liquidation process. Consistent with the interpretation Customs adopted, interest "earned on" the antidumping and countervailing duties can be viewed as interest determined at liquidation to have accrued, i.e., "earned," by the government on those specific duties, in an amount that stopped accruing *at* liquidation and was fixed *upon* liquidation.

Pursuant to USCIT Rule 56.1, the court will deny the motions for judgment on the agency record and enter judgment for defendants.

/s/ Timothy C. Stanceu
Timothy C. Stanceu, Judge

Dated: June 16, 2022
New York, New York

# Tab 2

## *Adee Honey Farms, et al., v. United States, et al.,* Judgment

## Appx00027-0028

**UNITED STATES COURT OF INTERNATIONAL TRADE**

| | |
|---|---|
| **ADEE HONEY FARMS, et al.,**<br><br>Plaintiffs,<br><br>v.<br><br>**UNITED STATES, et al.,**<br><br>Defendants. | **Before: Timothy C. Stanceu, Judge**<br><br>**Consol. Court No. 16-00127** |

**JUDGMENT**

Upon consideration of plaintiffs' Rule 56.1 Motion for Judgment on the Agency Record (May 24, 2021), ECF No. 114, plaintiff Monterey Mushrooms, Inc.'s Rule 56.1 Motion for Judgment on the Agency Record (May 24, 2021), ECF No. 113, and all other papers and proceedings herein, in conformance with the Opinion issued this day, and upon due deliberation, it is hereby

**ORDERED** that plaintiffs' Rule 56.1 Motion for Judgment on the Agency Record (May 24, 2021), ECF No. 114, be, and hereby is, denied; it is further

**ORDERED** that Monterey Mushrooms, Inc.'s Rule 56.1 Motion for Judgment on the Agency Record (May 24, 2021), ECF No. 113, be, and hereby is, denied; it is further

**ORDERED** that plaintiffs' Consent Motion for Oral Argument (Oct. 14, 2021), ECF No. 129, be, and hereby is, denied; it is further

**ORDERED** that Monterey Mushrooms, Inc.'s Consent Motion for Oral Argument (October 14, 2021), ECF No. 128, be, and hereby is, denied; and it is further

**ORDERED** that judgment be, and hereby is, entered in favor of defendants.

/s/ Timothy C. Stanceu
Timothy C. Stanceu, Judge

Dated: June 16, 2022
New York, New York

# UNITED STATES COURT OF APPEALS
# FOR THE FEDERAL CIRCUIT

## CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMITATIONS

**Case Number:** 22-2105

**Short Case Caption:** Adee Honey Farms v. US

**Instructions:** When computing a word, line, or page count, you may exclude any items listed as exempted under Fed. R. App. P. 5(c), Fed. R. App. P. 21(d), Fed. R. App. P. 27(d)(2), Fed. R. App. P. 32(f), or Fed. Cir. R. 32(b)(2).

The foregoing filing complies with the relevant type-volume limitation of the Federal Rules of Appellate Procedure and Federal Circuit Rules because it meets one of the following:

☑ the filing has been prepared using a proportionally-spaced typeface and includes 11,456 words.

☐ the filing has been prepared using a monospaced typeface and includes __________ lines of text.

☐ the filing contains __________ pages / __________ words / __________ lines of text, which does not exceed the maximum authorized by this court's order (ECF No. __________).

Date: 10/28/2022

Signature: /s/ Adam H. Gordon

Name: Adam H. Gordon

## CERTIFICATE OF SERVICE

I hereby certify that on this 28th day of October, 2022, a copy of the foregoing brief was served on the following party by operation of the Court's electronic-filing system:

Beverly A. Farrell
Trial Attorney
**Department of Justice**
International Trade Field Office
26 Federal Plaza, Suite 246
New York, New York 10278
Email: Beverly.a.farrell@usdoj.gov

*/s/ Adam H. Gordon*
Adam H. Gordon
**THE BRISTOL GROUP PLLC**
*Counsel to Plaintiff-Appellant Monterey Mushrooms, Inc.*

Dated: October 28, 2022