**Appeal No. 2022-2105**

# In The United States Court of Appeals For The Federal Circuit

ADEE HONEY FARMS, et al.,

*Plaintiffs*,

MONTEREY MUSHROOMS, INC.,

*Plaintiff-Appellant*,

—v.—

UNITED STATES, UNITED STATES CUSTOMS AND BORDER PROTECTION, CHRISTOPHER MAGNUS, Commissioner of U.S. Customs and Border Protection,

*Defendants-Appellees.*

Appeal from the United States Court of International Trade in No. 1:16-cv-00127-TCS, Senior Judge Timothy C. Stanceu

## CORRECTED BRIEF FOR DEFENDANTS-APPELLEES

BRIAN M. BOYNTON
Principal Deputy Assistant Attorney General

PATRICIA M. MCCARTHY
Director

JUSTIN R. MILLER
Attorney-In-Charge
International Trade Field Office

BEVERLY A. FARRELL
Senior Trial Attorney
Civil Division, Dept. of Justice
Commercial Litigation Branch
26 Federal Plaza – Suite 346
New York, New York 10278
Tel. No. (212) 264-9230 or 0483

*Attorneys for Defendants-Appellees*

*Of Counsel:*

SUZANNA HARTZELL-BALLARD
Office of Assistant Chief Counsel
U.S. Customs and Border Protection
6650 Telecom Drive, Suite 101
Indianapolis, Indiana 46278

February 24, 2023

**TABLE OF CONTENTS**


INTRODUCTION ..... 1

ISSUES PRESENTED ..... 3

STATEMENT OF THE CASE ..... 3

A. The Background of antidumping and countervailing duty law ..... 3

B. The Continued Dumping and Subsidy Offset Act of 2000 ..... 5

C. The CDSOA Framework ..... 6

D. CBP's implementation of the CDSOA ..... 7

E. CDSOA payment process ..... 8

F. Repeal and modifications to the CDSOA ..... 11

G. Prior proceedings ..... 13

SUMMARY OF ARGUMENT ..... 16

ARGUMENT ..... 19

I. STANDARD OF REVIEW ..... 19

II. CLAIMS OLDER THAN THOSE ACCRUING TWO YEARS BEFORE THE COMMENCEMENT OF THE SUBJECT ACTIONS ARE TIME-BARRED ..... 20

A. The Final Rule provided notice that only section 1677g interest would be distributed ..... 21

B. CBP did not change course on delinquency interest ..... 23

III. THE STATUTE AS A WHOLE MANIFESTS CONGRESS'S INTENT THAT ONLY SECTION 1677G INTEREST IS SUBJECT TO DISTRIBUTION UNDER THE CDSOA ..... 26

A. Statutory Interpretation ..... 26

B. The CDSOA Only Provides For The Deposit And Distribution Of Section 1677g Interest ............................................ 27

1. The CDSOA's interest provisions ............................................... 27

2. Other statutory language ........................................................... 30

3. Section 1675c(e)(2)'s parenthetical ............................................ 31

4. CBP's Proposed Rule found favor with the CDSOA's drafters ........................................................................ 33

5. TFTEA shows that the CDSOA was not intended to distribute section 1505(d) interest ............................................... 34

C. Monterey's Position Contradicts The Whole-Text Canon Of Statutory Interpretation ................................................................ 34

D. The Final Rule gives effect to Congress's statutory scheme and the terms of the statute .................................................. 41

E. Congress's findings and legislative history regarding the CDSOA do not support an interpretation that "all interest" includes section 1505(d) interest ....................................................... 42

IV. EVEN ASSUMING THAT THE STATUTE IS AMENABLE TO MONTEREY'S INTERPRETATION, THE AGENCY'S READING IS, AT MINIMUM, REASONABLE AND ENTITLED TO DEFERENCE ................................................................. 44

A. Congress delegated to CBP the authority to administer the CDSOA .................................................................... 45

B. CBP's interpretation does not rest on the preamble to the Final Rule.......................................................................... 46

C. The administrative record reflects that CBP considered the meaning of the CDSOA's use of the word interest and its interest regulation constitutes a reasonable interpretation.…………..................52

D. The trial court properly deferred to CBP's interpretation that only section 1677g interest will be distributed ............................ 54

CONCLUSION ............................................................................................ 57

## TABLE OF AUTHORITIES

### Cases

*Adee Honey Farms v. United States,*
450 F. Supp. 3d 1365 (Ct. Int'l Trade 2020) ............................................... *passim*

*Am. Hi-Fi Int'l, Inc. v. United States,*
936 F. Supp. 1032 (Ct. Int'l Trade 1996) ............................................................ 31

*Aqua Products, Inc. v. Matal,*
872 F.3d 1290 (Fed. Cir. 2017) ........................................................................ 24

*Candle Corp. of Am. v. U.S. Int'l Trade Comm'n*,
374 F.3d 1087 (Fed. Cir. 2004)........................................................................ 19, 27

*Chaparral Steel Co. v. United States*,
901 F.2d 1097 (Fed. Cir. 1990)........................................................................3-4

*Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc.*,
467 U.S. 837 (1984)............................................................................*passim*

*Chickasaw Nation v. United States*,
534 U.S. 84 (2001)............................................................................................ 32

*Consumer Prod. Safety Comm'n v. GTE Sylvania, Inc.*,
447 U.S. 102 (1980)............................................................................................ 26

*DAK Americas LLC v. United States*,
2018 WL 375816 (Ct. Int"l Trade Aug. 6, 2018)................................................ 11

*Delverde, SrL v. United States*,
202 F.3d 1360 (Fed. Cir. 2000)........................................................................ 26

*Dixon Ticonderoga Co. v. United States*,
468 F.3d 1353 (Fed. Cir. 2006)........................................................................ 19

*Encino Motorcars, LLC v. Navarro,*
579 U.S. 211, 221 (2016) .............................................................................. 50

*Energy Corp. v. Riverkeeper, Inc.*,
556 U.S. 208 (2009)........................................................................................ 55

*Federal Crop Ins. Corp. v. Merrill*,
332 U.S. 380 (1947)........................................................................................ 23

*Ford Motor Co. v. United States*,
811 F.3d 1371 (Fed. Cir. 2016)........................................................................ 20

*Guangdong Wireking Housewares & Hardware Co., Ltd. v. United States*,
745 F.3d 1194 (Fed. Cir. 2014).......................................................................... 4

*Hanser v. McDonough*,
56 F.4th 967 (Fed. Cir. 2022) ................................................................... 31, 32

*Heino v. Shinseki*,
683 F.3d 1372 (Fed. Cir. 2012)........................................................................ 26

*Hyatt v. U.S.P.T.O.*,
904 F.3d 1361 (Fed. Cir. 2018)........................................................................ 35

*Meridian Prods., LLC v. United States*,
851 F.3d 1375 (Fed. Cir. 2017).......................................................................... 5

*Morton v. Ruiz*,
415 U.S. 199 (1974)........................................................................................ 45

*Nat'l Wildlife Fed. v. E.P.A.*,
286 F.3d 554 (D.C. Cir. 2002)......................................................................... 23

*Norfolk & W. Ry. Co. v. Am. Train Dispatchers Ass'n*,
499 U.S. 117 (1991)........................................................................................ 39

*Norsk Hydro Canada, Inc. v. United States*,
472 F.2d 1347 (Fed. Cir. 2006)........................................................................ 28

*Rubin v. Islamic Republic of Iran*,
138 S. Ct. 816 (2018) .......... 41

*SciMed Life Sys., Inc. v. Advanced Cardiovascular Sys., Inc.*,
242 F.3d 1337 (Fed. Cir. 2001) .......... 39-40

*Sioux Honey Ass'n v. Hartford Fire Ins. Co.*,
672 F.3d 1041 (Fed. Cir. 2012) .......... 4, 20

*SKF USA Inc. v. United States*,
556 F.3d 1337 (Fed. Cir. 2009) .......... 11

*Smiley v. Citibank*,
517 U.S. 735 (1996) .......... 47, 48

*Southern Shrimp Alliance v. United States*,
617 F. Supp. 2d 1334 (Ct. Int'l Trade 2009) .......... 44

*United Sav. Ass'n of Tex. v. Timbers of Inwood Forest Assocs., Ltd.*,
484 U.S. 365 (1988) .......... 41

*United States v. Haggar Apparel Co.*,
526 U.S. 380 (1999) .......... 55

*United States v. Mead Corp.*,
533 U.S. 218 (2001) .......... 45-46

*United States v. Yoshida Int'l, Inc.*,
526 F.2d 560 (C.C.P.A. 1975) .......... 4

*Utility Air Regulatory Group v. E.P.A.*,
573 U.S. 302 (2014) .......... 55

*Volkswagen of Am., Inc. v. United States*,
540 F.3d 1324 (Fed. Cir. 2008) .......... 20

**Statutes**

5 U.S.C. § 706 .......... 19

5 U.S.C. § 706(2)(A) .......... 19

19 U.S.C § 580 ............ 13, 39, 40

19 U.S.C. § 1505 ............ 9

19 U.S.C. § 1505(b) ............ 38, 54

19 U.S.C. § 1505(c) ............ 9

19 U.S.C. § 1505(d) ............ *passim*

19 U.S.C § 1671(a) ............ 4

19 U.S.C. §§ 1671a - 1671d ............ 5

19 U.S.C. §§ 1671d(a)-(b) ............ 5

19 U.S.C. §§ 1671e ............ 5

19 U.S.C. §§ 1671e(a)(2) ............ 5

19 U.S.C. §§ 1671f(b) ............ 30

19 U.S.C. § 1673 ............ 4

19 U.S.C. § 1673(a) ............ 5

19 U.S.C. § 1673(b) ............ 5

19 U.S.C. §1673a ............ 5

19 U.S.C. § 1673b ............ 5

19 U.S.C. § 1673c ............ 5

19 U.S.C. § 1673d ............ 5

19 U.S.C. § 1673e ............ 5

19 U.S.C. § 1673e (a)(2) ............ 5

19 U.S.C. § 1673f (b) ............ 30

19 U.S.C. § 1675c ............ 6, 12

19 U.S.C. § 1675c(a) ............ 6, 35

19 U.S.C. § 1675c(c) ........ 36

19 U.S.C. § 1675c(d)(3) ........ 35, 36, 41

19 U.S.C. § 1675c(e)(1) ........ 36

19 U.S.C. § 1675c(e)(2) ........ *passim*

19 U.S.C. § 1675c(e)(3) ........ 29, 36

19 U.S.C. § 1677g ........ *passim*

19 U.S.C. § 1677g(a) ........ 9

19 U.S.C. § 4401 ........ 12, 13

19 U.S.C. § 4401(c) ........ 17, 18, 34

19 U.S.C. § 4401(c)(1) ........ 13, 43

19 U.S.C. § 4401(c)(2) ........ 13, 40

28 U.S.C. § 1581(i) ........ 17, 19, 20

28 U.S.C. § 2636(i) ........ 13, 21

44 U.S.C. § 1507 ........ 22-23

Continued Dumping and Subsidy Offset Act of 2000 (CDSOA) ........ *passim*

Antidumping Act of 1916 ........ 3

Antidumping Act of 1921 ........ 3, 6, 36

Section 754 of the Tariff Act of 1930 ........ 11-12

Section 505 of the Tariff Act of 1930 ........ 15

Section 1610(g) of the Foreign Sovereign Immunities Act of 1975 ........ 41

Section 201(a) of the Terrorism Risk Insurance Act of 2002 ........ 41-42

The Deficit Reduction Act of 2005,
Pub. L. No. 109-171, §7601, 120 Stat. 4, 154 (2006) ........ 11

Claims Resolution Act of 2010,
Pub. L. No. 111-291, §822, 124 Stat. 3064 (2010)............................................. 12

The Tax Relief, Unemployment Insurance Reauthorization, and Job Creation Act of 2010,
Pub. L. No. 111-312, §822, 124 Stat. 3064 (2010)............................................. 12

Trade Facilitation and Trade Enforcement Act of 2015 (TFTEA),
Pub. L. No. 114-12, §605, 130 Stat. 122 (2016)............................................*passim*

**Regulations**

19 C.F.R. § 24.3a(c)........................................................................................ 51

19 C.F.R. § 24.3a(c)(4) ..................................................................................... 10

19 C.F.R. § 159.1 ............................................................................................. 28

19 C.F.R. § 159.61 ............................................................................................. 8

19 C.F.R. § 159.64 .......................................................................................8, 19

19 C.F.R. § 159.64(b) ...................................................................................... 10

19 C.F.R. § 159.64(e).................................................................................*passim*

19 C.F.R § 178.2 ................................................................................................ 8

19 C.F.R. § 351.212(e)........................................................................................ 2

**Other Authorities**

*Distribution of Continued Dumping and Subsidy Offset to Affected Domestic Producers,*
66 Fed. Reg. 33, 920 (June 26, 2001) ............................................................... 7, 24

*Distribution of Continued Dumping and Subsidy Offset to Affected Domestic Producers,*
66 Fed. Reg. 48, 550 (Sept. 21, 2001). .................................................... 2, 8, 22, 25

Antonin Scalia & Bryan A. Garner, READING LAW: THE INTERPRETATION OF LEGAL TESTS (2012) ........................................................................... 26-27

B. Garner, MODERN ENGLISH USAGE 752 (4th ed. 2016) ................................. 31-32

## **STATEMENT PURSUANT TO RULE 47.5**

In accordance with Rule 47.5 of the Rules of the United States Court of Appeals for the Federal Circuit, counsel for appellees makes the following statements:

(1) There is one other appeal arising from the decision of the Court of International Trade that is the subject of this action now pending before this court of appeals: *Hilex Poly Co., LLC v. United States*, Fed. Cir. No. 22-2106 (L) & American Drew v. United States, Fed. Cir. No. 22-2114 (M).

(2) The following actions are currently pending in the United States Court of International Trade and may be affected by the Court's decision in this appeal: *Bassett Furniture Industries Inc. v. United States*, Court No. 19-00073 and *Novolex d/b/a Hilex Poly Co., LLC v. United States*, Court No. 19-00074.

# INTRODUCTION

For over a century, Congress has addressed the problems of "dumping," *i.e.*, a foreign company's introduction of a product into another country's commerce at less than its normal value, and unfair competition caused by foreign governments subsidizing their own exports. The details of statutory regimes designed to combat these practices have varied, but a key feature has remained the same; in addition to any regular import tariffs imposed on such products, Congress has directed that importers pay a separate "antidumping" or "countervailing" duty on top of such tariffs.

In the now-repealed Continued Dumping and Subsidy Offset Act of 2000 (CDSOA), Congress directed U.S. Customs and Border Protection (CBP) to place "all antidumping or countervailing duties (including interest earned on such duties) that are assessed" into a "special account" associated with an antidumping or countervailing order, and then distribute that account to domestic producers affected by the unfair import practices. 19 U.S.C. § 1675c(e)(2), (3). Congress has also crafted a provision specific to the interest due on underpaid or overpaid countervailing or antidumping duties deposited, limiting such interest to the moment such duties are liquidated, *i.e.*, assessed. *See* 19 U.S.C. § 1677g; 19 C.F.R. § 351.212(e) (CBP calculates interest from the date of the cash deposit of antidumping or countervailing duties through the date of liquidation).

Since promulgating its regulations implementing these provisions in 2001, CBP has construed the "interest" subject to the CDSOA's special-account-and-distribution provision to be limited to "only interest charged on antidumping and countervailing duty funds themselves, pursuant to the express authority in 19 U.S.C. [§] 1677g." *Distribution of Continued Dumping and Subsidy Offset to Affected Domestic Producers*, 66 Fed. Reg. 48,546, at 48,550 (Sept. 21, 2001) (promulgating 19 C.F.R. § 159.64(e)).

Appellant Monterey Mushrooms, Inc. (Monterey), who is an affected domestic producer benefitting from the distribution of funds from the special accounts devoted to countervailing and antidumping duty orders, contends that the CDSOA requires CBP to distribute funds beyond those collected under the interest provision specific to such duties, Section 1677g. Rather, Monterey also claims an entitlement to "delinquency interest" collected per a different statutory provision, 19 U.S.C. § 1505(d), that authorizes different interest, under different timing rules, on a different pool of funds that includes tariffs imposed on products separate and apart from any countervailing or antidumping duties. In 2016, Congress directed that interest under section 1505(d), among other provisions, collected from sureties on or after October 1, 2014 must be distributed to qualifying affected domestic producers—but did not similarly direct distribution of section 1505(d) interest from importers, the interest that Monterey here claims.

Examining the statutory history and structure as a whole, the trial court rejected Monterey's argument that Congress required CBP to pay it section 1505(d) interest, as well as distributing section 1677g interest. Monterey now appeals, challenging the trial court's statutory analysis and its finding that certain of Monterey's claims are time-barred. As explained below, the trial court's decisions should be affirmed.

## ISSUES PRESENTED

I. Whether the trial court erred in finding appellants' claims untimely, except for those claims for delinquency interest under section 1505(d) on CDSOA distributions received on or after July 15, 2014.

II. Whether the trial court erred in rejecting appellants' claims that the CDSOA unambiguously required CBP to distribute to them interest beyond that collected pursuant to 19 U.S.C. § 1677g, the statutory provision governing interest collected specifically on countervailing and antidumping duties.

## STATEMENT OF THE CASE

### A. The background of antidumping and countervailing duty law

Beginning with the Antidumping Act of 1916 and followed by the Antidumping Act of 1921, Congress promulgated legislation to prevent dumping, *i.e.*, introducing a product into another country's commerce at less than its normal

value, by foreign companies. *See Chaparral Steel Co. v. United States*, 901 F.2d 1097, 1103-04 (Fed. Cir. 1990). Similarly, since 1890 with the enactment of the McKinley Tariff Act and its countervailing duty provision, Congress has addressed the problem of unfair competition caused by foreign governments subsidizing their own exports. *See United States v. Yoshida Int'l, Inc.*, 526 F.2d 560, 579 (C.C.P.A. 1975). These laws were eventually incorporated into the Tariff Act of 1930. *See Sioux Honey Ass'n v. Hartford Fire Ins. Co.*, 672 F.3d 1041, 1046-47 (Fed. Cir. 2012).

Antidumping and countervailing duties work to protect domestic industries from unfair pricing and subsidy practices by foreign producers and foreign governments. *See id.* The antidumping statute, 19 U.S.C. § 1673, combats this practice by providing for the assessment of increased tariffs on such imports. 19 U.S.C. § 1673. Similar to antidumping duties, countervailing duties are increased tariffs intended to offset foreign governments' subsidization of the production of goods imported into the United States. 19 U.S.C. § 1671(a). However, "the primary purpose of antidumping and countervailing duties generally is remedial, not punitive." *Guangdong Wireking Housewares & Hardware Co., Ltd. v. United States*, 745 F.3d 1194, 1206 (Fed. Cir. 2014).

When such unfair trading practices arise, Congress has charged the United States Department of Commerce (Commerce) and the United States International

Trade Commission (ITC) with the authority to conduct antidumping and countervailing duty investigations. 19 U.S.C. §§ 1671a - 1671d, 1673a - 1673d. During these proceedings, Commerce is to determine whether, and to what degree, merchandise imported into the United States is being sold at prices below fair value or benefits from countervailable subsidies, and the ITC is to determine whether the merchandise materially injures a domestic industry (or threatens material injury). 19 U.S.C. §§ 1671d(a)-(b), 1673d(a)-(b) (describing the final determinations of the agencies); *Meridian Prods., LLC v. United States*, 851 F.3d 1375, 1378 (Fed. Cir. 2017).

When the requisite factors are met, Commerce issues an antidumping or countervailing duty order. 19 U.S.C. §§ 1671e, 1673e; *Meridian Prods*., 851 F.3d at 1378. Those orders must describe the merchandise that is subject to the increased tariffs. 19 U.S.C. §§ 1671e(a)(2), 1673e(a)(2); *Meridian Prods*., 851 F.3d at 1378.

**B. The Continued Dumping and Subsidy Offset Act of 2000**

Historically, the supplemental duties triggered by the antidumping and countervailing duty laws of the United States, along with any interest, were deposited into the U.S. Treasury's General Fund to support general governmental operations. This longstanding policy changed with the advent of the Continued Dumping and Subsidy Offset Act of 2000 (CDSOA), an amendment inserted by

Senator Robert Byrd into the Agriculture, Rural Development, Food and Drug Administration, and Related Agencies Appropriations Act of 2001 during conference committee negotiations, codified at 19 U.S.C. § 1675c. Under the Byrd Amendment, as the CDSOA was colloquially known, U.S. Customs and Border Protection (Customs or CBP) was directed to distribute to affected domestic producers (ADPs)[1] "[d]uties assessed pursuant to a countervailing duty order, an antidumping duty order, or a finding under the Antidumping Act of 1921." 19 U.S.C. § 1675c(a).

### C. The CDSOA framework

Under the CDSOA, the U.S. International Trade Commission identified petitioners or parties supporting an antidumping or countervailing duty petition and provided CBP with a list of names. Appx7. CBP was to publish an annual notice of intent to distribute CDSOA funds for the relevant fiscal year to the identified parties and to invite submissions of certifications of eligibility necessary to qualify for a distribution. Appx7.

In connection with CDSOA distributions, CBP established a special account for each antidumping duty order and countervailing duty order into which it

[1] Under the CDSOA, affected domestic producers are defined generally as "a 'manufacturer, producer, farmer, rancher, or worker representative' that was a 'petitioner or interested party in support of the petition with respect to which an antidumping duty . . . or a countervailing duty order has been entered' and that "remains in operation.'" Appx6.

deposits all antidumping or countervailing duties "assessed" and collected under such order. Appx7. Each Federal fiscal year, CBP is to distribute the funds received in the preceding fiscal year on a *pro rata* basis to each qualifying ADP, for each antidumping order or finding or countervailing duty order based on the ADP's certification of remaining qualifying expenditures. Appx7.

**D. CBP's implementation of the CDSOA**

The CDSOA charged CBP with prescribing procedures for CDSOA distributions and "by regulation [to] prescribe the time and manner in which distribution of the funds in a special account shall be made." 19 U.S.C. § 1675c(e)(3). To that end, CBP published a notice of proposed rulemaking for purposes of administering the CDSOA. *Distribution of Continued Dumping and Subsidy Offset to Affected Domestic Producers*, 66 Fed. Reg. 33,920 (CBP June 26, 2001) (to be codified at 19 C.F.R. § 159.61–159.64 (2002)) (Proposed Rule). *Adee Honey Farms v. United States*, 450 F. Supp. 3d 1365, 1372 (Ct. Int'l Trade 2020). CBP issued a notice of final rulemaking after receiving comments. *Distribution of Continued Dumping and Subsidy Offset to Affected Domestic Producers*, 66 Fed. Reg. 48,546 (CBP Sept. 21, 2001) (codified at 19 C.F.R. §§ 159.61–159.64, 178.2 (2002)) (Final Rule). Appx8.

In the Final Rule, CBP explained that "only interest charged on antidumping and countervailing duty funds themselves, pursuant to the express authority in 19

U.S.C. § 1677g, will be transferred to the special accounts and be made available for distribution under the CDSOA." *Adee Honey,* 450 F. Supp. 3d at 1373; Final Rule at 48,550.

The Final Rule states that "[n]o interest will accrue in the[] accounts" but that "statutory interest charged on antidumping and countervailing duties at liquidation will be transferred to the Special Account, when collected from the importer." Appx11; 19 C.F.R. § 159.64(e).

**E. CDSOA payment process**

Duties, whether regular, antidumping, or countervailing are deposited when an entry is made. If the deposit differs from the amount of duties that are ultimately assessed at an entry's liquidation, an importer may need to pay interest on an under-deposit or may receive interest and a refund of duties on an over-deposit. Only one provision in Subtitle IV of the Tariff Act of 1930 addresses the calculation of interest for countervailing and antidumping in such a situation: 19 U.S.C. § 1677g. Section 1677g(a) specifies:

> Interest shall be payable on overpayments and underpayments of amounts deposited on merchandise entered, or withdrawn from warehouse, for consumption on and after—
>
> (1) the date of publication of a countervailing or antidumping duty order under this subtitle or section 1303 of this title, or
>
> (2) the date of a finding under the Antidumping Act, 1921.

This section 1677g interest is determined at liquidation as part of the final duty assessment.

A different statutory provision - 19 U.S.C. § 1505(d) - provides for the accrual of "delinquency interest" on a different pool of money. Unlike section 1677g, section 1505(d) is not specific to funds stemming from antidumping and countervailing duties. Rather, section 1505 governs the payment of duties and fees generally.[2] Section 1505(d) provides for a different consequence for nonpayment or underpayment post-liquidation, setting out a regime in which *all* "duties, fees, and interest" not paid within 30 days of liquidation "shall be considered delinquent," and subject to a new interest rule. 19 U.S.C. § 1505(d) (directing such liquidated funds to "bear interest by 30-day periods" at rates "determined by the Secretary"). Section 1505(d) does not segregate the liquidated amount subject to this delinquency provision by type of duties that gave rise to these funds, instead providing for a single delinquency-interest rule on the undifferentiated sum an importer owes. Thus, Congress directed that this delinquency interest accrue on the entire outstanding bill balance, which encompasses all duties owed, including

[2] Section 1505(c) sets out a default rule of interest calculation on duties generally, specifying that interest accrues "to the date of liquidation or reliquidation," *i.e.*, the same accrual endpoint as section 1677g interest on antidumping and countervailing duties.

those that have nothing to do with any antidumping or countervailing duties, as well as any taxes and fees owed for the entry.

The estimated duty deposit paid at the time of entry will be deposited into the CDSOA clearing account, and once the entry liquidates and the actual amount of duties is assessed, the estimated duties will be moved from the clearing account to the special account for distribution (unless the entry liquidates with a refund of the estimated duty deposit to the importer due to an over-deposit). *See* 19 C.F.R. § 159.64(b).

If the entry liquidates for a bill to the importer, any additional antidumping duties or countervailing duties and section 1677g interest collected from the importer are deposited into the special account for distribution. If the importer makes late payment on the bill, CBP follows 19 C.F.R. § 24.3a(c)(4) to account for the late payment. Under the regulations implementing the CDSOA, any section 1505(d) interest that accrued on the late payment is not subject to distribution unless it falls within the circumstances provided by the Trade Facilitation and Trade Enforcement Act (TFTEA).[3] *See* 19 C.F.R. § 159.64(e).

Accordingly, payment amounts applied as section 1505(d) delinquency interest that do not fall within the TFTEA circumstances are not deposited into the special account. But payment amounts applied toward CDSOA-subject duties and

---

[3] TFTEA is discussed in Section F at 13.

associated 1677g interest will be deposited into the special account for distribution to ADPs.

**F. Repeal and modifications to the CDSOA**

The CDSOA was constitutionally challenged under First Amendment and equal protection grounds. *See, e.g., SKF USA Inc. v. United States*, 556 F.3d 1337 (Fed. Cir. 2009). This Court upheld the CDSOA noting that the legislation is "within the constitutional power of Congress to enact, furthers the government's substantial interest in enforcing the trade laws, and is not overly broad." *SKF USA*, 556 F.3d at 1360.

The CDSOA was also challenged before the World Trade Organization (WTO) by eleven foreign nations. *DAK Americas LLC v. United States*, Court No. 17-00195, 2018 WL 375816, *3 (Ct. Int'l Trade Aug. 6, 2018). The WTO found that distributions under the Byrd Amendment were "inconsistent with the commitments made by the United States in the Uruguay Round Agreements." *Id.* The CDSOA was repealed in February 2006 by the Deficit Reduction Act of 2005, Pub. L. No. 109-171, § 7601, 120 Stat. 4, 154 (2006). *Id.* However, notwithstanding the repeal, the Deficit Reduction Act provided that "[a]ll duties on entries of goods made and filed before October 1, 2007, that would, but for [the repeal], be distributed . . . shall be distributed as if section 754 of the Tariff Act of

1930 [*i.e.*, 19 U.S.C. § 1675c] had not been repealed." *Id.* (alterations in the original).

CDSOA distributions on entries made or filed before October 1, 2007 were further limited in 2010 by prohibiting payments to ADPs with respect to entries of goods that, as of December 8, 2010, were (1) unliquidated; (2) not in litigation; and (3) not under an order of liquidation from the Department of Commerce (Commerce). *See* Claims Resolution Act of 2010, Pub. L. No. 111-291, § 822, 124 Stat. 3064, 3162-63 (2010), as amended by the Tax Relief, Unemployment Insurance Reauthorization, and Job Creation Act of 2010, Pub. L. No. 111-312, § 504, 124 Stat. 3296, 3308 (2010).

Finally, the CDSOA was amended by the Trade Facilitation and Trade Enforcement Act of 2015. Pub. L. No. 114-125, § 605, 130 Stat. 122, 187-88 (2016), codified at 19 U.S.C. § 4401 (TFTEA). Through TFTEA, Congress required CBP to distribute interest under section 1505(d), among other interest provisions, that had been collected from *sureties* on or after October 1, 2014 to qualifying ADPs for entries that remained distributable after the CDSOA's repeal and application of the Claims Resolution Act, as amended.[4] Nothing in section

[4] Specifically, TFTEA required that CDSOA distributions include interest "realized through application of a payment received on or after October 1, 2014, by [Customs] under, or in connection with (A) a customs bond pursuant to a court order or judgment; or (B) a settlement with respect to a customs bond, including any payment made to [Customs] with respect to that bond by a surety." 19 U.S.C.

4401 requires or authorizes delinquency interest received from a dilatory importer to be distributed to ADPs.

**G. Prior proceedings**

Initially, the Government moved to dismiss Monterey's action for a failure to state a claim because all claims were untimely and barred by the applicable two-year statute of limitations of 28 U.S.C. § 2636(i). *Adee Honey,* 450 F. Supp. 3d at 1371. The Government alternatively argued that if Monterey's claims accrued each year in which the ADPs received CDSOA distributions, then all claims, except those on distributions made during the two-year period before the commencement of the action, were time-barred. *Id.*

Monterey countered that all claims were timely because, prior to a July 2014, it "did not know Customs had announced a practice under which delinquency interest would not be distributed to ADPs" and "did not know . . . of any specific instance in which Customs received and did not distribute delinquency interest." *Id.* at 1372.

In rejecting Monterey's statute of limitations argument, the trial court found that the preamble to the Final Rule when read together with 19 C.F.R. § 159.64(e)

---

§ 4401(c)(1). The types of interest described by section 4401(c)(1) include interest accrued under 19 U.S.C. § 1677g and 19 U.S.C. § 1505(d), along with any equitable or 19 U.S.C. § 580 interest awarded by a court against a surety under its bond for late payment of antidumping or countervailing duties. 19 U.S.C. § 4401(c)(2).

put affected domestic parties on notice that only section 1677g interest—not section 1505(d) delinquency interest—would be distributed. *Id.* at 1373. The trial court found that the "regulatory provision, standing alone, informs the reader that" the interest to be distributed is section 1677g interest because it is the only "statutory interest 'charged' on antidumping and countervailing duties 'at liquidation.'" *Id.* Because section 1505(d) interest only accrues after, not "at liquidation," this regulation is not referencing delinquency interest. *Id.*

Moreover, the trial court found that text in the preamble to the Final Rule provided clarification to the regulation in that "only" section 1677g interest would be transferred to the special account and made available for distribution. *Id.* at 1374-75. Thus, the trial court found the regulation and preamble together provided notice to the ADPs that delinquency interest would not be distributed. *Id.* at 1375.

Thus, the trial court granted the Government's motion to dismiss in part as to Monterey's claims for distributions received prior to July 15, 2014, *i.e.*, two years before it commenced its action. *Id.* at 1378.

Monterey moved for judgment on the agency record and for reconsideration of the dismissal decision. The trial court denied the motion for reconsideration. Appx4. In examining the meaning of the phrase "interest earned on such duties" in section 1675c, to the trial court looked to other provisions of the Tariff Act. Appx13-14. First, the trial court reviewed sections 1675c(d)(3), (e)(2), and (e)(3)

and determined that "the Distribution of Funds provision is reasonably interpreted to address the distribution of the duties, and the interest earned thereon, that are deposited into the Special Accounts according to the Deposits into Accounts provision." Appx15-16. Noting that "interest earned" had not been defined in the statute, the court looked "to other Tariff Act provisions that affect how antidumping and countervailing duties earn interest." Appx14, Appx16.

Among these provisions, the trial court reviewed the history of the Trade Agreements Act of 1979 including its interest provision (*i.e.*, section 1677g interest). Appx16-17. The court noted that the delinquency interest provision was added to the Tariff Act five years later and that delinquency interest began to accrue 15 days after liquidation if the bill was not timely paid. Appx18. With the enactment of the North American Free Trade Agreement, Congress amended Section 505 of the Tariff Act to allow for the accrual of interest to the government on underpayments of ordinary customs duties with interest on overpayments due to the importer. Appx19. Section 505(b) directed CBP to collect increased duties and fees due, "together with interest thereon . . . as determined at liquidation or reliquidation." Appx19. In section 505(d), Congress stated delinquency interest would accrue on duties, fees, and interest due that are not paid within 30 days of liquidation or reliquidation. Appx20.

After conducting an analysis of the relevant statutory and regulatory provisions, the trial court stated that it "does not . . . conclude" that Monterey's "interpretation of the statutory provisions is the more reasonable one." Appx24. But even if that had been the case, the court explained, that "Customs reasonably interpreted the CDSOA as requiring deposit into the Special Accounts only the interest on countervailing and antidumping duties accruing from the time of required deposit to liquidation of the entries." Appx24. And given that CBP "is the agency Congress 'entrusted' to administer not only the CDSOA but also the other provisions of the Tariff Act," the trial court concluded "still it would be required to accept" the agency's reasonable interpretation of these statutes. Appx24.

Therefore, the trial court denied Monterey's motion for judgment on the agency record and entered judgment in favor of the Government. Appx27.

## SUMMARY OF ARGUMENT

Since the September 2001 publication in the Federal Register of the Final Rule, Monterey, like all ADPs, has been on notice that the only type of interest that would be distributed pursuant to the CDSOA is interest that accrues under 19 U.S.C. § 1677g. Indeed, this fact was reinforced by the TFTEA, in which Congress required CBP to distribute section 1505(d) interest in addition to section 1677g interest, but only in connection with antidumping and countervailing duties

collected from sureties, not importers, and only back to October 1, 2014, not the initiation of the CDSOA. If Congress had already provided in the CDSOA that section 1505(d) interest from all sources had to be distributed, then section 4401(c) would have been unnecessary. Because Monterey was on notice, the trial court correctly concluded that its claims for section 1505(d) delinquency interest on distributions received prior to July 15, 2014, two years before the commencement of its section 1581(i) action, are time-barred.

The trial court also correctly rejected Monterey's assertion that the CDSOA requires CBP to distribute section 1505(d) delinquency interest—as well as interest collected under section 1677g's provisions specifically governing interest accrual on antidumping and countervailing duties—to affected domestic producers. Using all the tools of statutory construction, CBP's longstanding regulation reflects the best reading of the CDSOA's direction to place "all antidumping or countervailing duties (including interest earned on such duties) that are assessed" into a "special account," and then distribute that account to domestic producers affected by the unfair import practices. 19 U.S.C. § 1675c(e)(2).

The only provision Congress has enacted to govern the collection of interest specifically on antidumping and countervailing duties is 19 U.S.C. § 1677g. As the trial court explained, "the statutory history indicates that Section [1677g] interest accrues from the date of required deposit to the date of liquidation, and not

beyond that date." Appx21. Post-liquidation balances, on the other hand, are covered by an entirely separate statute, 19 U.S.C. § 1505(d), which governs the delinquency regime for *all* duties and fees an importer owes, and which does not differentiate among the sources of those sums. Section 1505(d) delinquency interest, therefore, is not "earned on" antidumping and countervailing duties within the meaning of the CDSOA; rather it is earned on a different pool of money encompassing normal tariffs and fees entirely unconnected from such duties.

CBP's 2001 notice-and-comment rulemaking and resultant regulation, 19 C.F.R. § 159.64, reflect the real differences between section 1505(d) delinquency interest and section 1677g antidumping-and-countervailing-duty interest, providing that only the latter is subject to the CDSOA's distribution requirement. That regulation had long been in effect when Congress made clear its approval of this aspect of CBP's implementation of the CDSOA. In enacting TFTEA in 2016, Congress newly made *some* section 1505(d) interest subject to the CDSOA's distribution requirement, but only with respect to antidumping and countervailing duties collected from sureties—not those collected from importers. *See* 19 U.S.C. § 4401(c). Importantly, this new TFTEA requirement would have been entirely unnecessary on Monterey's reading of the CDSOA, under which all section 1505(d) interest would have been subject to distribution since the CDSOA's enactment in 2000. TFTEA manifests Congress's contrary intent, and this Court

should decline Monterey's invitation to adopt a reading of the CDSOA that would render nugatory Congress's carefully calibrated 2016 choice to make only certain types of section 1505(d) interest subject to the CDSOA's distribution regime. And even if Monterey's proposed interpretation were somehow consistent with the statute as a whole, including TFTEA, CBP's contrary interpretation is, at a minimum, reasonable and entitled to deference. Accordingly, the trial court's judgment should be affirmed.

## ARGUMENT

### I. STANDARD OF REVIEW

This Court "reviews decisions by the Court of International Trade pursuant to 28 U.S.C. § 1581(i)" under "the standard of review set forth in 5 U.S.C. § 706." *Dixon Ticonderoga Co. v. United States*, 468 F.3d 1353, 1355 (Fed. Cir. 2006). Thus, this Court will "hold unlawful and set aside agency action, findings, and conclusions found to be – (A) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A); *see also Dixon Ticonderoga Co.,* 468 F.3d at 1355 (citing to *Candle Corp. of Am. v. U.S. Int'l Trade Comm'n*, 374 F.3d 1087, 1091 (Fed. Cir. 2004)).

With respect to the trial court's dismissal of Monterey's claims seeking section 1505(d) interest on CDSOA distributions received prior to July 15, 2014 as untimely, this Court conducts a *de novo* review as to the law and reviews any fact-

finding underlying the trial court's analysis for clear error. *See Sioux Honey Ass'n v. Hartford Fire Ins. Co.*, 672 F.3d 1041, 1049 (Fed. Cir. 2012); *Volkswagen of Am., Inc. v. United States*, 540 F.3d 1324, 1330 (Fed. Cir. 2008).

## II. CLAIMS OLDER THAN THOSE ACCRUING TWO YEARS BEFORE THE COMMENCEMENT OF THE SUBJECT ACTION ARE TIME-BARRED

The action subject to the appeal was commenced on July 15, 2016 under 28 U.S.C. § 1581(i). An action brought under section 1581(i) must be "commenced in accordance with the rules of the court within two years after the cause of action first accrues." 28 U.S.C. § 2636(i).[5] Here, Monterey commenced its action on July 15, 2016. Therefore, if the two-year period is measured as the two years preceding this date, the only claims that would be timely would be those seeking section 1505(d) delinquency interest on CDSOA distributions received by Monterey on or after July 15, 2014. Monterey contends that all of its claims are timely because the September 2001 notice of final rule making did not adequately inform the public that CBP would withhold or deduct section 1505(d) delinquency interest. Blue Br. 46. Under its theory, Monterey would be entitled to

[5] The two-year period of section 2636(i) is not jurisdictional. *Ford Motor Co. v. United States*, 811 F.3d 1371, 1378 (Fed. Cir. 2016).

distributions of section 1505(d) interest from its first CDSOA distribution that did not distribute section 1505(d) duties.[6] Monterey is wrong.

### A. The Final Rule provided notice that only section 1677g interest would be distributed

The trial court considered Monterey's argument that it was unaware until 2014 that CBP would not distribute section 1505(d) delinquency interest in connection with CDSOA distributions to ADPs. *Adee Honey,* 450 F. Supp. 3d at 1372. The trial court explained that CBP's regulation presented in the Final Rule "standing alone, informs the reader that interest on antidumping and countervailing duties 'charged . . . at liquidation' will be placed into the special accounts for distribution to ADPs." *Id.* at 1373. The natural reading of this provision reflects CBP's intent to distribute section 1677g interest. Because the regulation refers to "at liquidation," it cannot be seen to refer to section 1505(d) delinquency interest which can only occur after liquidation when an importer fails to make payment of any outstanding duties and interest 30 days after liquidation. *Id.* Further, by identifying that section 1677g interest will be distributed, the regulatory language implies that other types of interest will not be placed into the special account. *Id.*

[6] For the reasons expressed in the trial court's decision, Monterey is not entitled to the distribution of section 1505(d) interest under the CDSOA. Of course, section 1505(d) would only exist if there had been a late payment after liquidation.

To the extent an importer was unsure whether interest other than section 1677g interest might be distributed, the Final Rule contains a preamble that provides clarification. *Id.* at 1374-75. Specifically, it states:

> Because Congress did not make an explicit provision for the accounts established under the CDSOA to be interest-bearing, no interest may accrue on these accounts. Thus, *only* interest charged on antidumping and countervailing duty funds themselves, pursuant to the express authority in 19 U.S.C. § 1677g, will be transferred to the special accounts and be made available for distribution under the CDSOA.

Final Rule at 48,550 (emphasis added). The trial court determined that the inclusion of the word "only" and the reference to section 1677g interest, had provided ADPs like Monterey with adequate notice that only section 1677g interest would be deposited into the special accounts for distribution to ADPs. *Adee Honey,* 450 F. Supp. 3d at 1375. "[T]he court [could not] conclude that the agency's linking the two issues made unclear the decision on what type of interest would be deposited into the accounts." *Id.* at 1373. Therefore, "the meaning conveyed by the Final Rule is sufficiently clear to have placed interested parties on notice of the agency's decision as to the type of interest Customs would place into the special accounts and thereby make available for distribution to ADPs." *Id.* at 1373-74. Moreover, publication in the Federal Register is sufficient to give notice of the contents of the document to a person subject to or affected by it. *See id.* at 1374; *see also* 44 U.S.C. § 1507 (generally publication in the Federal Register is

"sufficient to give notice of the contents of the document to a person subject to or affected by it.").

Moreover, in construing the reasonableness of a regulation, a court may consider an agency's statements prefacing the issuance of a Final Rule its general understanding of the rule. *See Nat'l Wildlife Fed. v. EPA*, 286 F.3d 554, 569-70 (D.C. Cir. 2002) (while it does not enlarge or confer agency powers, a preamble to a rule undoubtedly contributes to a general understanding of the rule); *Federal Crop Ins. Corp. v. Merrill*, 332 U.S. 380, 384-85 (1947) (everyone is charged with the knowledge of the contents of rules and regulations published in the Federal Register). Thus, the Final Rule published in the Federal Register, provided adequate notice to Monterey that only section 1677g interest would be distributed.

**B. CBP did not change course on delinquency interest**

Next, in an attempt to avoid the fatal effect of the Final Rule's September 2001 publication on the bulk of its claims, Monterey suggests that CBP's Proposed Rule reflected that section 1505(d) would be distributed and that CBP changed its mind between the Proposed Rule and the Final Rule on distributing section 1505(d) interest. Blue Br. 6-8, 47. After explaining that the Special and Clearing Accounts are not interest bearing, CBP's Proposed Rule states that "statutory interest charged on antidumping and countervailing duties at liquidation, will be

transferred to the Clearing Account or Special Account, as appropriate, when collected from the importer." Proposed Rule at 33,926; Appx1283.

Further, the preamble to the Proposed Rule explained that interest paid by importers on antidumping and countervailing duties "billed in the liquidation process" would be transferred to the special account for distribution. Proposed Rule at 33,922; Appx1279. As the trial court found, the regulatory provision's use of "at liquidation" connotes section 1677g interest was measured at liquidation and, therefore, cannot be read to refer to section 1505(d) interest. *Adee Honey,* 450 F. Supp. 3d at 1373. Monterey's argument that CBP changed course between the publication of the Proposed Rule and Final Rule lacks any record support. *See, infra,* Section IV.B. Nevertheless, it is the Final Rule when read together with its preamble that provided Monterey with adequate notice that no delinquency interest would be distributed. *Id.*

Monterey cites *Aqua Products, Inc. v. Matal*, 872 F.3d 1290 (Fed. Cir. 2017) in an effort to resurrect its time-barred claims. Blue Br. 48. Monterey suggests that the notice provided by CBP is insufficient because it '"would have to divine [the Agency's] unspoken thoughts' or engage in a 'scavenger hunt.'" *Id. Aqua Products* offers Monterey no help because that case involved a regulation that purported to define a party's burden of proof, which this Court explained is a "legal principle" and for that reason was not within the Patent and Trademark

Office's regulatory authority. *Id.* at 1323-24. Further, because a legal standard concerns a pure issue of law, the Patent and Trademark Office's expertise was not implicated. *Id.* at 1324.

In contrast, the trial court, here, found that CBP "is the agency Congress 'entrusted' to administer not only the CDSOA but also other provisions of the Tariff Act, i.e., the 'statutory scheme,' defining how interest is earned on antidumping and countervailing duties." Appx24. As directed by Congress, CBP implemented the CDSOA. In so doing, CBP published in the Federal Register its Final Rule, which provided the language of the interest regulation and a clarifying statement, under a section titled "Interest." 66 Fed. Reg. 48,550. Specifically, interested parties were informed that "only interest charged on antidumping and countervailing duty funds themselves, pursuant to the express authority in 19 U.S.C. 1677g, will be transferred to the special accounts and be made available for distribution under the CDSOA." *Id.*

The trial court concluded that "that 19 C.F.R. § 159.64(e), when read together with the preamble language that pertained to it, provided adequate notice of the agency's decision that no type of interest other than Section 1677g interest would be deposited into the special accounts for distribution to ADPs." *Adee Honey,* 450 F. Supp. 3d at 1373. Through the Final Rule, CBP's thoughts were expressed and no scavenger hunt was needed to discern the interest clarification.

Accordingly, the trial court's decision that all claims for section 1550(d) interest are time-barred for distributions received prior to July 15, 2014 should be affirmed.

## III. THE STATUTE AS A WHOLE MANIFESTS CONGRESS'S INTENT THAT ONLY SECTION 1677g INTEREST IS SUBJECT TO DISTRIBUTION UNDER THE CDSOA

To determine whether a statute shows the intent of Congress, courts "employ traditional tools of statutory construction and examine 'the statute's text, structure, and legislative history, and apply the relevant canons of interpretation.'" *Heino v. Shinseki*, 683 F.3d 1372, 1378 (Fed. Cir. 2012) (quoting *Delverde, SrL v. United States*, 202 F.3d 1360, 1363 (Fed. Cir. 2000))."

For the following reasons, a review of the CDSOA as a whole, rather than one necessitating the parsing of language, reveals Congress's intent is that only section 1677g interest will be deposited into and distributed from the special accounts.

### A. Statutory Interpretation

"Absent a clearly expressed legislative intention to the contrary, [the statute's plain] language must ordinarily be regarded as conclusive." *Consumer Prod. Safety Comm'n v. GTE Sylvania, Inc.*, 447 U.S. 102, 108 (1980). Further, the "whole-text canon" "calls on the judicial interpreter to consider the entire text, in view of its structure and of the physical and logical relation of its many parts."

Antonin Scalia & Bryan A. Garner, READING LAW: THE INTERPRETATION OF LEGAL TESTS at 167 (2012); *see also Candle Corp. of Am. v. United States*, 374 F.3d 1087, 1093 (Fed. Cir. 2004) (a court "will not look merely to a particular clause in which general words may be used but will take in connection with it the whole statute (or statutes on the same subject) and the objects and policy of the law, as indicated by its various provisions, and give it such a construction as will carry into execution the will of the Legislature.") (Citation omitted).

**B. The CDSOA Only Provides For The Deposit And Distribution Of Section 1677g Interest**

In understanding Congress's intent concerning what interest is to be distributed under the CDSOA, one should construe the text of the original statute enacted in 2000 through the lens of TFTEA. That only section 1677g interest is to be distributed is supported by the original text. But it is further confirmed by TFTEA, which would not have been needed if the CDSOA, as originally drafted, intended the distribution of section 1505(d) interest.

**1. The CDSOA's interest provisions**

The CDSOA speaks of interest twice: "[t]he Commissioner shall deposit into the special accounts, all antidumping or countervailing duties (including interest earned on such duties) that are assessed [after October 1, 2000] under the antidumping order or finding or the countervailing duty order with respect to

which the account was established," section 1675c(e)(2);[7] and "[t]he Commissioner shall distribute all funds (including all interest earned on the funds) from assessed duties received in the preceding fiscal year," section 1675c(d)(3).[8]

In both instances, duties and interest are modified by the word "assessed," which is critical to understanding congressional intent. The use of the word "assessed" implicates a specific temporal event: liquidation. *Norsk Hydro Canada, Inc. v. United States*, 472 F.2d 1347, 1359-60 (Fed. Cir. 2006) (equating

---

[7] Section 1675c(e)(2), (3) provide:

> Deposits into accounts—The Commissioner shall deposit into the special accounts, all antidumping or countervailing duties (including interest earned on such duties) that are assessed after the effective date of this section under the antidumping order or finding or the countervailing duty order with respect to which the account was established.
>
> Time and manner of distributions—Consistent with the requirements of subsections (c) and (d) of this section, the Commissioner shall by regulation prescribe the time and manner in which distribution of the funds in a special account shall be made.

[8] Section 1675c(d)(3) provides in relevant part:

> Distribution of funds—The Commissioner shall distribute all funds (including all interest earned on the funds) from assessed duties received in the preceding fiscal year to affected domestic producers based on the certifications described in paragraph (2).

"assessed" with "liquidated"). *See also* Appx3236, Appx3345, Appx3507 ("Assessment occurs at liquidation"); Appx3591 ("As explained in the notice of proposed rulemaking [Appx3223], the assessment of duties on an import entry is accomplished by liquidating the subject entry"). Liquidation is defined as the "final computation or ascertainment of duties" on entries. 19 C.F.R. § 159.1.

As the trial court acknowledged, the only type of interest that is assessed on antidumping and countervailing duties at liquidation is 19 U.S.C. § 1677g interest. Appx50. This is significant because section 1675c(e)(2) instructs Customs to "deposit into the special accounts, *all antidumping and countervailing duties (including interest earned on such duties) that are assessed*" under the applicable antidumping and countervailing duty findings or orders. (Emphasis added).[9] Similarly, section 1675c(d)(3) instructs Customs to "*distribute all funds (including all interest earned on the funds) from assessed duties* received in the preceding fiscal year . . . ." (Emphasis added).

Thus, the interest deposited into the special account and made available for distribution to ADPs is limited to that interest earned on the assessed antidumping and countervailing duties at liquidation. At the time of assessment, *i.e.*,

[9] The antidumping and countervailing duties and interest deposited into the special accounts pursuant to section 1675c(e)(2) are the only source of the funds for the distributions for the ADPs. *See* 19 U.S.C. § 1675c(e)(3) (". . . the Commissioner shall by regulation prescribe the time and manner in which *distribution of the funds in a special account shall be made*.") (Emphasis added).

liquidation, interest is calculated and payable for both overpayments and underpayments of amounts deposited on merchandise subject to antidumping and countervailing duties as provided by section 1677g.

**2. Other statutory language**

This position is bolstered by the statutory language of the CDSOA specifying that the distributable assessment occurs "under" the antidumping or countervailing duty order. Specifically, 1675c(e)(2) specifies that the deposits into the special account are all antidumping and countervailing duties (including interest earned on such duties) "that are assessed . . . *under the antidumping order or finding or the countervailing duty order* with respect to which the account was established." (Emphasis added). The only type of interest assessed "under" Commerce's antidumping or countervailing duty order is section 1677g interest.

The Tariff Act of 1930 provides that the duties and the section 1677g interest owed, if any, must be assessed by CBP at liquidation as part of the antidumping and countervailing duty assessment. 19 U.S.C. §§ 1671f(b), 1673f(b) (the antidumping and countervailing duties owed under Commerce's order "shall be . . . collected . . . together with interest as provided by [19 U.S.C. § 1677g]"). The section 1677g interest only accrues on antidumping and countervailing duties, and it never accrues on any ordinary consumption duties, taxes, or fees. *See* 19 U.S.C. § 1677g (identifying only one circumstance under which 1677g interest

accrues—underpayments or overpayments of antidumping and countervailing duty deposits).

For section 1677g interest to accrue, Commerce's antidumping or countervailing duty order must be in place. If an entry is made before Commerce has issued the relevant antidumping or countervailing duty order for the merchandise at issue, then no 1677g interest will be assessed. 19 U.S.C. § 1677g (interest shall be payable on amounts entered "on and after . . . the date of publication of a countervailing or antidumping duty order under this title . . ."); *see Am. Hi-Fi Int'l, Inc. v. United States*, 936 F. Supp. 1032, 1039-40 (Ct. Int'l Trade 1996) ("once a duty order issues from Commerce [section 1677g] interest begins to accrue"). Thus, section 1677g interest is entirely dependent upon the issuance of Commerce's order and the ultimate antidumping or countervailing duty assessment that occurs at liquidation under that order.

**3. Section 1675c(e)(2)'s parenthetical**

Congress's use of parenthesis in subsection (e)(2) further supports that only section 1677g interest is subject to deposit into the special account for CDSOA distribution. *See Hanser v. McDonough*, 56 F.4th 967, 971 (Fed. Cir. 2022) (in construing parenthetical language, courts "must consider the specific language at issue in the statutory or regulatory context in which it appears and then draw the most sensible conclusion about its meaning."); B. Garner, MODERN ENGLISH

USAGE 752 (4th ed. 2016) (among other things, parentheses "specify, in one's own running text, an authority, definition, explanation, reference, or translation").

Under common grammatical rules, a parenthetical refers to the term or concept immediately preceding it, and the contents of the parenthetical may serve as illustrations or examples of that term or could be definitional. *See Hanser,* 56 F.4th at 972 (finding parenthetical language definitional based on context); *Chickasaw Nation v. United States*, 534 U.S. 84, 89-90 (2001) (explaining that the use of a parenthetical emphasized that the words within the parenthetical were "meant simply to be illustrative, hence redundant" of the term preceding the parenthetical).

When Congress wrote in the parenthetical following the phrase all antidumping and countervailing duties, "(including interest earned on such duties)," Congress was logically referencing the type of interest that is part of the antidumping and countervailing duty assessment. Contextually, this parenthetical language does not appear to be simply redundant or illustrative. Rather, because the parenthetical ties back to "such duties," it serves the purpose of describing or delineating the interest Congress intends to be placed into the special accounts and distributed. Monterey ignores or devalues Congress's use of the parenthesis and asks this Court to construe the parenthetical as referring to interest that is separate from the duty assessment under the antidumping or countervailing duty order that

occurs at liquidation. This approach would render the parenthetical structure meaningless.

In contrast, as discussed above, section 1505(d) interest only arises – if at all – after liquidation, when "duties, fees, and interest determined to be due or refunded are not paid in full within [a] 30-day period," and, through the inclusion of "fees" is structurally distinct from what the CDSOA provided: antidumping and countervailing duties and interest on those duties. Section 1505(d) interest accrues any time a delinquent bill remains unpaid, without regard to when Commerce's antidumping or countervailing duty order was issued and even in the absence of an antidumping or countervailing duty order by Commerce. In other words, section 1505(d) interest is not assessed at liquidation and accrues on amounts that include non-antidumping or countervailing duties. Consequently, section 1505(d) interest is not assessed "under" the antidumping or countervailing duty order as required for distribution per the CDSOA's statutory language.

**4. CBP's Proposed Rule found favor with the CDSOA's drafters**

The "all interest" of section 1675c(d)(3) ("the Commissioner shall distribute all funds (including all interest earned on the funds) from assessed duties") means that Customs should distribute all section 1677g interest earned from the under-deposit of antidumping and countervailing duties but should not reduce that

interest amount by the section 1677g interest that CBP would be required to pay to importers who over-deposited antidumping and countervailing duty funds.

The Senators who participated in the notice-and-comment rulemaking, including Senator Byrd, appear to have shared this same view and approved of CBP's treatment of interest, stating in their comment: "[W]e appreciate the fact that you intend to distribute pursuant to the Act the full amount of assessed antidumping and countervailing duties, including interest paid by the importer at final liquidation but without any adjustment for interest remitted to the importer. In our view any other construction of the Act would significantly undermine its purpose." Appx4068.

**5. TFTEA shows that the CDSOA was not intended to distribute section 1505(d) interest**

Through the enactment of TFTEA, Congress for the first time made *some* section 1505(d) interest subject to CDSOA's distribution requirement, but only with respect to antidumping and countervailing duties collected from sureties—not those collected from importers. *See* 19 U.S.C. § 4401(c). This new TFTEA requirement would have been entirely unnecessary if, as Monterey contends, the CDSOA required distribution of all section 1505(d) interest since the CDSOA's enactment in 2000.

Moreover, TFTEA demonstrates Congress's contrary intent. First, it applies to section 1505(d) interest collected from sureties only. Next, it limits the time period to that collected on or after October 1, 2014.

### C. Monterey's Position Contradicts The Whole-Text Canon Of Statutory Interpretation

Monterey fails to follow the rule of statutory interpretation (even though it is cited in its brief) that requires consideration of the statute's text and structure. Blue Br. 19; *see also* Blue Br. 20 (citing *Hyatt v. USPTO*, 904 F.3d 1361, 1374 (Fed. Cir. 2018) ("[s]tatutory interpretation begins with the language of the statute."). *Hyatt* also explains that "[a] court derives the plain meaning of the statute from its text and structure." Hyatt, 904 F.3d at 1374. Instead of construing the CDSOA's interest issue from a holistic, textual and structural approach, Monterey turns to parsing statutory language to support its argument.

Citing 19 U.S.C. § 1675c(d)(3), (e)(2), Monterey argues that "the CDSOA's plain language is clear, imposing an obligation on CBP to both deposit and distribute all interest, including delinquency interest." Blue Br. 21. To make this argument, Monterey engages in an attenuated argument (delinquency interest is derived from "assessed duties") that requires it to add the word "derived" to the statute. *Id.* But, by its terms, the CDSOA does not provide for the distribution of derived interest. Monterey agrees that statutory interpretation begins with the language of the statute. This derived analysis contravenes this fundamental tenet

of statutory construction. It requires Monterey not only to add a word to the statute but to ignore the statute's use of "at liquidation" language and the fact that neither the term "delinquency interest" nor the statute associated with it, 19 U.S.C. § 1505(d), can be found in the statutory provisions it references. *See* Blue Br. 21.

Instead, Monterey isolates words such as "shall," "all funds," and "all interest earned" while ignoring the textual and structural evidence that the only interest referenced is that *assessed* on the underpayment of antidumping and countervailing duties *at liquidation*. *See* Blue Br. 21-24.

The CDSOA states that "[d]uties assessed pursuant to a countervailing duty order, an antidumping duty order, or a finding under the Antidumping Act of 1921 shall be distributed." 19 U.S.C. § 1675c(a).[10] "Such distribution shall be known as the 'continued dumping and subsidy offset.'" *Id.* Because antidumping and countervailing duty orders undergo reviews, the amount that an importer deposits when entering goods subject to those orders may ultimately be too small or too large. The correct amount is not known until duties are "assessed," *i.e.*, when the entry subject to an antidumping or countervailing duty order is

[10] Given the structure of the CDSOA, the "interest" referenced by the statute is section 1677g interest, which applies to the same three vehicles: countervailing duty orders, antidumping duty orders, and findings under the Antidumping Act of 1921.

liquidated. The CDSOA is not structured to distribute the antidumping and countervailing duties that are deposited, only those that are "assessed."

The CDSOA requires the agency to prescribe procedures for distribution of the offset "from duties assessed during the preceding fiscal year." 19 U.S.C. § 1675c(c). The agency "shall distribute all funds (including all interest earned on the funds) from assessed duties received in the preceding fiscal year . . . ." 19 U.S.C. § 1675c(d)(3). For antidumping and countervailing duty orders and findings, the agency "shall establish in the Treasury of the United States a special account with respect to each such order or finding." 19 U.S.C. § 1675c(e)(1). Next, the agency "shall deposit into the special accounts, all antidumping or countervailing duties (including interest earned on such duties) that are assessed . . . ." 19 U.S.C. § 1675c(e)(2). The agency "shall by regulation prescribe the time and manner in which distribution of the funds in a special account shall be made." 19 U.S.C. § 1675c(e)(3).

Read together, only funds in the special account will be distributed. The funds in the special account are comprised of assessed antidumping and countervailing duties along with "interest earned on such duties." That interest earned is the interest arising from the under-deposit of estimated antidumping/countervailing duties made at the time of entry, *see* section 1677g, and can only be calculated when assessed at the time of liquidation. The CDSOA

tethers the interest in the special account to "such duties," which are the antidumping and countervailing duties assessed. The only interest that is earned on "such duties" is section 1677g interest.

Simply put, Monterey's position that delinquency interest is to be distributed from the special account is inconsistent with Congress's intent as revealed by the language and structure of the CDSOA and its subsequent enactment of TFTEA. This is because delinquency interest is not earned on "such duties" that are assessed. Instead, delinquency interest accrues on a demand for payment (duties, fees, interest) that is not paid within 30 days after assessment/liquidation.[11] The

[11] 19 U.S.C. § 1505(d) provides:

> If duties, fees, and interest determined to be due or refunded are not paid in full within the 30-day period specified in subsection (b), any unpaid balance shall be considered delinquent and bear interest by 30-day periods, at a rate determined by the Secretary, from the date of liquidation or reliquidation until the full balance is paid. No interest shall accrue during the 30-day period in which payment is actually made.

19 U.S.C. § 1505(b) provides:

> The Customs Service shall collect any increased or additional duties and fees due, together with interest thereon, or refund any excess moneys deposited, together with interest thereon, as determined on a liquidation or reliquidation. Duties, fees, and interest determined to be due upon liquidation or reliquidation are due 30 days after issuance of the bill for such payment. Refunds of excess

CDSOA interest provisions do not involve the deposit of fees into the special accounts. Nor do they reference the deposit of interest due to a late payment, 19 U.S.C § 580, or common law equity.

Further, to the detriment of the whole-text canon, Monterey elevates the word "all" present in section 1675c(d)(3),[12] claiming that "all interest" "refers to multiple kinds of interest."[13] Blue Br. 23. For the term "all" used in a statute to mean every kind of a particular thing, the statute must not contain language contextually providing for qualifications or limitations. The cases plaintiffs cite in support of this argument make this very point. *See, e.g., Norfolk & W. Ry. Co. v. Am. Train Dispatchers Ass'n*, 499 U.S. 117, 129 (1991) (although the decision provides "the phrase 'all other law' indicates no limitation," contextually it is limited to law); *SciMed Life Sys., Inc. v. Advanced Cardiovascular Sys., Inc.*, 242

> moneys deposited, together with interest thereon, shall be paid within 30 days of liquidation or reliquidation.

[12] Section 1675c(d)(3) provides: "The Commissioner shall distribute all funds (including all interest earned on the funds) from assessed duties received in the preceding fiscal year to affected domestic producers based on the certifications described in paragraph (2). The distributions shall be made on a pro rata basis based on new and remaining qualifying expenditures."

[13] Under Hilex's theory that all interest means all interest to the extreme, interest payable to an importer due to an overpayment of deposited amounts of antidumping and countervailing duties would be interest earned on the funds and should be distributed to them rather than returned to the importer. This incongruous result further illustrates why the Government's analysis of the statute is correct.

F.3d 1337, 1344 (Fed. Cir. 2001) (although the decision provides that "'all embodiments of the present invention' are broad and unequivocal," contextually it is limited to the present invention).

As shown above, the terms of the CDSOA limit "all funds" for distribution to those from assessed/liquidated antidumping and countervailing duties, and "all interest" to the interest earned on such antidumping and countervailing duties at liquidation. The word "all" indicates that no deduction from the Special Account should occur for interest paid to the importer when the final antidumping or countervailing duty rate is lower than the deposit rate and the importer receives a refund of deposited duties plus section 1677g interest. Thus, Monterey's "all interest" argument fails.

When Congress intends "all interest" to be distributed to ADPs, it does so through explicit language. *See* TFTEA, 19 U.S.C. § 4401(c)(2) (interest includes the following: interest accrued under 19 U.S.C. § 1677g, 19 U.S.C. § 1505(d), equitable interest under common law, and 19 U.S.C. § 580 interest awarded by a court against a surety). Indeed, Congress's decision to limit the distribution of section 1505(d) under TFTEA to only that collected from sureties, not importers, further reinforces this point.

Monterey's construction of section 1675c(d)(3) contravenes Supreme Court authority explaining that statutory construction is a "holistic endeavor" that

discourages parsing words or phrases and ignoring context. *See United Sav. Ass'n of Tex. v. Timbers of Inwood Forest Assocs., Ltd.*, 484 U.S. 365, 371 (1988).

### D. The Final Rule gives effect to Congress's statutory scheme and the terms of the statute

For the reasons discussed above, CBP's construction of the CDSOA's language takes into consideration and gives effect to all the terms used in sections 1675c(d)(3), (e)(2).

These two provisions addressing interest are only squared under the CBP's analysis of the interest language. Notably, Congress did not say "including all interest" when it described the type of interest to be deposited into the CDSOA special accounts. 19 U.S.C. § 1675c(e)(2). Rather, Congress described the deposit of "all antidumping or countervailing duties" assessed under the antidumping and countervailing duty orders, including the deposit of "interest earned on *such* duties." This distinction is meaningful because Congress *did* say "including all interest earned on the funds" when it described the distributions to be made to the ADPs from the special accounts. 19 U.S.C. § 1675c(d)(3). In other words, Congress knew how to say "including all interest" when it so intended. *See Rubin v. Islamic Republic of Iran*, 138 S. Ct. 816, 826 (2018) (observing that if Congress had intended the phrase "as provided in this section" in section 1610(g) of the Foreign Sovereign Immunities Act of 1975 to serve as an independent avenue to abrogate immunity it could have stated "[n]otwithstanding any other provision of

law" as it had in section 201(a) of the Terrorism Risk Insurance Act of 2002). By cabining interest that goes into the accounts from which distributions will be made to only interest on assessed antidumping and countervailing duties, Congress foreclosed the inclusion of other forms of interest for distribution.

Monterey's interpretation of the CDSOA undermines the meaning and structure of the statute and should be rejected. In contrast, CBP's analysis of the statute's language gives effect to the congressional intent reflected in all the terms used in the CDSOA, the structure of the Tariff Act, and the enactment of TFTEA.

**E. Congress's findings and legislative history regarding the CDSOA do not support an interpretation that "all interest" includes section 1505(d) interest**

As we have shown above, the language used by Congress in enacting the CDSOA does not support the inclusion of section 1505(d) interest in distributions. In an effort to overcome the statute's plain language, Monterey points to legislative history and admits that, under the CDSOA, "monies would be distributed to ADPs, including funds finally assessed." Blue Br. 30. This is exactly the interpretation made by CBP in giving effect to the CDSOA's language "all antidumping or countervailing duties (including interest earned on such duties) that are assessed." Duties are assessed at liquidation and interest on "such duties," *i.e.* antidumping and countervailing duties, is section 1677g interest.

The legislative history cited by Monterey undercuts its position. *See* Blue Br. 30. The floor comments made concerning the predecessor bill for the CDSOA do not mention the word interest, let alone delinquency interest. *Id.* These comments include: "duties and fines would be transferred to injured U.S. companies," and "reduce the adverse effect of continued dumping or subsidization by distributing the monies finally assessed to the injured industry." Interest is not a fine. Consistent with section 159.64(e), "monies finally assessed" are the monies calculated at liquidation under the antidumping or countervailing duty order only including section 1677g interest. The omission of the word "interest" from the congressional discussions reveals an intent not to distribute section 1505(d) interest.

And we know from the enactment of TFTEA that Congress is capable of clearly setting forth the types of interest it wants distributed to ADPs. Of course, TFTEA was limited to the collection of interest and duties from bond sureties, not importers, and to delinquency interest payments received from October 1, 2014 forward, even though Congress was aware of CBP's interest regulation limiting distributable interest to section 1677g. 19 U.S.C. § 4401(c)(1).

Instead, the CDSOA was "[i]ntended to strengthen the remedial purposes of the antidumping and countervailing duty laws" and to explain the change of the long-standing use of antidumping and countervailing duty proceeds for general

government expenses to providing these duties to affected domestic producers to help them remain viable. *See Southern Shrimp Alliance v. United States*, 617 F. Supp. 2d 1334, 1340 (Ct. Int'l Trade 2009).

Indeed, it is the assessment of the antidumping and countervailing duties that levels the playing field. The distribution of antidumping and countervailing duties and section 1677g interest provides funds that domestic producers can use to reinvest or rehire. Distributing delinquency interest in addition to the antidumping and countervailing duties and section 1677g interest would essentially serve as treble compensation, which Congress did not evidence as its intent.

Thus, a holistic view of the CDSOA and TFTEA shows that Congress intended only for section 1677g interest to be distributed to ADPs.

## IV. EVEN ASSUMING THAT THE STATUTE IS AMENABLE TO MONTEREY'S INTERPRETATION, THE AGENCY'S READING IS, AT MINIMUM, REASONABLE AND ENTITLED TO DEFERENCE

As we show above, using ordinary tools of statutory construction reveals that Congress intended only section 1677g interest to be distributed to ADPs under the CDSOA. Yet, even if the CDSOA is amenable to two interpretations as to the interest to be distributed, CBP's interest regulation is a reasonable and permissible construction of the statute. Therefore, the trial court's judgment should be affirmed.

Monterey asserts three reasons why CBP's interpretation of the CDSOA should not be afforded deference: (i) it is unreasonable in resting entirely on the preamble of the Final Rule; (ii) it failed to contemporaneously explain its decision to exclude section 1505(d) delinquency interest from CDSOA distributions; and (iii) it cannot use technological limitations to excuse a faulty analysis. Blue Br. 31-46. For the reasons that follow, Monterey is wrong.

**A. Congress delegated to CBP the authority to administer the CDSOA**

"'The power of an administrative agency to administer a congressionally created . . . program necessarily requires the formation of policy and the making of rules to fill any gap left, implicitly or explicitly, by Congress.'" *Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837, 843 (1984) (quoting *Morton v. Ruiz*, 415 U.S. 199, 231 (1974)). The Supreme Court recognizes that a legislative delegation may be implicit rather than explicit. *Chevron*, 467 U.S. at 844. "In such a case, a court may not substitute its own construction of a statutory provision for a reasonable interpretation made by the administrator of an agency." *Id.*

Further, "whether or not they enjoy any express delegation of authority on a particular question, agencies charged with applying a statute necessarily make all sorts of interpretive choices, and while not all of those choices bind judges to

follow them, they certainly may influence courts facing questions the agencies have already answered." *United States v. Mead Corp.,* 533 U.S. 218, 227 (2001).

**B. CBP's interpretation does not rest on the preamble to the Final Rule**

Monterey admits that the regulation, section 159.64(e), does not conflict with the language of the CDSOA. Blue Br. 32. But Monterey is incorrect when it contends that the regulation does not limit the interest to be transferred to the special account to section 1677g interest. *Id*.

As the trial court found, "[t]he regulatory provision, standing alone, informs the reader that interest on antidumping and countervailing duties 'charged . . . at liquidation' will be placed into the special accounts for distribution." *Adee Honey,* 450 F. Supp. 3d at 1373. The only interest applicable to antidumping and countervailing duties at liquidation is section 1677g interest. Thus, CBP's interpretation rests on its knowledge and expertise of the Tariff Act, including knowing that "assessed" duties occur at liquidation, and the only type of interest that accrues at liquidation for antidumping and countervailing duties is section 1677g interest.

The presence of the clarification in the preamble is simply that: a clarification to let the reader know that section 159.64(e) use of the phase "statutory interest charged on antidumping and countervailing duties at liquidation" means only section 1677g interest.

Thus, Monterey's argument that the preamble is somehow the regulation for which deference should be given is misplaced. Section 159.64(e) is the regulation that reasonably implements the CDSOA's interest provisions. And if there was any uncertainty, the enactment of TFTEA, discussed above, puts that to rest. The CDSOA did not require the distribution of section 1505(d) interest. Thus, CBP's interpretation of the CDSOA's statutory language resulting in section 159.64(e) stands on its own merit.

Yet, if the CDSOA interest language could be construed to include the distribution of section 1505(d) interest, the Supreme Court counsels that, so long as it is not contrary to Congress's intent, the Court must uphold the agency's determination, even if there are other permissible interpretations the agency could have reached and even if the Court would have otherwise reached a different interpretation. *Chevron*, 467 U.S. at 843 n.11.

In *Smiley v. Citibank*, 517 U.S. 735 (1996), the Supreme Court considered whether deference should be given to a federal agency's interpretation of the word "interest" in a provision of the National Bank Act of 1864 that authorized national banks to charge their loan customers "interest at the rate allowed by the laws of the State . . . where the bank is located." 517 U.S. at 737. The petitioner, a loan customer, argued that this provision of the National Bank Act did not apply because the fixed-fee late payment charge at issue did not constitute "interest." *Id.*

at 743. In response to the customer's lawsuit and another lawsuit, the Office of the Comptroller of the Currency (part of the U.S. Department of Treasury) issued a regulation stating that the term "interest" in the National Bank Act included late payment fees. *Id.* at 739-40.

The loan customer argued that this position was not entitled to deference, but the Court disagreed explaining:

> We accord deference to agencies under *Chevron*, not because of a presumption that they drafted the provisions in question, or were present at the hearings, or spoke to the principal sponsors; but rather because of a presumption that Congress, when it left ambiguity in a statute meant for implementation by an agency, understood that the ambiguity would be resolved, first and foremost, by the agency, and desired the agency (rather than the courts) to possess whatever degree of discretion the ambiguity allows.

*Smiley*, 517 U.S. at 740-41. The Court ultimately deferred to the interpretation of the term "interest" applied by the agency, which included fixed-fee late payment penalties, and affirmed the dismissal of the customer's complaint. *Id.* at 747.

Likewise, here, any ambiguity left by Congress concerning the meaning of the term "interest" was left with the understanding that CBP, as the implementing agency, should use its discretion to resolve it. *See Smiley*, 517 U.S. at 740-41 ("Congress, when it left ambiguity in a statute meant for implementation by an agency, understood that the ambiguity would be resolved, first and foremost, by the agency, and desired the agency (rather than the courts) to possess whatever

degree of discretion the ambiguity allows"). As the trial court properly concluded, because CBP's interpretation of the CDSOA is a reasonable interpretation of the statutory language, it is entitled to deference. Appx24-25.

### C. The administrative record reflects that CBP considered the meaning of the CDSOA's use of the word interest and its interest regulation constitutes a reasonable interpretation

Monterey argues that CBP failed to contemporaneously explain the basis for the interest in section 159.64(e) being limited to section 1677g. Blue Br. 38. This position is incorrect. The documents certified by Mr. Robert F. Altneu reflect CBP's analysis of the statute's reference to interest in preparing its rulemaking, which is one of many issues CBP internally considered before issuance of the Proposed Rule. For example, in a May 29, 2001 draft implementation plan document, Appx4206-4213, CBP states "[o]nly liquidated amounts associated with each case qualify for distribution." Appx4208. Likewise, CBP determined that the date to start the computation of interest for section 1675(d)(3) is the date of the Commerce determination of assessed duties. Appx3707.

Despite its level of detail and specificity, this draft implementation plan does not contain any provision for, or mention of, delinquency interest. Further, in discussing the timing of the distribution, the draft notice of proposed rulemaking states "Customs will distribute the assessed duties which constitute the continued dumping and subsidy offset (including any interest earned on the offset)."

Appx3155. This reflects CBP's interpretation that the offset means assessed duties and that the interest to be distributed is only the interest earned on those assessed duties. As the agency charged with administering the tariff, CBP was aware that the only interest earned on assessed antidumping and countervailing duties is section 1677g interest. That interpretation ultimately found its way into both the Proposed Rule and the Final Rule.

Therefore, contrary to Monterey's position, the grounds of CBP's rulemaking are provided through the Proposed Rule and Final Rule. This comports with the cases cited by Monterey that when the agency examines the relevant data and provides an explanation for its rulemaking that "is clear enough that its 'path may be reasonable discerned" then it has operated reasonably. *See* Blue Br. at 39-40 (citing *Encino Motorcars, LLC v. Navarro*, 579 U.S. 211, 221 (2016)). CBP considered the data, *i.e.*, the statutory language of the CDSOA, and after its interpretation of that language provided an explanation though the Proposed Rule and Final Rule. For the reasons discussed above, these published rules provided adequate notice of its explanation for the regulation

Monterey suggests that CBP shifted its position on whether delinquency interest should be distributed. Blue Br. 40-41. To support this contention, Monterey cites Appx4187-88 for the proposition that CBP had decided to distribute 1505 interest. The cited pages refute this assertion. First, paragraphs 2,

3, 4, 5, 8, and 11 specifically reference liquidation. Appx4187-88. Paragraph 10 states "OF and and OIT teams *will consider* possible methods for assigning 1505 interest to specific AD/CV cases" for eventual distribution. Appx4188. Considering possible methods is not making a determination that section 1505 interest "would be distributed." *Compare* Blue Br. 40 to Appx4188. Monterey's position that CBP changed its mind is illogical. One cannot change a mind that is in the process of considering an option because no determination as to that option has been made. The only determination reflected in Appx4188 is the determination to consider possible methods of assigning 1505 interest. But the CDSOA's language does not provide for assigning interest. It provides for "deposit[ing] into the special accounts, all antidumping or countervailing duties (including interest earned on such duties) that are assessed." Section 1675c(e)(2).

CBP never took the public position that section 1505(d) interest would be distributed, having decided prior to issuance of the Proposed Rule that section 1505(d) interest was not to be included in CDSOA distributions. *See* Appx4208 (May 29, 2001 internal implementation plan, providing only for distribution of duties and section 1677g interest and stating *"[o]nly liquidated amounts* associated with each case qualify for distribution." (Emphasis added)). Therefore, there could be no change in position. That the agency internally may have considered whether

section 1505(d) interest should be distributed, reveals that the agency was analyzing the statute to implement it, but never took that position.

Furthermore, on July 15, 2001, the U.S. Senators who sponsored the CDSOA commented on the Proposed Rule. Specifically, with respect to CBP's proposed interest regulation, they stated:

> we appreciate the fact that you intend to distribute pursuant to the Act the full amount of assessed antidumping and countervailing duties, including interest paid by the importer at final liquidation but without adjustment for interest remitted to the importer. In our view, any other construction of the Act would significantly undermine its purpose.

Appx4068. (Sens. Byrd, DeWine, Specter, Durbin, Hollings addressing CBP's publication of the Proposed Rule). This acknowledgement is further evidence that CBP had interpreted the CDSOA's interest provision and decided it would not reduce the interest disbursed by the amount of section 1677g interest paid to an importer for an over-deposit of duties. By taking this position, CBP assured that all the interest earned on the assessed antidumping and countervailing duties would be distributed.

The administrative record reflects CBP's interpretation that only section 1677g interest on assessed antidumping and countervailing duties would be distributed and that this distribution of interest would not be reduced by interest remitted to an importer for an over-deposit.

Moreover, the trial court found that "[i]n promulgating its regulations, Customs made several interpretations of the CDSOA. One example concerned the interpretation of the word 'assessed' as it is used throughout the CDSOA to modify the word 'duties.'" Appx8. This factual finding by the trial court can only be set aside if clearly erroneous. Monterey has not established, because it could not, that this finding is clearly in error.

Similarly, Monterey's argument that CBP is relying on technological limitations to transform a faulty analysis into a reasonable interpretation fails. *See* Appx3683. The declaration of Mr. Sean Wuethrich, one of the two CBP representatives certifying documents in the administrative record, stated that technological considerations were a reason, and the only one of which he was aware, for distributing only section 1677g interest. Appx3683. However, this does not mean that CBP did not interpret the statutory language when drafting the Proposed Rule and the Final Rule.

Indeed, the documents certified by Mr. Robert F. Altneu, discussed above, reflect CBP's analysis of the statute's reference to interest in preparing its rulemaking resulting in the Proposed Rule and Final Rule. The administrative record and the Proposed Rule and Final Rule together show that CBP conducted a reasonable interpretation of the CDSOA to implement section 159.64(e).

### D. The trial court properly deferred to CBP's interpretation that only section 1677g interest will be distributed

The trial court concluded that the words "interest earned on such duties" rendered the statute ambiguous because it does not distinguish as to when interest is earned. Appx13-14. To determine whether CBP's interpretation of the statute with respect to interest was reasonable, the trial court reviewed other provisions of the Tariff Act, including 19 U.S.C. § 1505(b), (c), (d) and section 778(a). Appx14-16.

After analyzing the history of these provisions, the trial court concluded section 778(a) interest, which is unique to antidumping and countervailing duties, accrues from the date of required deposit to the date of liquidation, and not beyond that date. Appx21. This section 778(a) interest "unambiguously can be described as interest earned on those duties." Appx21. Indeed, this is consistent with CBP's interpretation of the statute that the offset for distribution includes only the assessed antidumping and countervailing duties and the interest earned on those assessed duties, *i.e.*, section 1677g interest. Appx3739. Accordingly, the trial court upheld CBP's interpretation of the status as reasonable.

Monterey contends that the trial court apparently subscribed to the idea that technological limitations prevented CBP from reasonably interpreting the CDSOA. Blue Br. at 44. But the trial court did not speculate on what supported CBP's interest regulation. Instead, it recognized that CBP made an interpretation of the

word "assessed" as it is used throughout the CDSOA to modify the word "duties" to reach its reasonable conclusion that only section 1677g interest earned on the antidumping and countervailing duties in the special accounts, without a reduction for refunded interest to importers who had over-deposited duties, would be distributed. Appx8-9.

Because CBP's interpretation of the CDSOA's language is reasonable, the trial court properly accepted the agency's interpretation of the statute. The Supreme Court has "long recognized that considerable weight should be accorded to an executive department's construction of a statutory scheme it is entrusted to administer . . . ." *Chevron*, 467 U.S. at 844. Thus, an agency's statutory interpretation adopted through notice and comment is entitled to "controlling weight" so long as the interpretation is "reasonable in light of the legislature's revealed design." *United States v. Haggar Apparel Co.*, 526 U.S. 380, 392 (1999) (citation and quotation omitted).

Indeed, an agency's "view governs if it is a reasonable interpretation of the statute—not necessarily the only possible interpretation, nor even the interpretation deemed *most* reasonable by the courts." *Energy Corp. v. Riverkeeper, Inc.,* 556 U.S. 208, 218 (2009) (citing *Chevron*, 467 U.S. at 843-844) (emphasis in original); *see also Utility Air Regulatory Group v. E.P.A.*, 573 U.S. 302, 315 (2014).

Here, the trial court reviewed both the CDSOA and relevant tariff provisions to evaluate their history and structure. It determined that section 1677g interest, which is the only interest specific to antidumping and countervailing duties, is assessed and stops accruing at liquidation. In contrast, the trial court found that section 1505(d) is not assessed at liquidation and accrues on the total amount that CBP bills an importer, not just antidumping and countervailing duties. After conducting an analysis of the relevant statutory and regulatory provisions, the trial court stated that it "does not . . . conclude" that Monterey's "interpretation of the statutory provisions is the more reasonable one." Appx24. But even if that had been the case, the court explained, that "Customs reasonably interpreted the CDSOA as requiring deposit into the Special Accounts only the interest on countervailing and antidumping duties accruing from the time of required deposit to liquidation of the entries." Appx24. Given that CBP "is the agency Congress entrusted to administer not only the CDSOA but also the other provisions of the Tariff Act," the trial court concluded "still it would be required to accept" the agency's reasonable interpretation of these statutes. Appx24.

Therefore, the trial court properly denied Monterey's motion for judgment on the agency record and entered judgment in favor of the Government. Appx27-28.

## CONCLUSION

For the foregoing reasons, we respectfully request that judgment of the trial court be affirmed.

Respectfully submitted,

BRIAN M. BOYNTON
Principal Deputy Assistant Attorney General

PATRICIA M. McCARTHY
Director

/s/ Justin R. Miller
By: JUSTIN R. MILLER
Attorney-In-Charge
International Trade Field Office

*Of Counsel*
SUZANNA HARTZELL-BALLARD
Office of Assistant Chief Counsel
U.S. Customs and Border Protection
6650 Telecom Drive, Suite 101
Indianapolis, Indiana 46278

/s/ Beverly A. Farrell
BEVERLY A. FARRELL
Senior Trial Attorney
Civil Division, Dept. of Justice
Commercial Litigation Branch
26 Federal Plaza – Suite 346
New York, NY 10278
Tel. (212) 264-9230 or 0483
Attorneys for Defendants-Appellees

Dated: February 24, 2023

**CERTIFICATE OF SERVICE**

I hereby certify that on this 24th day of February, 2023, a copy of the foregoing Corrected Brief for Defendants-Appellees was filed electronically. I understand that notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

/s/ Beverly A. Farrell
Senior Trial Attorney
International Trade Field Office
Civil Division
United states Department of Justice
26 Federal Plaza—Room 346
New York, New York 10278

CERTIFICATE OF COMPLIANCE PURSUANT TO FRAP 32(a)(7)(C)

| | |
|---|---|
| ADEE HONEY FARMS, et al.,<br>Plaintiffs,<br><br>MONTEREY MUSHROOMS, INC.,<br>Plaintiff-Appellant,<br><br>v.<br><br>UNITED STATES, UNITED STATES CUSTOMS AND BORDER PROTECTION, CHRISTOPHER MAGNUS, Commissioner of U.S. Customs and Border Protection,<br>Defendants-Appellees. | Appeal No.: 22-2105 |

I, Beverly A. Farrell, a senior trial attorney in the Office of the Assistant Attorney General, Civil Division, Commercial Litigation Branch, International Trade Field Office, who is responsible for the foregoing corrected brief, relying upon the Microsoft Word word count feature of the word processing program used to prepare the brief, certify that this brief complies with the type-volume limitation under Rule 32(a)(7)(B), and contains 12,727 words.

/s/ Beverly A. Farrell
Beverly A. Farrell